JUDGE CARTER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

A.V.E.L.A., INC.,

                    Plaintiff,

     - against -

THE ESTATE OF MARILYN MONROE, LLC,
BIOWORLD MERCHANDISING, and DOES 1
THROUGH 10,

                    Defendants.

----------------------------------------x

12 CV 4828

Docket No.:

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff A.V.E.L.A., Inc. ("AVELA"), by and through its attorney Screwvala LLC, for its Complaint against defendants The Estate of Marilyn Monroe, LLC (the "Estate"), Bioworld Merchandising, Inc. ("Bioworld"), and Does 1 through 10 ("Does") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff A.V.E.L.A, Inc. is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 89502.  A.V.E.L.A is in the business, among other things, of creating new artistic works in works in print, graphic and lithographic mediums that are based on materials found in the public domain.  A.V.E.L.A obtains copyrights registered with the United States Copyright Office for its artistic works, and clearly indicates these works are based on and derivative of materials that have been previously published.

2. Defendant Estate is, upon information and belief, a Delaware limited liability company with its worldwide headquarters in New York, New York at 100 West 33rd Street, Suite 1007, New York, New York 10001. Defendant Estate is, upon information and belief, the purchaser of certain rights, including alleged rights to the name and likeness of the late Marilyn Monroe (hereinafter the so-called "Monroe Right of Publicity"). Specifically, upon information and belief, the Estate is the successor in interest to Marilyn Monroe, LLC, which was, in turn, successor in interest to the unincorporated and loosely organized entity, the Estate of Marilyn Monroe.

3. Defendant Bioworld Merchandising, Inc. is, upon information and belief, a licensee of the Estate with its principal place of business at 2111 W. Walnut Hill Lane, Irving, Texas 75038. Upon information and belief, Bioworld is a product distributer of apparel and other accessories.

4. Since A.V.E.L.A and Defendants are citizens of different states, A.V.E.L.A asserts its claims herein pursuant to Rule 13 of the Federal Rules of Civil Procedure and under the Declaratory Judgment Act at 28 U.S.C. §§2201 and 2202.

5. Additionally, this case involves questions of the federal Copyright Act, the federal Lanham Act and New York state statutory common law. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. §1331,

1332(a), 1338(a). This Court also has subject matter jurisdiction over the claims in this Complaint arising under the Copyright Act pursuant to 17 U.S.C. §101 and 28 U.S.C. §1338 and the Lanham Act pursuant to 15 U.S.C. §1051 et. seq.

6. This Court also has personal jurisdiction over Defendants because Defendants are either located in and/or transact business in this judicial district pursuant to 28 U.S.C. §1391(a).

7. Consequently, all conditions precedent to bringing of this action have occurred or taken place and/or continue to occur.

## CASE BACKGROUND

8. On or about March 17, 2008 and September 11, 2008, the Central District of California in *The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F.Supp.2d 1152 (2008) and the Southern District of New York in *Shaw Family Archives, Ltd. V. CMG Worldwide, Inc.*, 486 F.Supp2d 309 (S.N.D.Y. 2007) (collectively the "Monroe Litigation") determined that the Estate was estopped from claiming there were valid and enforceable post mortem rights of publicity in the name, likeness and/or persona of Marilyn Monroe because counsel for the estate of Marilyn Monroe's represented Monroe was a resident of New York and probated her estate in New York.

9. Despite the outcome in the above Monroe Litigation, on or about June 2, 2011, the Estate sent a letter to A.V.E.L.A requiring A.V.E.L.A to cease and desist licensing, displaying, promoting, advertising, marketing and selling any products or services that infringe upon their exclusive Monroe Right of Publicity. The Estate also sent a copy of this letter to A.V.E.L.A's licensee, Silver Buffalo. Attached hereto as Exhibit A is a true and correct copy of the June 2, 2011 Cease and Desist Letter sent to A.V.E.L.A by the Estate.

10. A.V.E.L.A. sent a response to the Estate on June 16, 2011, stating that it would not comply with the cease and desist letters because the claims made therein were baseless given the district court rulings in the Monroe Litigation. Attached hereto as Exhibit B is a true and correct copy of the June 16, 2011 response by A.V.E.L.A. to the Cease and Desist Letter sent by the Estate.

11. In or about May, 2012, Defendant Bioworld Merchandising, Inc. without any knowledge of A.V.E.L.A, contacted A.V.E.L.A licensees, including Silver Buffalo's Distributer, Spencer's, claiming that it is the sole and exclusive licensor of the Marilyn Monroe Right of Publicity.

12. A.V.E.L.A is informed and believes that the claims of Bioworld are pursuant to a purported license with the Estate. On or about May 25, 2012, A.V.E.L.A. sent Bioworld a letter demanding that it cease making

4

misrepresentations related to the Marilyn Monroe Right of Publicity. Attached hereto as Exhibit C is a true and correct copy of the May 25, 2012 letter sent to Bioworld by A.V.E.L.A.

## NATURE OF THE CONTROVERSY

13.     On or about June 2, 2011, a letter was sent to A.V.E.L.A on behalf of the Estate demanding A.V.E.L.A cease licensing, selling, advertising, distributing or promoting any products bearing Marilyn Monroe's name, likeness, image or persona. In this letter, Defendant stated it had learned A.V.E.L.A had been actively licensing images to Silver Buffalo, and provided examples of the products. The Estate claimed to be the exclusive owner of the Monroe Right of Publicity and Monroe related trademarks. A.V.E.L.A's licensee, Silver Buffalo, was copied on the letter to A.V.E.L.A. See Exhibit 1.

14.     A.V.E.L.A., is informed and believes, and thereon alleges, that sometime in May, 2012, Jennifer Staly of Bioworld contacted representatives at Spencer's, a retailer of Silver Buffalo and demanded that Spencer cease licensing, selling, advertising, distributing or promoting any products bearing Marilyn Monroe's name, likeness, image or persona. Bioworld claimed that it was the sole and exclusive licensee of the so-called Marilyn Monroe Right of Publicity.

15. The claims and demands made by Defendants are without basis in law or fact.

16. The demands and threats made by Defendants have created an actual justiciable claim or controversy such that declaratory relief represents the appropriate remedy. As such, A.V.E.L.A is entitled to declaratory relief in this Case.

17. Furthermore, Defendants' conduct with the licensee of A.V.E.L.A rises to the level of tortious interference of business and tortious interference of contract. As such, A.V.E.L.A is entitled to actual damages. Moreover, this Court has already held that Defendant did not have an exclusive right to the Monroe Right of Publicity in the Monroe Litigation, and therefore Plaintiff should be awarded punitive damages to prevent Defendants from further contract and business interference.

## COUNT 1

### (Declaration of No Infringement of the Monroe Right of Publicity Against Estate)

18. Plaintiff restates, realleges, and reiterates its allegations in paragraphs 1 through 17 as if fully set forth herein.

19. Based upon the published decisions in the Monroe Litigation as referenced above, Defendants have no valid, enforceable claims in and to the Monroe Right of Publicity to assert against Plaintiffs.

20. Moreover, the use of the Monroe images licensed by A.V.E.L.A is legal according to the Monroe Litigation, since the result of the Monroe Litigation is that Defendant Estate's permission is not necessary to license Marilyn Monroe's image for use on products.

21. Additionally, A.V.E.L.A and its licensees may use Marilyn Monroe's name and image with respect to products because they use the name and image in a descriptive manner, which does not create a likelihood of confusion as to the source/endorsement of any goods.

22. Moreover, the use of the Monroe Images licensed by A.V.E.L.A as alleged by Defendant in Defendant's Correspondence constitutes fair use under the First Amendment to the United States Constitution because the Monroe images as used and/or licensed by Silver Buffalo were used for creative content associated with a product as opposed to the images being sold as a product itself.

23. Despite all the aforementioned reasons, Defendant still asserts it owns the exclusive Monroe Right of Publicity and demands A.V.E.L.A cease using Monroe images.

24. Absent a declaration of non-infringement by A.V.E.L.A of Defendants' alleged rights in and to the Monroe Right of Publicity, Defendants will continue to assert that A.V.E.L.A has infringed and is infringing, or is

otherwise violating, those rights and thus will continue to cause A.V.E.L.A continuing harm and damage.

25. By virtue of the foregoing, an actual and justiciable controversy exists between the parties. Consequently, A.V.E.L.A seeks a declaration that it has not infringed, is not infringing, and is not otherwise liable for any violation of any of Defendants' alleged rights in the Monroe Right of Publicity.

## COUNT II

### (Declaration of No False Association under the Lanham Act Against Estate)

26. A.V.E.L.A restates, realleges, and reiterates its allegations in paragraphs 1 through 25 as if fully set forth herein.

27. Defendants claim that despite the fact that Defendants posses no valid, enforceable right of publicity in the name and likeness of Marilyn Monroe, Defendants possess valid, enforceable trademark like rights in and to the name, likeness and signature of the late Marilyn Monroe under 15 U.S.C. §1125(a) (the Lanham Act).

28. Defendants further claim that A.V.E.L.A's so-called alleged unauthorized activities in the licensing of Monroe images to Silver Buffalo constitutes an infringement of the rights in and to the name and likeness of Marilyn Monroe under the Lanham Act's false association provision.

29. In short, Defendants assert A.V.E.L.A has engaged in false association by, among other acts, failing to obtain Defendants' written consent before licensing images to its third party licensees because said use of these images will confuse consumers as to Defendants' association, sponsorship and/or endorsement of the products.

30. However, A.V.E.L.A has not engaged and/or is not engaging in activities that violate the Lanham Act because there is no likelihood of consumer confusion as to the source of the Marilyn Monroe related goods or whether Defendant endorsed them. Various other third parties use Marilyn Monroe images decoratively on products. Since the Monroe images are used decoratively with both third parties' products and with A.V.E.L.A's licensees, the image does not indicate origin of the goods to consumers. Rather, Monroe images are part of the products' overall creative design.

31. Despite all the aforementioned reasons, Defendants still assert A.V.E.L.A is in violation of their rights under the Lanham Act and demand A.V.E.L.A cease using Monroe images.

32. Absent a declaration of no false association by A.V.E.L.A of Defendants' alleged rights in and to the Monroe Right of Publicity, Defendants will continue to assert that A.V.E.L.A has infringed and is infringing, or is

otherwise violating, those rights and thus will continue to cause A.V.E.L.A continuing harm and damage.

33. By virtue of the foregoing, an actual and justiciable controversy exists between the parties. Consequently, A.V.E.L.A seeks a declaration that it has not violating the false designation provision of the Lanham Act.

## COUNT III

### (Declaration of No Unfair Competition Against Estate)

34. A.V.E.L.A restates, realleges, and reiterates its allegations in paragraphs 1 through 33 as if fully set forth herein.

35. Defendants claim that despite the fact that Defendants possess no valid, enforceable right of publicity in the name and likeness of Marilyn Monroe, Defendants possess valid, enforceable trademark like rights in and to the name, likeness and signature of the late Marilyn Monroe under 15 U.S.C. §1125(a) (the Lanham Act).

36. Defendants further claim that A.V.E.L.A's so-called alleged unauthorized activities in the licensing of the Monroe images constitutes an infringement of the trademark like rights to the name and likeness of Marilyn Monroe under the Lanham Act, as discussed above.

37. Consequently, Defendants deduce A.V.E.L.A's infringement is tantamount to unfair competition under the Common Law and the Lanham Act

because A.V.E.L.A failed to obtain Defendants' written consent before Monroe images to third party licensees.

38. However, given the outcome of the Monroe Litigation, A.V.E.L.A has not engaged and/or is not engaging in activities that arise to unfair competition as alleged under the laws of the United States or the common law by Defendants. Therefore, A.V.E.L.A is not liable for unfair competition under those laws for A.V.E.L.A's alleged use of the Monroe images.

39. Moreover, the use of the Monroe images as alleged by the Estate in its June 2, 2011 Correspondence constitutes fair use under the First Amendment to the United States Constitution because the Monroe images as used and/or licensed by A.V.E.L.A were used for creative content associated with products as opposed to the Monroe image being the actual product itself.

40. By virtue of the foregoing, there is an actual and justiciable controversy between the parties whether A.V.E.L.A has engaged in unfair competition with regard to its alleged use of the Monroe images.

41. Absent a declaration that A.V.E.L.A's conduct does not violate unfair competition law, Defendants will continue to assert A.V.E.L.A has and is violating those laws and in this way will cause A.V.E.L.A continual harm and damage.

42. Consequently, A.V.E.L.A seeks a declaration that it is not engaging in unfair competition by using the Monroe images.

## COUNT IV

### (Declaration that the Monroe Right of Publicity Does Not Supersede One's Copyrights Against Estate)

43. A.V.E.L.A restates, realleges, and reiterates its allegations in paragraphs 1 through 42 as if fully set forth herein.

44. Despite the fact that A.V.E.L.A has obtained valid, enforceable copyrights in and to Monroe images, Defendants' claim their alleged rights under the Lanham Act and/or the Monroe Right of Publicity supersede A.V.E.L.A's copyrights and A.V.E.L.A's agreement to license the same.

45. There is an actual and justiciable controversy between the parties whether A.V.E.L.A has infringed on Defendants' alleged rights in and to the name and image of Marilyn Monroe under the Lanham Act and pursuant to the Monroe Right of Publicity.

46. Absent a declaration that A.V.E.L.A's conduct does not violate Defendants' claims under the Lanham Act and/or pursuant to the Monroe Right of Publicity, Defendants will continue to assert A.V.E.L.A has and is violating those laws and in this way will cause A.V.E.L.A continual harm and damage.

47. Consequently, A.V.E.L.A seeks a declaration that it is not in violation of the alleged rights asserted by Defendants under the Lanham Act

and Monroe Right of Publicity through its licensing and/or use of the Monroe images.

## COUNT V

### (Declaration of No Interference with Existing Contractual relationships/Prospective Economic Advantage Against Estate)

48. A.V.E.L.A restates, realleges, and reiterates its allegations in paragraphs 1 through 47 as if fully set forth herein.

49. Defendants claim that A.V.E.L.A's use and third party licensing of Monroe images constitutes interference with existing contractual relationships/prospective economic advantage.

50. However, A.V.E.L.A has not engaged and/or is not engaging in activities that rise to the level of contractual interference and prospective economic advantage as alleged by Defendants. A.V.E.L.A is simply pursuing its licensing business as allowed by this Court in the Monroe Litigation.

51. A.V.E.L.A's conduct of licensing images without Defendants' consent is not interfering with Defendants' contracts or business relationships by any means because the Monroe Litigation permits A.V.E.L.A's licensing.

52. Absent a declaration that A.V.E.L.A's conduct does not violate Defendants claims under the Lanham Act and/or pursuant to the Monroe Right of Publicity, Defendants will continue to assert A.V.E.L.A has and is violating those laws and in this way will cause A.V.E.L.A continual harm and damage.

53.    By virtue of the foregoing, an actual and justiciable controversy exists between the parties.  Consequently, A.V.E.L.A seeks a declaration that it is not in violation of the alleged rights asserted by Defendants under the Lanham Act and Monroe Right of Publicity through its licensing and/or use of the Monroe images.

## CLAIM VI

### (Tortious Interference of Contract Against All Defendants)

54.    A.V.E.L.A restates, realleges, and reiterates its allegations in paragraphs 1 through 53 as if fully set forth herein.

55.    A binding contract existed between A.V.E.L.A and Silver Buffalo.

56.    Upon information and belief, at the time Defendants committed the acts set forth herein, Defendants knew of the existence of this contract, the business relationship and the prospective business relationship between A.V.E.L.A and Silver Buffalo.

57.    Upon information and belief, Defendants knowingly and intentionally interfered with A.V.E.L.A's current business relationship with Silver Buffalo by committed the acts set forth herein.

58.    Defendants intentionally and, with malice towards A.V.E.L.A., disrupted the contractual relationship and business relationship between

A.V.E.L.A and Silver Buffalo through threatening litigation based upon rights this Court concluded it did not have in 2008.

59. Bioworld intentionally and, with malice toward A.V.E.L.A., contacted Spencer's, a retailer of Silver Buffalo, and without basis, claimed it was the sole and exclusive licensee of the purported so-called Marilyn Monroe right of publicity.

60. Defendants have no legal right, privilege or justification for their conduct.

61. As a direct and proximate result of Defendants' intentional contractual interference, A.V.E.L.A has suffered, and will continue to suffer, monetary damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract. In addition, A.V.E.L.A has suffered irreparable injury.

62. Based on the intentional, willful and malicious nature of Defendants' actions, Plaintiffs are entitled to recover exemplary damages and reasonable attorneys' fees and costs incurred in connection with this action.

## JURY DEMAND

63. A.V.E.L.A, Inc. hereby demands a trial by jury on all issues to be properly tried to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, A.V.E.L.A. demands judgment:

1. Permanently restraining and prohibiting Defendants, their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from (1) any form of contact with A.V.E.L.A.'s licensees and retailers for the purpose of falsely representing that they are the sole and exclusive owner of the Marilyn Monroe Right of Publicity; (2) interfering with A.V.E.L.A.'s lawful use of the Marilyn Monroe.

2. Declaring that A.V.E.L.A has not infringed, is not infringing, and is not otherwise liable for any perceived violation of Defendants' alleged rights in and to the name and/or likeness of the late Marilyn Monroe (The Monroe Right of Publicity);

3. Declaring that A.V.E.L.A has not used, and is not using, Defendants' trademarks in violation of the Lanham Act;

4. Declaring that A.V.E.L.A has not used, and is not using, the Monroe Right of Publicity in violation of unfair competition law;

5. Declaring that A.V.E.L.A has not used, and is not using, Defendants' trademarks in violation of unfair competition law;

6. Declaring that the Monroe Right of Publicity as claimed by Defendants does not supersede A.V.E.L.A's valid, enforceable copyrights in and to certain images of the late Marilyn Monroe;

7. Declaring that A.V.E.L.A's actions, as alleged by Defendants, do not arise to a cause of action for interference with existing contractual relationship/prospective economic advantage;

8. Awarding A.V.E.L.A its reasonable attorney's fees and costs incurred in prosecuting this action;

9. Awarding A.V.E.L.A actual and punitive damages for Defendants' contractual interference in amounts to be determined at trial; and

10. Granting such other and further relief as the Court deems just and proper.

DATED:   New York, New York
         June 20, 2012

                                    SCREWVALA LLC

                                    By: _____
                                        Erach F. Screwvala (ES-3317)
                                        244 Fifth Avenue, Suite #E-241
                                        New York, New York 10001
                                        (212) 252-2501
                                        Attorney for Plaintiff A.V.E.L.A., Inc.