UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
A.V.E.L.A., INC.,                     : 12 Civ. 4828 (KPF) (JCF)
                                      :
            Plaintiff,                :      MEMORANDUM
                                      :      AND   ORDER
      - against -                     :
                                      :
THE ESTATE OF MARILYN MONROE,         :
BIOWORLD MERCHANDISING, and DOES      :
1 THROUGH 10,                         :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - -:
THE ESTATE OF MARILYN MONROE and      :
BIOWORLD MERCHANDISING,               :
                                      :
            Counter Claimants,        :
                                      :
      - against -                     :
                                      :
A.V.E.L.A., INC. and LEO VALENCIA,    :
                                      :
            Counter Defendants.       :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

       The parties in this action assert competing claims to the

likeness of Marilyn Monroe.  The Estate of Marilyn Monroe LLC (the

"Estate") moves to compel certain discovery, which it alleges has

been improperly withheld, and for sanctions pursuant to Rule 37 of

the Federal Rules of Civil Procedure and the Court's inherent

power.  For the reasons that follow, the motion is granted in part

and denied in part.

Background

       This case involves a dispute over the right to license

products bearing the image of the iconic film actress Marilyn Monroe.  The plaintiff, A.V.E.L.A., Inc. ("AVELA"), is a company that creates and licenses artwork featuring pop culture figures for use on clothing, novelty items, and other consumer products. (Complaint ("Compl."), ¶ 1; Answer and Counterclaims ("Answer"), at 17, ¶ 20).  AVELA sued the Estate, seeking a declaratory judgment that the products that AVELA licenses do not infringe on any intellectual property owned by the Estate and asserting claims against the Estate for tortious interference.[1]  The Estate maintains that it holds certain trademarks associated with Marilyn Monroe, including her name and signature, as well as protectable rights in her image, persona, and likeness.  (Answer at 15-16, ¶¶ 12-15).  The Estate countersued AVELA and its owner, Leo Valencia, claiming unfair competition, false association, trademark infringement and federal and statutory dilution, and pendant state claims.  (Answer at 20-28, ¶¶ 39-89).  All of the parties are experienced litigants who have pursued similar claims in multiple jurisdictions.  (Compl., ¶ 8; Memorandum of Law in Support of Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC's Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Counter-Pl. Memo.") at 4; Memorandum of Law in Support

---

[1]  AVELA also sued an entity identified as Bioworld Merchandising, which has since been dropped from the litigation.

2

of Opposition to Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC's Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Counter-Def. Memo.") at 2).

The Estate brings this motion claiming that discovery has been hamstrung by the counter-defendants' gamesmanship. (Counter-Pl. Memo at 1). The Estate contends that, rather than refusing outright to produce discovery, the counter-defendants have instead provided misleading testimony, manufactured "self-serving documents," claimed there are no responsive documents to certain requests, or stated that documents cannot be located. (Counter-Pl. Memo. at 1). This strategy of supposed compliance has allegedly prevented the Estate from pursuing a motion to compel and required it to seek third party discovery. (Counter-Pl. Memo. at 1).

In addition, the Estate alleges that Mr. Valencia conducts his licensing business through a "network of commonly controlled entities" as a way of evading any potential liability. (Counter-Pl. Memo. at 3). As an example, AVELA pays a large portion of its revenues to its licensing agent, V. International, a company allegedly organized under the name of Mr. Valencia's occasional girlfriend, Liza Acuna, and also operates as a licensing agent itself for X One X Movie Archives Inc., another company owned by Mr. Valencia. (Counter-Pl. Memo. at 3; Deposition of Leo Valencia dated Sept. 30, 2013 ("Valencia 9/30/13 Dep."), attached as Exh. G

3

to Declaration of Gina L. Durham dated Dec. 19, 2013 ("Durham Decl."), at 20-22, 61). Through this system, one Valencia entity pays another Valencia entity a fee based on the profitability of the images it licenses. (Valencia 9/30/13 Dep. at 20-22). The Estate alleges that this arrangement allows the counter-defendants to obscure the full extent of their licensing business. (Counter-Pl. Memo. at 8-11). In support, the Estate points to several companies that it claims license Marilyn Monroe artwork through the counter-defendants but which have not been identified by the counter-defendants as licensees. (Counter-Pl. Memo. at 8-10; Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC's Reply in Support of its Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Reply") at 6-8). This structure also allegedly allows the counter-defendants to conceal the true revenues gained from licensing Marilyn Monroe products. (Counter-Pl. Memo. at 3).

The Estate seeks to compel discovery of three categories of documents: (1) documents identifying and supporting AVELA's claimed rights in the content that it licenses, specifically contracts with artists ("artist files"), deposit materials for copyright registrations, and a print-out of the website where it offers products for licensing; (2) complete documentation of the counter-defendants' licensees, both foreign and domestic; and (3) financial

records that would support AVELA's claimed revenues and costs and
would provide evidence relevant to the Estate's alter ego claims.
The Estate also seeks a variety of sanctions, ranging from
preclusion of evidence to the award of costs of third party
discovery, which they claim are justified by AVELA's "circuitous
route to discovery obstruction." (Counter-Pl. Memo. at 1, 17-18,
24). In addition, the Estate seeks an extension of time to
disclose expert testimony, provision of an independent e-discovery
consultant to inspect the counter-defendants' computers to verify
licensees at the counter-defendants' expense, and a finding that
certain corporations are alter egos of the counter-defendants.
(Counter-Pl. Memo. at 21-24).

     1. <u>The Discovery Process to Date</u>

In AVELA's initial disclosures pursuant to Rule 26(a)(1), it
represented that it had identified documents "regarding the
acquisition and ownership of artwork featuring Marilyn Monroe,"
documents "regarding the application and registration of the
trademarks related to Marilyn Monroe," and documents "regarding the
expenditures relating to the advertising, marketing and promotion
of the products featuring Marilyn Monroe artwork" as well as the
"revenues and profits" resulting from such artwork. (A.V.E.L.A.,
Inc.'s Initial Disclosures Pursuant to FRCP 26(a)(1) ("AVELA Rule
26 Disclosures"), attached as Exh. A to Durham Decl., at 7). Thus,

AVELA, although not specifying exactly what documents it referred to, represented that it had control of documents supporting both its intellectual property claims and the costs and revenues related to the products.

In its first request for document production, the Estate specifically requested documents identifying each and every copyright registration or application for works incorporating images of Marilyn Monroe, as well as documents demonstrating AVELA's right to make derivative works of third-party works featuring Marilyn Monroe. AVELA responded that it would produce non-privileged responsive documents in its possession, custody, or control. (Plaintiff A.V.E.L.A., Inc.'s Response to Defendant's First Set of Requests for Documents ("AVELA Response"), attached as Exh. B to Durham Decl., at Nos. 4-5). AVELA similarly agreed to produce, in some instances subject to a protective order, documents relating to AVELA's gross revenue and any costs and deductions from that revenue, including statements, invoices, purchase orders, and receipts. (AVELA Response at Nos. 14, 18-20). In response to the request for a print-out of every website operated by or on behalf of AVELA that displayed AVELA licensed products, AVELA stated that, after a reasonable search and inquiry, no responsive documents had been located. (AVELA Response at No. 46).

During his September 2013 deposition, Mr. Valencia testified

as to the existence of certain "artist files" that outline the rights to the Marilyn Monroe images that AVELA licenses. (Valencia 9/30/13 Dep. at 31-32, 36-37, 39).  He also produced a summary sheet of all revenues related to Marilyn Monroe products and a profit and loss statement detailing the costs and deductions against those revenues. (Counter-Pl. Memo. at 11; Valencia 9/30/13 Dep. at 141, 143, 145; Deposition of Leo Valencia dated Oct. 1, 2013 ("Valencia 10/1/13 Dep."), attached as Exh. H to Durham Decl., at 147-51).   Mr. Valencia testified that in creating these statements, he relied on receipts and credit card statements that he kept in a box at his home, organized by year. (Valencia 9/30/13 Dep. at 143-45).

Following the deposition, the counter-defendants produced several copyright registrations but did not provide the deposit materials showing the images associated with each registration. (E-mail of Melissa Woo dated Sept. 10, 2013, attached as Exh. D to Durham Decl.).  Although counsel for the counter-defendants stated that the deposit materials would be produced, the Estate never received the images. (Counter-Pl. Memo. at 7).  No artist files or underlying financial documents were produced to the Estate. (Counter-Pl. Memo. at 6).  The Estate reiterated its requests for artist files, financial records and supporting documentation, and identification of "all of the companies which Mr. Valencia operates

7

under for purposes of licensing artwork featuring celebrities" in November 2013. (Letter of Nicole Ann Chaudhari dated Nov. 4, 2013 ("Chaudhari Letter"), attached as Exh. O to Durham Decl., at 2; E-Mail of Nicole Chaudhari dated Nov. 14, 2013 ("Chaudhari E-mail"), attached as Exh. R to Durham Decl.)). On December 4, 2013, the Estate received an e-mail from AVELA's counsel stating that Mr. Valencia was unable to locate several types of requested discovery, including any artist files or "invoices, receipts, checks, bank statements, [or] credit card statements." (E-mail of Melissa Woo dated Dec. 4, 2013 ("Woo 12/4/13 E-Mail"), attached as Exh. V to Durham Decl.). The Estate subsequently cancelled its second deposition of Mr. Valencia and, on December 19, 2013, filed this motion for sanctions and to compel discovery.

On January 14, 2014, several hours before filing their opposition to the pending motion, the counter-defendants produced to the Estate copies of the images that were deposited with the U.S. Copyright Office, to correspond with the copyright registrations previously produced; several artist contracts and an example of the general agreement used with all commissioned artists; a copy of all the pages from the website www.radio-days.info; and unredacted copies of checks verifying the payment of agency fees to V. International. (Counter-Def. Memo. at 4-5, 7; Declaration of Leo Valencia dated Jan. 14, 2014 ("Valencia Decl."),

attached as Exh. 6 to Counter-Def. Memo., ¶ 3, 7).

Discussion

   A. Legal Standard

   Rule 26 of the Federal Rules of Civil Procedure imposes on
parties an affirmative obligation to disclose "a copy -- or
description by category and location -- of all documents,
electrically stored information, and tangible things that the
disclosing party . . . may use to support its claims or defenses."
Fed. R. Civ. P. 26(a)(1)(A)(ii).   Beyond these automatic
disclosures, the discovery system in civil cases is largely
"predicated on the exchange of requests for information."
R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 41 (S.D.N.Y. 2010), opinion
adopted, 271 F.R.D. 55 (S.D.N.Y. 2010).   Parties are required to
supplement any disclosures or responses to discovery requests "in
a timely manner" if additional information makes the disclosure or
response incomplete or incorrect.   Fed. R. Civ. P. 26(e)(1)(A).
Once parties receive notice that certain evidence may be relevant
to the litigation at hand, or to future litigation, they are also
under an obligation to preserve that evidence.   See R.F.M.A.S.,
Inc., 271 F.R.D. at 23.

   The court has "wide discretion to determine appropriate
sanctions for discovery abuses."   Arista Records, LLC v.
Usenet.com, Inc., 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009); see

9

also <u>Johnson v. Strive East Harlem Employment Group</u>, __ F. Supp. 2d __, 2014 WL 25666, at *15 (S.D.N.Y. 2014).   If a party fails to comply with Rule 26(a) or (e), the Federal Rules of Civil Procedure mandate that the party be precluded from offering such evidence, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); <u>see also</u> <u>Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC</u>, 280 F.R.D. 147, 158-59 (S.D.N.Y. 2012).   "A failure to disclose under Rule 37 encompasses both the destruction of evidence, or spoliation, and untimely production of documents and information required to be produced."   <u>In re September 11th Liability Insurance Coverage Cases</u>, 243 F.R.D. 114, 130 (S.D.N.Y. 2007) (citing <u>Residential Funding Corp. v. DeGeorge Financial Corp.</u>, 306 F.3d 99 (2d Cir. 2002)).   The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information.   <u>See</u> <u>Lodge v. United Homes, LLC</u>, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011).

   B. <u>Sanctions for Failure to Comply with Rule 26 Obligations</u>

   When seeking sanctions for failure to produce discovery, the moving party must show that (1) the party with control over the evidence had an obligation to timely produce it; (2) the party had a "culpable state of mind"; and (3) the missing evidence is relevant to the party's claim or defense "such that a reasonable

trier of fact could find it would support that claim or defense."
<u>Valentini v. Citigroup, Inc.</u>, No. 11 Civ. 1355, 2013 WL 4407065, at
*2 (S.D.N.Y. Aug. 16, 2013) (quoting <u>In re September 11th Liability
Insurance Coverage Cases</u>, 243 F.R.D. at 125).   To establish
culpability, all that is required is negligence leading to a breach
of a discovery obligation.   <u>See Residential Funding Corp.</u>, 306 F.3d
at 113 (culpable state of mind where party breached discovery
obligation "through bad faith or gross negligence [or] ordinary
negligence"); <u>Valentini</u>, 2013 WL 4407065, at *3 (culpable state of
mind established where party was "at least negligent in failing to
properly search for and produce responsive documents in a timely
and thorough manner"); <u>R.F.M.A.S., Inc.</u>, 271 F.R.D. at 23 ("In the
Second   Circuit,   negligence   is   sufficient   to   establish
culpability.").

All   three   elements   are   met   here.   AVELA   was   under   an
affirmative obligation to produce all documents that it might use
to support its claims or defenses, Fed. R. Civ. P. 26(a), and
indicated in its initial Rule 26 Disclosures that it had documents
supporting its copyright claims and its revenues, costs, and
deductions.   In addition, these categories of discovery were
explicitly and repeatedly requested by the Estate.   (AVELA
Response; Chaudhari Letter; Chaudhari E-Mail).   Mr. Valencia
specifically made reference to the artist files that supported his

11

copyright claims in his September 2013 deposition. (Valencia 9/30/13 Dep. at 31-32, 39). Similarly, he referred to the underlying financial documents used to create the summmary documents he provided to the Estate and indicated he kept these documents at his home. (Valencia 9/30/13 Dep. at 143-45). During September 2013, then, he had possession of such documents and knew of their relevance. Several months later, AVELA counsel told the Estate that Mr. Valencia was unable to locate these documents. (Woo 12/4/13 E-Mail). Such conduct is, at minimum, grossly negligent. Information clarifying the ultimate rights of AVELA and Mr. Valencia in licensing Marilyn Monroe artwork -- including the artist files, copyright deposit materials, and documents identifying the Marilyn Monroe artwork that AVELA offers to license to third parties -- clearly "bear[s] on the central allegations in the [action]." Valentini, 2013 WL 4407065, at *3; see also Lodge, 787 F. Supp. 2d at 260 (finding that documents supporting claim of ownership are relevant to defense, where case centers on ownership dispute). Documents establishing the sales and costs associated with AVELA's licensing of Marilyn Monroe artwork are also critical to proving damages under the Latham Act, see 15 U.S.C. § 1117(a), and Mr. Valencia's admitted use of the now-missing receipts and credit card statements in crafting the financial summaries he produced establishes their particular relevance, Residential

12

Funding Corp., 306 F.3d at 109 (a party may establish relevance through deposition testimony). As the Estate has established that the counter-defendants violated their discovery obligations to produce discovery supporting their copyright claims and AVELA's revenues and costs, sanctions are warranted.

To avoid sanctions, a party that fails to disclose or supplement relevant information under Rule 26 must show that its non-compliance was substantially justified or that it was harmless. See Ritchie Risk, 280 F.R.D. at 158-59; Schiller v. City of New York, Nos. 04 Civ. 7922, 04 Civ. 7921, 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008). The counter-defendants attribute the delay in producing these materials to an injury in mid-November that reduced Mr. Valencia's mobility and to the death of a close family member in early December. (Counter-Def. Memo. at 4; Valencia Decl., ¶¶ 12-13). The Estate responds that this explanation only applies to a three week period starting in mid-November and cannot justify the delay in production before that time. The Estate also notes that although the website printouts have now been provided, production came several months after a third party provided printouts of the www.radio-days.info website, and six months after the counter-defendants' assertion that no responsive documents existed. The explanations offered are not a substantial justification for the delay in providing artist files,

13

deposit materials, and website printouts. Nor can these explanations justify the counter-defendants' continuing inability to locate receipts and credit card statements supporting the summary income and balance sheets they have produced to the Estate.[2]

### 1. Preclusion

The Estate requests an order precluding the counter-defendants from introducing any evidence: (a) suggesting that the counter-defendants have documentation supporting their claims of intellectual property ownership in Marilyn Monroe images, or (b) demonstrating costs or deductions in response to the Estate's calculation of AVELA's profits. (Counter-Pl. Memo. at 18). Although Rule 37(c) by its language appears to mandate preclusion when a party breaches its obligations under Rule 26, "[p]reclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.p.A., No. 08 CV 2540, 2011 WL 1239867, at *4 (E.D.N.Y. March 30, 2011) (quoting Design Strategy v. Davis,

---

[2] The counter-defendants did produce new copies of the checks representing the agency fees paid by AVELA to V. International on January 14, 2014. (Counter-Def. Memo. at 7). However, the Estate contends that these copies are illegible and no better than the previously-provided, heavily-redacted copies. (Reply at 9).

469 F.3d 284, 297 (2d Cir. 2006)).   Other sanctions include
ordering further discovery; shifting of costs, including attorneys'
fees, incurred by the moving party as a result of the discovery
violation; informing the jury of the party's failure to comply with
its discovery obligations; and terminating sanctions including
dismissal.   R.F.M.A.S., Inc., 271 F.R.D. at 22.   Generally,
preclusion is viewed as a harsh sanction that "should be imposed
only in rare situations."   Izzo v. ING Life Insurance & Annuity
Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting Update Art, Inc.
v. Modiin Publishing, Ltd., 843 F.2d 67, 71 (2d Cir. 1988)); see
also Kunstler v. City of New York, 242 F.R.D. 261, 265 (S.D.N.Y.
2007) (noting that preclusion is "disfavored"); Ritchie Risk, 280
F.R.D. at 161 (noting the "importance of imposing such a sanction
sparingly").   Nonetheless, recourse to this harsh remedy may be
"necessary to achieve the purpose of Rule 37 as a credible
deterrent rather than a paper tiger."   Update Art, Inc., 843 F.2d
at 71 (internal quotation marks omitted).   Although a finding of
evil intent is not required to impose sanctions under Rule 37, a
party's bad faith may factor into the court's analysis.   See Lujan
v. Cabana Management, Inc., 284 F.R.D. 50, 68 (E.D.N.Y. 2012);
Ritchie Risk, 280 F.R.D. at 157.

To determine whether preclusion or a lesser sanction is
warranted, a court should consider (1) the party's explanation for

the failure to comply with discovery obligations; (2) the
importance of the evidence to be precluded; (3) the prejudice
suffered by the opposing party as a result of having to prepare to
meet the belatedly-revealed evidence; and (4) the possibility of a
continuance.  See Kam Hing Enterprises, Inc. v. Wal-Mart Stores,
Inc., 359 F. App'x 235, 237 (2d Cir. 2010) (citing Design Strategy,
469 F.3d at 296); Softel, Inc. v. Dragon Medical & Scientific
Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997); accord
Agence France Presse v. Morel, 293 F.R.D. 682, 685 (S.D.N.Y. 2013);
see also Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir.
1988) ("Before the extreme sanction of preclusion may be used
. . . a judge should inquire more fully into the actual
difficulties which the violation causes.").

Here, three out of four factors weigh against precluding this
evidence.  In favor of preclusion is the counter-defendants' paltry
explanation for belated production and their continuing inability
to locate relevant documents.  However, the evidence that the
counter-plaintiff seeks to preclude is crucial to the claims at the
center of this controversy.  Precluding any evidence AVELA has to
support its copyright claims would place the counter-defendants at
a critical disadvantage, especially given their (albeit belated)
production of several artist files and the deposit images for four
copyright registrations.  The same applies to evidence supporting

16

AVELA's claimed revenues, costs, and deductions.  In addition, any prejudice suffered by the Estate is not yet appreciable enough to merit preclusion.  Discovery has been stayed, some of the requested documents have now been produced to the Estate, and Mr. Valencia will, as directed below, turn over relevant documentation.  If the counter-defendants ultimately do not produce the requested information, a preclusion order will be warranted.  See Kam Hing Enterprises, Inc., 359 F. App'x at 237-38 (precluding any testimony on costs where summary spreadsheets were provided without any underlying documentation).  For now, the motion to preclude evidence relating to the counter-defendants' claims of copyright and their claimed costs and deductions is denied without prejudice to renewal to the extent that the counter-defendants have not produced the requested documents within thirty (30) days of the date that the stay of discovery is lifted.

    2. Other Sanctions

When fashioning an appropriate sanction, the court should consider "'the prophylactic, punitive, and remedial rationales' of discovery sanctions." Passlogix, Inc. v. 2FA Technology, LLC, 708 F. Supp. 2d 378, 422 (S.D.N.Y. April 27, 2010)); see also In re September 11th Liability Insurance Coverage Cases, 243 F.R.D. at 131-32 ("[T]he court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but

for the breach of discovery obligations and deter future misconduct."). Even where preclusion is not warranted, "it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions." <u>Ritchie Risk</u>, 280 F.R.D. at 157. It is also proper to shift costs where one party's dilatory conduct causes the other party to incur additional costs it would otherwise not have borne. <u>Id.</u>

That the counter-defendants have now produced several of the documents that the Estate sought to compel does not shield them from sanctions. <u>See</u> <u>Underdog Trucking, LLC v. Verizon Services Corp.</u>, 273 F.R.D. 372, 378 (S.D.N.Y. 2011) (awarding reasonable costs and attorneys' fees incurred in making motion to compel where dilatory party produced documents only after motion filed). The Estate asks, as an alternative to preclusion, that the court grant the counter-plaintiff additional time to depose Mr. Valencia at the counter-defendants' expense. (Counter-Pl. Memo. at 21-22). The Estate shall be accorded the time necessary to depose Mr. Valencia on all newly-produced evidence. Because the deposition would have been taken regardless of the motion, however, costs will not be shifted. The counter-plaintiff also requests an extension of time to disclose expert testimony. Although the deadline for

designating an expert was December 23, 2013, an extension is warranted in light of the recent, as well as anticipated, production of evidence.

C. <u>Motion to Compel Further Discovery</u>

In addition to sanctions, the Estate seeks to compel further discovery under Rule 37(a) of the Federal Rules of Civil Procedure.

The Estate first requests a list of all of the counter-defendants' licensees of Marilyn Monroe products, both foreign and domestic. (Counter-Pl. Memo. At 22). According to the Estate, as there are no territorial restrictions in the U.S. licenses produced so far, it is likely that foreign licenses issued by the counter-defendants also contain no territorial restrictions. (Counter-Pl. Memo. at 10). In support of its contentions that AVELA's current disclosures are inadequate, the Estate highlights inconsistent deposition testimony by Ms. Acuna, a licensing agent for AVELA, who initially stated that an entity called Mighty Fine was an AVELA licensee and then changed her testimony during a subsequent Rule 30(b)(6) deposition. (Counter-Pl. Memo. at 8; Deposition of Liza Acuna dated Sept. 13, 2013, attached as Exh. E to Durham Decl., at 102-03; Deposition of Liza Acuna dated Sept. 26, 2013, attached as Exh. F to Durham Decl., at 102). Mr. Valencia also testified that Mighty Fine was not an AVELA licensee. (Counter-Pl. Memo. at 8-9; Valencia 10/1/13 Dep. at 130-131). When the Estate deposed Mighty

Fine, however, that entity was under the impression that it licensed Marilyn Monroe artwork from AVELA. (Counter-Pl. Memo. at 9; Counter-Pl. Reply at 5-6). Based on this conflicting testimony, as well as research indicating three other non-disclosed entities who may license Marilyn Monroe artwork through the counter-defendants, the Estate contends that it has not received full disclosure of AVELA's licensees. (Counter-Pl. Memo. at 8-10; Reply at 4-8). Since the motion was filed, the Estate claims to have found Marilyn Monroe products from three additional companies, stamped with a trademark registered to AVELA, who were not identified by the counter-defendants as licensees. (Reply at 7-8).

The counter-defendants allege that they have provided all relevant license agreements, royalty reports, and product approval forms. (Counter-Def. Memo. at 5). They dispute that they have attempted to conceal the extent of their licensing business, and explain discrepancies between Mighty Fine's characterization of its relationship with AVELA and Mr. Valencia's deposition testimony by clarifying that Mighty Fine licenses Marilyn Monroe artwork from IPL, Inc., a company for which Mr. Valencia operates as a licensing agent but does not own. (Counter-Def. Memo. at 5-6; Valencia Decl., ¶ 16). The counter-defendants also object to producing any information on foreign licensees, arguing that such information is irrelevant as all foreign licensing agreements contain territorial

restrictions.  (Counter-Def. Memo. at 6 n.2).  Notably, however, they do not contest that one of the entities identified by the Estate in its motion as an undisclosed licensee -- Poetic Gem -- was indeed a former licensee of AVELA but was not included in the royalty reports produced to the Estate.  (Counter-Def. Memo. at 6 n.2; Reply at 7).  Given the counter-defendants' recalcitrant approach to discovery thus far, it is appropriate to order discovery of all the entities through which the counter-defendants -- both AVELA and Mr. Valencia -- license Marilyn Monroe artwork, either as licensor or as licensing agent.  This list should encompass all worldwide licensees, both former and current.  The counter-defendants shall produce such a list along with the associated license agreements.

In order to verify this list of licensees, the Estate asks the court to order Mr. Valencia to disclose the address of every premise operated by his various business entities and allow an independent e-discovery consultant to access those premises and inspect the computers.  (Counter-Pl. Memo. at 22-23).  This request is premature, and is therefore denied without prejudice.  Should the counter-defendants' disclosures prove inadequate after production of the list of all licensees and license agreements ordered above, the Estate may renew its application.

The Estate also requests a list of all financial institutions

where the counter-defendants maintain an account and the names under which the accounts are kept.  (Counter-Pl. Memo. at 23). Given the allegations in this action, "identifying the universe of accounts utilized by [the counter-defendants] will surely facilitate focusing upon those [particular] accounts" that may support the Estate's alter ego contentions and cost calculations. See Madanes v. Madanes, 186 F.R.D. 279, 289 (S.D.N.Y. 1999). "[T]he identities of the accounts are relevant, though the relevance of all account documents may not yet have been demonstrated." Id.  The counter-defendants are therefore ordered to provide a list of all financial institutions where either Mr. Valencia or AVELA maintain an account, including accounts maintained under the name of another business entity.  The Estate asserts that, on the whole, the counter-defendants' financial disclosures are inadequate and seek to compel the production of documents that support the income summary sheet, balance sheets, and profit and loss statements provided by the counter-defendants. In particular, the Estate claims that the checks from AVELA to V. International, one of its licensing agents, are so heavily redacted that they consist of nothing more than dates and amounts of money, without routing numbers, signatures, or any other information that could be used to verify the documents.  (Counter-Pl. Memo. at 14-16; Valencia 10/1/13 Dep. at 153-54).

The counter-defendants respond that they have produced financial documents to the best of their ability, and will continue to supplement their discovery if they are able to find additional records, including receipts, invoices, and credit card statements. On January 14, 2014, the counter-defendants produced copies of the actual checks (Counter-Def. Memo. at 7), but in its Reply the Estate contends that these copies are so small as to be illegible, and therefore of no value (Reply at 9). The counter-defendants are therefore directed to produce new copies of the checks from AVELA to V. International. Mr. Valencia shall also produce all underlying financial records demonstrating the revenue, sales, costs, and deductions associated with the Marilyn Monroe artwork licensed by or through himself or AVELA. The counter-defendants shall also, consistent with the new list of licensees, supplement their royalty reports, balance sheets, and income summary as required under Rule 26(e).

Because the counter-plaintiff's motion has been granted in substantial part, an award of reasonable expenses is warranted. See Fed. R. Civ. P. 37(a)(5). The counter-defendants shall pay all reasonable costs and fees associated with this motion to compel.

D. <u>Inherent power to sanction</u>

The Estate seeks additional sanctions pursuant to the Court's inherent power. In particular, the Estate requests payment of

23

costs for the third party deposition of Mighty Fine, a former AVELA
licensee, and a finding that Mr. Valencia and his various business
entities are alter egos of one another.  (Counter-Pl. Memo. at 23-
24).  I decline the invitation to use the Court's inherent power to
levy further sanctions at this time.  See R.F.M.A.S., Inc., 271
F.R.D. at 22 (noting that court may "sanction parties for sustained
uncooperative conduct during discovery, even if no single act in
the uncooperative party's course of conduct would, on its own,
warrant sanctions.").  The counter-defendants are not required to
cover the costs of the Mighty Fine deposition, an alleged AVELA
licensee, as the Estate chose a litigation strategy of pursuing
third party depositions.  The determination of alter ego status is
premature and beyond the scope of this motion.  Depending on
outcome of discovery, it may be renewed at a later date.  Although
the Estate points to several instances of what it characterizes as
falsified testimony and manufactured evidence, the counter-
defendants provided some explanation for apparent discrepancies.
Thus, although it is clear that the counter-defendants are hardly
a model of transparency and cooperation, the Estate has not
provided conclusive proof of misrepresentations sufficient to
warrant additional sanctions.

Conclusion

    For the reasons stated above, the motion to compel (Docket no.

44) is granted to the extent indicated. The counter-defendants shall produce a worldwide list of all licensees, former and current, that license Marilyn Monroe products either directly from AVELA or through AVELA or Mr. Valencia operating as a license agent. They shall also disclose a complete list of financial institutions at which AVELA or Mr. Valencia maintains an account and produce the underlying financial documentation supporting their balance sheets and profit and loss statements, including legible copies of checks from AVELA to V. International. Further, they shall produce any documentation supporting their claims of intellectual property ownership in Marilyn Monroe images. The counter-defendants shall comply with these requirements within thirty (30) days of the date that the discovery stay currently in place is lifted. The counter-plaintiffs are granted an extension of forty-five (45) days from the date the stay is lifted to disclose expert testimony and to depose Mr. Valencia. The counter-defendants shall pay the costs and fees associated with litigating this motion.

                    SO ORDERED.

                    _James C. Francis IV_
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

                              25

Dated: New York, New York
        February 24, 2014

Copies mailed this date:

Erach F. Screwvala, Esq.
Screwvala LLC
244 Fifth Ave. #E-24L
New York, NY 10001

Philip R. Berwish, Esq.
Berwish Law
228 Park Avenue South, Suite 30780
New York, NY 10003

Gina L. Dunham, Esq.
DLA Piper, LLP
555 Mission Street, Suite 505
San Francisco, CA 94105

Nicole A. Chaudhari, Esq.
DLA Piper, LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601

Tamar Y. Duvdevani, Esq.
DLA Piper, LLP
1251 Avenue of the Americas
New York, NY 10020