```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
A.V.E.L.A., INC.,                      : 12 Civ. 4828 (KPF) (JCF)
                                       :
               Plaintiff,              :        MEMORANDUM
                                       :        AND   ORDER
      - against -                      :
                                       :
THE ESTATE OF MARILYN MONROE,          :
BIOWORLD MERCHANDISING, and DOES       :
1 THROUGH 10,                          :
                                       :
               Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
THE ESTATE OF MARILYN MONROE and       :
BIOWORLD MERCHANDISING,                :
                                       :
               Counter Claimants,      :
                                       :
      - against -                      :
                                       :
A.V.E.L.A., INC. and LEO VALENCIA,     :
                                       :
               Counter Defendants.     :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Leo Valencia has applied for reconsideration of my February 24, 2014 Memorandum and Order, granting the motion to compel filed by the defendant, the Estate of Marilyn Monroe (the "Estate"). See A.V.E.L.A., Inc. v. Estate of Monroe, No. 12 Civ. 4828, 2014 WL 715540 (S.D.N.Y. Feb. 24, 2014). For the following reasons, reconsideration is granted, but I adhere to my prior determination.

Background

In its Motion for Sanctions for Discovery Misconduct and to

Compel Discovery, the Estate outlined what it contended constituted grave misconduct on the part of AVELA and Mr. Valencia in evading discovery obligations.  The primary thrust of the motion was to preclude AVELA from offering evidence relating to (1) documentation supporting any claims of intellectual property ownership in Marilyn Monroe images and (2) elements of cost in deduction with respect to the Estate's disgorgement of profits remedy.  As an alternative, the Estate sought production of the evidence in dispute, as well as documentation of the counter-defendants' licensees, both foreign and domestic.  (Memorandum of Law in Support of Defendant/Counter-Plaintiff the Estate of Marilyn Monroe, LLC's Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Counter-Pl. Memo.") at 21-22).  The Estate also sought additional sanctions under Rule 37 and pursuant to the Court's inherent power. (Counter-Pl. Memo. at 22-24)

On February 24, 2014, I issued a Memorandum and Order, largely granting the Estate's motion to compel, although declining to preclude evidence or order other sanctions. <u>AVELA</u>, 2014 WL 715540, at *10. I observed that, several hours before filing their opposition to the motion, the counter-defendants produced several of the requested categories of discovery, including artist files, copyright deposit materials, copies of checks from AVELA to V International, and a printout of the website www.radio-days.info

2

including images offered for licensing. Id. at *4. After determining that preclusion was unwarranted at this stage in the litigation, I ordered the counter-defendants to produce: a list of worldwide licensees; a list of all financial institutions where AVELA or Mr. Valencia maintained accounts, including accounts in the name of other business entities; the underlying financial records demonstrating revenues, sales, costs, and deductions associated with Marilyn Monroe artwork (including new copies of the recently produced checks); and any further documentation supporting their claims of intellectual property in the Marilyn Monroe images AVELA offered for licensing. Id. at *10. As the motion to compel had been granted, I also required the counter-defendants to bear the Estate's costs associated with the motion. The counter-defendants were ordered to comply within thirty days of the date that the discovery stay then in place was lifted. On March 14, 2014, plaintiff's newly-retained counsel filed this motion for reconsideration.

Discussion

    A.   Legal Standard

    A motion for reconsideration is governed by Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and is committed to the sound discretion of the court. Idowu v. Middleton, No. 12 Civ. 1238,

3

2013 WL 371657, at *1 (S.D.N.Y. Jan. 31, 2013).  "'The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012) (quoting Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)).  Generally, reconsideration "requires 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Capitol Records, Inc. v. MP3tunes, LLC, No. 07 Civ. 9931, 2013 WL 1987225, at *1 (S.D.N.Y. May 14, 2013) (quoting Virgin Atlantic Airways Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 (2d Cir. 1992)).  "A party seeking reconsideration may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues or arguments not previously presented to the Court." Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (internal quotation marks omitted).  Reconsideration remains "an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." Hinds County, Mississippi v. Wachovia Bank N.A., 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (internal quotation marks

omitted).

B.   <u>Reconsideration of Compelled Production</u>

Rule 26 authorizes parties to obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," as well as all information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The counter-plaintiff is correct that the initial disclosures mandated by Rule 26(a) do not require the disclosing party to produce actual documents "until the other party wishes to obtain access to the [referenced] documents by either a formal or informal discovery request." <u>Coppola v. Bear Stearns & Co.</u>, 1:02-CV-1581, 2005 WL 3159600, at *7 (N.D.N.Y. Nov. 16, 2005).  Rule 26(e), meanwhile, imposes an obligation to timely supplement or correct discovery responses either when a party "learns that in some material respect the disclosure or response is incomplete or incorrect" or "as ordered by the court."  Fed. R. Civ. P. 26(e).

Here, the Estate followed the initial disclosures by AVELA and Mr. Valencia with requests, both formal and informal, for the information they subsequently sought to compel.  (The Estate of Marilyn Monroe, LLC's Memorandum of Law in Opposition to A.V.E.L.A., Inc.'s and Leo Valencia's Motion for Reconsideration of Order Compelling Discovery and Awarding Attorneys' Fees at 8;

5

Plaintiff A.V.E.L.A., Inc.'s Response to Defendant's First Set of Requests for Documents ("AVELA Response"), attached as Exh. B to Declaration of Gina L. Durham dated Dec. 19, 2013 ("Durham Decl."), Response Nos. 4-5, 8-12, 14, 18-22; Cross-Defendant Leo Valencia's Responses to Defendant the Estate of Marilyn Monroe, LLC's First Set of Requests for Production of Documents to Cross-Defendant Leo Valencia ("Valencia Response"), attached as Exh. N to Durham Decl., Response No. 3). In most cases, the counter-defendants agreed to produce all responsive documents but then contended that such documents could not be located. (AVELA Response, Response Nos. 4-5, 14, 18-22; Valencia Response, Response No. 3; E-mail of Melissa Woo dated Dec. 4, 2013 ("Woo 12/4/13 E-Mail"), attached as Exh. V to Durham Decl.; Counter-Pl. Memo. at 1). AVELA also responded that, after a reasonable search and inquiry, there were no documents responsive to the Estate's request for a printout of AVELA-operated websites displaying AVELA licensed products. (AVELA Response, Response No. 46). This posture, according to the Estate, allowed the counter-defendants to contend that they were compliant with their discovery obligations yet prevented the Estate from pursuing a motion to compel. (Counter-Pl. Memo. at 1).

"Where one party fails to respond to a discovery request, or provides evasive or incomplete responses, the aggrieved party may seek an order to compel disclosure or discovery." Glencore Denrees

<u>Paris v. Department of National Store Branch 1</u>, No. 99 Civ. 8607, 2008 WL 4298609, at *4 (S.D.N.Y. Sept. 19, 2008) (citing Fed. R. Civ. P. 37(a)); <u>In re Teligent, Inc.</u>, 358 B.R. 45, 61 (Bankr. S.D.N.Y. 2006).  It is up to the party seeking to compel production to "cast doubt" on the responding party's representation that they have conducted a reasonable and adequate search for responsive documents.  <u>Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.</u>, No. 08 Civ. 1533, 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011); <u>see also</u> <u>Trilegiant Corp. v. Sitel Corp.</u>, 272 F.R.D. 360, 368 (S.D.N.Y. 2010) (where requesting party could not specify documents opposing party failed to produce, "no basis for ordering [opposing party] to respond more fully to these requests").  The Estate carried its burden by pointing to inconsistencies in deposition testimony and undisclosed licensees, among other evidence.  In addition, the production of several categories of documents in response to the filing of the motion to compel undermined the counter-defendants' claims that such information could not be found.

      1.  <u>Intellectual Property Rights to Marilyn Monroe Images</u>

In its first request for document production, the Estate formally requested documents identifying each and every copyright registration or application for works incorporating images of Marilyn Monroe, as well as documents demonstrating AVELA's rights

to use third-party works featuring Marilyn Monroe (i.e., the "artist files"). AVELA responded that it would produce non-privileged responsive documents in its possession, custody, or control. (AVELA Response, Response Nos. 4-5). It did produce several copyright registrations. The Estate then requested, through e-mail, the deposit materials associated with such registrations. (E-mail of Nicole Chaudhari dated Sept. 10, 2013, attached as Exh. C to Durham Decl.). AVELA's then-counsel responded, on September 10, 2013, that she had "requested the deposit copies and [would] produce" them. (E-mail of Melissa Woo dated Sept. 10, 2013, attached as Exh. D to Durham Decl.). Despite this confirmation, the deposit materials were not produced. The Estate also reiterated its request for the artist files. (Letter of Nicole Ann Chaudhari dated Nov. 4, 2013 ("Chaudhari Letter"), attached as Exh. O to Durham Decl., at 2). In December 2013, AVELA responded that it was unable to locate these files. (Woo 12/4/13 E-Mail).

After the motion to compel was filed, the counter-defendants produced the requested copyright deposit materials and several artist files. (Memorandum of Law in Support of Opposition to Defendant/Counter-Plaintiff the Estate of Marilyn Monroe, LLC's Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Counter-Def. Memo.") at 4-5; Declaration of Leo

8

Valencia dated Jan. 14, 2014 ("Valencia Decl."), attached to Counter-Def. Memo., ¶¶ 3, 14).   The counter-defendants also produced a copy of the pages from the website www.radio-days.info, despite its response in August 2013 that no such documents existed. (Counter-Def. Memo. at 5; AVELA Response, Response No. 46).

The requested materials are clearly relevant to the claims at issue in this case.  In their initial disclosures, AVELA proffered that it had "documents regarding the acquisition and ownership of artwork featuring Marilyn Monroe," which the Estate then requested. (A.V.E.L.A., Inc.'s Initial Disclosures Pursuant to FRCP 26(a)(1) ("AVELA Rule 26 Disclosures"), attached as Exh. A to Durham Decl., at 7; AVELA Response, Response Nos. 4-5).   In its motion, the Estate provided sufficient evidence to conclude that these documents were in AVELA's possession but were not being produced in a timely manner.   (Counter-Pl. Memo. at 5-7 (highlighting deposition testimony regarding artist files and subsequent e-mails that such files could not be located, and delay in production of copyright deposit materials)).   In my prior order, despite the belated production of some requested documents, I required the counter-defendants to produce any further documentation supporting their claims of intellectual property ownership in Marilyn Monroe images, essentially reiterating the mandate under Rule 26 that parties must timely supplement their disclosures and production.

That order stands.  To the extent that any further responsive documents relating to its intellectual property rights in Marilyn Monroe images remain in its possession, custody, or control, AVELA is required to produce them.[1]  If no such documents exist or can be found, AVELA is directed to file a certification to that effect. See, e.g., Colon v. Potter, No. 3:08 CV 75, 2009 WL 1456486, at *1 (D. Conn. May 21, 2009) (requiring party to provide sworn affidavit attesting that diligent search produced no responsive materials).

    2. Financial Records

        i. Checks

In its motion to compel, the Estate contended that the checks provided by the counter-defendants demonstrating the fees paid by AVELA to V International were redacted beyond recognition and unusable. (Counter-Pl. Memo. at 14-15).  AVELA provided new copies of the checks in conjunction with its opposition. (Counter-Def. Memo. at 8 ("[Mr.] Valencia has located copies of the actual checks and has produced them to The Estate . . . .")).  The Estate, however, noted in its Reply that, although unredacted, the new copies were nonetheless illegible.  (Defendant/Counter-Plaintiff

---

[1] In its opposition to the motion to compel, then-counsel for the counter-defendants noted that "several artist contracts" had recently been located and produced, which leaves open the possibility that a diligent search might uncover other such files. (Counter-Def. Memo. at 4).

the Estate of Marilyn Monroe, LLC's Reply in Support of its Motion for Sanctions for Discovery Misconduct and to Compel Discovery ("Counter-Pl. Reply") at 9). Based on this exchange, I required AVELA to produce new copies of the checks.

The counter-defendants' counsel now proffers that the checks produced on January 14 were in fact copies received from AVELA's bank, as Mr. Valencia could not locate the checks.[2] Counter-defendants' counsel doubts that the bank has more legible copies of the checks, and therefore argues that the counter-defendants cannot be required to produce documents outside of their possession, custody, or control. (AVELA Reconsideration Memo. at 2, 14-15). This is information that could have been presented to the Court in AVELA's opposition to the motion to compel, but was not. If

---

[2] Although counsel for the counter-defendants argues that requesting and producing copies of the checks from the bank demonstrates the counter-defendants' willingness to "go the extra mile" in discovery (Memorandum of Points and Authorities in Support of Motion for Reconsideration of Order Compelling Discovery and Awarding Attorneys' Fees ("AVELA Reconsideration Memo.") at 3), no mention is made of requesting the bank statements that the counter-defendants say cannot be located. In addition, it bears mention that a party may be required to produce discovery under Rule 34 not only where it has actual physical possession of the documents at issue, but also where it has the "practical ability to obtain the documents from a non-party to the action." In re NTL, Inc. Securities Litigation, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), aff'd sub nom. Gordon Partners v. Blumenthal, No. 02 Civ. 7377, 2007 WL 1518632 (S.D.N.Y. May 17, 2007) (emphasis added) (internal quotation marks omitted); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Austria, No. MDL 1428, 2006 WL 1328259, *5 (S.D.N.Y. May 16, 2006).

counter-defendants cannot acquire more legible copies of the checks, AVELA must file a certification to that effect.

ii. <u>Underlying Financial Documentation</u>

In its Rule 26 disclosures, AVELA represented that it had in its possession documents relating to the expenditures associated with advertising, marketing, and promotion. (AVELA Rule 26 Disclosures at 7). AVELA produced balance sheets for 2008-2012 and an income summary showing the percentage of AVELA profits attributed to Marilyn Monroe products. (Counter-Def. Memo. at 7). During Mr. Valencia's deposition, the Estate questioned him on the creation of this income summary, which he was preparing at the time. (Deposition of Leo Valencia dated Oct. 1, 2013 ("Valencia Dep."), attached as Exh. H to Durham Decl., at 149-51). The Estate asked Mr. Valencia whether any of the underlying receipts supporting the claimed expenses had been produced. (Valencia Dep. at 150). Mr. Valencia responded that although he had not produced the underlying financial documents, he had "created summarizations of the balance sheets and . . . the expenses sheets and the percentages accurately." (Valencia Dep. at 151). Following Mr. Valencia's deposition, the Estate requested the underlying documentation relating to AVELA's costs and deductions associated with income from Marilyn Monroe images. (Chaudhari Letter at 2). The counter-defendants replied that these documents could not be

12

located but that Mr. Valencia would continue to search for them. (Woo 12/4/13 E-mail; E-Mail of Melissa Woo dated Dec. 10, 2013, attached as Exh. W to Durham Decl.).  Although seeking preclusion of documents that might be used to support costs and deductions, the Estate's motion also noted that the Court might "allow [the] [c]ounter-[d]efendants to produce additional documents, including the back-up documentation that they currently claim is not able to be located."  (Counter-Pl. Memo. at 21).

In the motion for reconsideration, the counter-defendants reassert that such documents cannot be found and object to the characterization that the requested documents were in Mr. Valencia's possession at the time of his deposition.  (Reply Memorandum of Points and Authorities in Support of Motion for Reconsideration of Order Compelling Discovery and Awarding Attorneys' Fees ("Reconsideration Reply Memo.") at 7-8).  Counsel for the counter-defendants proffers an alternate explanation of the deposition testimony: that Mr. Valencia used other summarizations of balance sheets and expenses when creating the income summary and not the actual receipts at issue.  (Reconsideration Reply Memo. at 8 n.7).  Submitting an alternate explanation for a party's testimony is not sufficient grounds for reconsideration, especially where this argument was not presented in the initial motion. (Counter-Def. Memo. at 11 (noting that "[Mr.] Valencia has not been

able to locate all of his source documents used to prepare AVELA's financial records") (emphasis added)).

Counsel for the counter-defendants also now explains that AVELA does not intend to rely on the raw underlying documentation to support its income and balance sheet calculations. (AVELA Reconsideration Memo. at 5). However, whether one party intends to rely on certain documents in its defense does not demarcate the allowable scope of discovery. Given the deposition testimony, which can be read to affirm that Mr. Valencia did indeed have access to underlying financial data when creating the produced income summary, the Estate provided sufficient evidence that these documents existed but were not being produced. If AVELA indeed cannot locate the receipts at issue, it must submit a certification that, after a diligent search, no receipts can be found.

### iii. Bank Account Information

In addition, although much of the dispute has focused on a particular box of receipts referenced in Mr. Valencia's deposition, the Estate's request is broader than just those receipts. (AVELA Response, Response Nos. 14, 18-22; Chaudhari Letter at 2). In its original opposition to the motion to compel, AVELA noted that it had largely complied with the Estate's request by producing unredacted royalty reports, invoices from V International, and checks to V International. (Counter-Def. Memo. at 7). However,

14

the Estate also requested the production of bank statements and credit card statements, which were never produced. (Chaudhari Letter at 2).

As part of its motion to compel, the Estate sought disclosure of the names and addresses used by Mr. Valencia, which I read to also include AVELA accounts. (AVELA Reconsideration Memo. at 5 (describing AVELA as a "one man company with Mr. Valencia as its sole officer and no employees")). I ordered the counter-defendants to "disclose a complete list of financial institutions at which AVELA or Mr. Valencia maintains an account." <u>AVELA</u>, 2014 WL 715540, at *10. In their initial opposition, the counter-defendants argued that the request was "drastic and unwarranted" and would unjustifiably interfere with Mr. Valencia's privacy rights. (Counter-Def. Memo. at 14). The counter-defendants now contend that the request goes beyond any propounded discovery request. (AVELA Reconsideration Memo. at 15).

This argument was not raised in the counter-defendants' initial opposition. Therefore, it is inappropriate to address on reconsideration. Moreover, reversing my previous order and denying the Estate's request would be a purely formal exercise. Discovery has not yet closed and a denial would merely lead the Estate to request this information, which is relevant and discoverable.

### 3. <u>Worldwide List of Licensees</u>

In its documents requests to both AVELA and to Mr. Valencia individually, the Estate requested documents identifying all entities through which Mr. Valencia or AVELA operates in licensing images of Marilyn Monroe. (AVELA Response, Response Nos. 8-12; Valencia Response, Response No. 3). The counter-defendants objected to the requests but nonetheless agreed to produce all responsive, non-privileged documents. (AVELA Response, Response Nos. 8-12; Valencia Response, Response No. 3).

In its opposition to the motion to compel, the counter-defendants insisted that a worldwide list of licensees was irrelevant, and that all contracts with foreign licensees contained territorial limitations. (Counter-Def. Memo. at 6 & n.2). However, the Estate's initial requests were phrased broadly enough to reach international licensees, and it later specifically requested such information. (Chaudhari Letter at 2). In addition, the Estate in its motion to compel argued that international licensees were relevant insofar as they might import Marilyn Monroe products into the United States. (Counter-Pl. Memo. at 9-10; Order Page for Urban Species, attached as Exh. X to Durham Decl. (displaying Marilyn Monroe t-shirts offered by a United Kingdom retailer)). The Estate also included evidence of at least one international licensee that had not been previously disclosed.

(Counter-Pl. Memo. at 9-10; Poetic Gem Renews with Radio Days, attached as Exh. Y to Durham Decl.).   The counter-defendants' response that this licensee was a former but not current licensee was insufficient to dispel the Estate's concerns that AVELA had not produced all documents relating to its licensees.  (Counter-Def. Memo. at 6).  For these reasons, which support both the relevance of the requested discovery and the potential existence of undisclosed information, I ordered the counter-defendants to disclose "a worldwide list of all licensees, former and current, that license Marilyn Monroe products either directly from AVELA or through AVELA or Mr. Valencia operating as a license agent." AVELA, 2014 WL 715540, at *10.  However, this need not be disclosed in the form of a list; rather, the counter-defendants may produce documents sufficient to identify all current licensees of both AVELA and Mr. Valencia.

The counter-defendants also seek clarification that the ordered supplementation of royalty reports, balance sheets, and the income summary not mandate the creation of new documents, but rather the production of relevant documents.  (AVELA Reconsideration Memo. at 16-18).  This is indeed the case.  As providing documentation relating to all licensees, including foreign licensees, will likely impact the current discovery responses provided by the counter-defendants, they are under the

obligation created by Rule 26(e) to supplement their previous responses with additional documentation where necessary. As outlined by counter-defendants' counsel, the pertinent document requests are Nos. 14, 18, 19, 20, 21, 22, and 26. (AVELA Reconsideration Memo. at 16).

C.  Reconsideration of Grant of Attorneys' Fees

The counter-defendants contend that I applied the wrong standard when determining whether attorneys' fees were warranted in connection to the motion to compel. (AVELA Reconsideration Memo. at 20). Where a motion to compel is granted or requested discovery is provided after the motion is filed, the court must require the party whose conduct necessitated the motion or their counsel to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. See Alexander Interactive, Inc. v. Adorama, Inc., No. 12 Civ. 6608, 2014 WL 61472, at *7 (S.D.N.Y. Jan. 6, 2014); Oleg Cassini, Inc. v. Electrolux Home Products, Inc., No. 11 Civ. 1237, 2013 WL 3056805, at *4 (S.D.N.Y. June 19, 2013); Underdog Trucking, LLC v. Verizon Services Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011). However, attorneys' fees may not be ordered if the movant filed before attempting to meet and confer in good faith, if non-disclosure was substantially justified, or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Substantial justification is

"justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (internal quotation marks omitted).

Numerous decisions note that Rule 37(a) "provides, in fact, that the losing party on a motion to compel must pay reasonable expenses, barring extenuating circumstances." JSC Foreign Economic Association Technostroyexport v. International Development & Trade Services, Inc., No. 03 Civ. 5562, 2005 WL 1958361, at *13 (S.D.N.Y. Aug. 16, 2005) (collecting cases). In addition, "[a]n award of reasonable fees incurred in bringing a motion to compel discovery is the least harsh of all the sanctions allowed under Rule 37." Aetna Life Insurance Co. v. Licht, No. 03 Civ. 6764, 2005 WL 180873, at *1 (S.D.N.Y. Jan. 27, 2005). Here, the counter-defendants produced some of the discovery at issue after the motion to compel was filed. (Counter-Def. Memo. at 4-5). In addition, the production of other discovery was ordered. Therefore, Rule 37's rebuttable presumption in favor of fee shifting applies. I also expressly found that the counter-defendants' delay in producing the artist files, copyright deposit materials, checks, and website printout was not substantially justified. AVELA, 2014

19

WL 715540, at *5.  Furthermore, as stated above, the production of this evidence after repeated assurances that it could not be located undermines the credibility of the counter-defendants' position that they could not find other requested discovery, including underlying financial data.  And, although the counter-defendants' objection to discovery relating to foreign licensees might satisfy the substantial justification standard on grounds of relevance, see <u>Klein v. Torrey Point Grp., LLC</u>, __ F. Supp. 2d __, __, 2013 WL 5761401, at *20 (S.D.N.Y. 2013), that ultimately applies to just one category of the discovery ordered.  This in itself is insufficient to bar an award of attorneys' fee. <u>See</u> Fed. R. Civ. P. 37(a)(5)(C) (granting court discretion to apportion expenses even where motion is granted in part and denied in part).

Finally, there are no circumstances here that would make an award of attorneys' fees unjust.  While counter-defendants' counsel argues that there was no conduct by the counter-defendants that necessitated the filing of the motion to compel (Reconsideration Reply Memo. at 12-14), the belated production of the requested artist files, copyright deposit materials, and website printout demonstrates that the counter-defendants' prior search was inadequate.  The counter-defendants must bear the costs and attorneys' fees associated with the Estate's motion to compel.

Conclusion

     For the reasons discussed above, the February 24, 2014 order

stands.   This resolves the motion for reconsideration (Docket no.

95).

                         SO ORDERED.

                         _____
                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 11, 2014

Copies mailed this date:

Michael R. Adele, Esq.
Technology Litigation Center
828 S. Marjan St
Anaheim, CA 92806

Gina L. Dunham, Esq.
DLA Piper, LLP
555 Mission Street, Suite 505
San Francisco, CA 94105

Nicole A. Chaudhari, Esq.
DLA Piper, LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601

Tamar Y. Duvdevani, Esq.
DLA Piper, LLP
1251 Avenue of the Americas
New York, NY 10020