```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
A.V.E.L.A., INC.,                       : 12 Civ. 4828 (KPF) (JCF)
                                        :
            Plaintiff,                  :       MEMORANDUM
                                        :       AND   ORDER
   - against -                          :
                                        :
THE ESTATE OF MARILYN MONROE,           :
BIOWORLD MERCHANDISING, and DOES        :
1 THROUGH 10,                           :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - -:
THE ESTATE OF MARILYN MONROE and        :
BIOWORLD MERCHANDISING,                 :
                                        :
            Counter Claimants,          :
                                        :
   - against -                          :
                                        :
A.V.E.L.A., INC. and LEO VALENCIA,      :
                                        :
            Counter Defendants.         :
- - - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

As discussed more fully in two earlier orders, A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, No. 12 Civ. 4828, 2014 WL 715540 (S.D.N.Y. Feb. 24, 2014) ("AVELA I"), and A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, No. 12 Civ. 4828, 2014 WL 1408488 (S.D.N.Y. April 11, 2014) ("AVELA II"), defendant and counter-claimant the Estate of Marilyn Monroe (the "Estate") brought a motion for sanctions and to compel discovery (which, for convenience, I will call simply a motion to compel) against

1

counter-defendants A.V.E.L.A., Inc., and Leo Valencia (collectively, "AVELA"). I granted the motion to compel in part and ordered AVELA to "pay the costs and fees associated with litigating th[e] motion [to compel]." AVELA I, 2014 WL 715540, at *10. AVELA sought reconsideration, which I granted, although I ultimately "adhere[d] to my prior determination," including my decision that AVELA "must bear the costs and attorneys' fees associated with the Estate's motion to compel." AVELA II, 2014 WL 1408488, at *1, 8. The Estate now requests over $140,000 in fees and costs pursuant to those orders.

Discussion

    A.    Legal Standards

An award of attorneys' fees should be based on the court's determination of a "presumptively reasonable fee." Sandoval v. Materia Bros. Inc., No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008)). This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case." Sandoval, 2013 WL 1767748, at *3; see Millea v. Metro-North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011).

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar

2

experience and skill to the fee applicant's counsel" which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." See Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted); see also Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009). The relevant community in this case is the Southern District of New York. Arbor Hill, 522 F.3d at 190.

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue [] is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); accord Mugavero v. Arms Acres, Inc., No. 03 Civ. 5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010). A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997); accord Luciano

3

v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation."). It can do so by making specific deductions or "by making an across-the-board reduction in the amount of hours." Luciano, 109 F.3d at 117; accord Vorcom Internet Services, Inc. v. L&H Engineering & Design LLC, No. 12 Civ. 2049, 2014 WL 116130, at *5 (S.D.N.Y. Jan. 13, 2014).

B.  Fee Application

The Estate claims fees for five timekeepers: Tamar Duvdevani and Gina Durham, who are both partners at DLA Piper; Nicole Chaudhari, a former associate at the firm; Nikkya Williams, a staff attorney; and Valerie Ruppert, a paralegal. (Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC's Memorandum of Law in Support of Motion for Attorneys' Fees and Costs Pursuant to the Court's February 24, 2014 Order Awarding Such Relief to Defendant/Counter-Plaintiff ("Def. Memo."), at 4-6).

The following chart shows the hours, rates, and total fees that are supported by the record for each timekeeper:[1]

---

[1] I have reached these numbers by cross-referencing the billing records submitted with the opening papers and reply papers (Redacted Billing Record dated Feb. 27, 2014 ("2/27/14 Invoice"), attached as part of Exh. E to Declaration of Gina L. Durham dated April 28, 2014 ("1st Durham Decl."); Redacted Billing Record dated April 14, 2014 ("4/14/14 Invoice"), attached as part of Exh. E to

4

| Timekeeper | Hours | Rate[2] | Fees |
|---|---|---|---|
| T. Duvdevani | 15.2 | $770 | $11,704.00 |
|  | 26.2 | $795 | $20,829.00 |
| G. Durham | 45.3 | $725 | $32,842.50 |
|  | 18.7 | $750 | $14,025.00 |
| N. Chaudhari | 24.3 | $610 | $14,823.00 |
|  | 21.3 | $655 | $13,951.50 |

---

1st Durham Decl.; Redacted Pro Forma Bill dated May 2, 2014 ("5/2/14 Invoice"), attached as Exh. A to Declaration of Gina L. Durham dated May 7, 2014 ("2nd Durham Decl.")) with a spreadsheet, submitted with the reply papers, that shows the actual hours billed for which the Estate seeks reimbursement (Untitled spreadsheet headed with surnames of timekeepers ("Spreadsheet 1"), attached as part of Exh. B to 2nd Durham Decl). That should capture all of the time billed for which the Estate has submitted records. I note that a second spreadsheet submitted with the reply papers purports to total all hours and fees claimed by the timekeepers. (Untitled spreadsheet headed with initials of timekeepers ("Spreadsheet 2"), attached as part of Exh. B to 2nd Durham Decl.). However, the hourly totals (and consequently the fees charged) do not correspond with the totals claimed for Ms. Duvdevani and Ms. Williams on Spreadsheet 1. There is a discrepancy of 3.2 hours for Ms. Duvdevani: her hours on Spreadsheet 1 total 41.4; however, Spreadsheet 2 identifies 44 hours. There is also a discrepancy for Ms. Williams: her hours on Spreadsheet 1 total 64.8; Spreadsheet 2 claims 68.4 hours, but then provides a final total of 79.8 hours. I have also discounted 1.0 hour of time for Ms. Chaudhari and 0.5 hours of time for Ms. Duvdevani, both from January 22, 2014, because they are not included in Spreadsheet 1, and it is therefore impossible to determine how much of this time was spent on compensable work. (2/27/14 Invoice at 8; Spreadsheet 1).

    Below, I further discuss the scattershot manner in which the fee application's supporting documents have been presented.

    [2] Although not explicitly noted, it appears that the fee increase went into effect on January 1, 2014.

| N. Williams | 24.8 | $380 | $9,424.00 |
|---|---|---|---|
| | 40.0 | $395 | $15,800.00 |
| V. Ruppert | 2.0 | $310 | $620.00 |
| | 2.5 | $325 | $800.00 |
| **Total** | 218.3 | | $134,819.00 |

### C. Hourly Rates

Each of the timekeepers who worked on the motion to compel practices primarily in the field of intellectual property law.  Ms. Duvdevani graduated from law school in 2002 and clerked for a federal magistrate judge in this District before joining a law firm in 2005.  She is admitted to the bar in New York.  Her claimed rate is $770-795 per hour.  (Def. Memo. at 4; Firm Biography of Tamar Y. Duvdevani, attached as Exh. B to 1st Durham Decl.).  Ms. Durham is lead counsel for the Estate.  She graduated from law school in 1999 and is admitted to the bar in California and Illinois.  Her claimed rate is $725-750 per hour.  (Def. Memo. at 4; Firm Biography of Gina L. Durham, attached as Exh. A to 1st Durham Decl.).  Ms. Chaudhari graduated from law school in 2005 and is admitted to the bar in Illinois.  Her claimed rate is $610-655 per hour.  (Def. Memo. at 4; Firm Biography of Nicole Chaudhari, attached as Exh. C to 1st Durham Decl.).  Nikkya Williams is admitted to the bar in Nevada.  Her claimed rate is $380-395 per hour.  (Def. Memo. at 4; Firm Biography of Nikkya Williams, attached as Exh. D to 1st Durham

Decl.).  Finally, the paralegal, Ms. Ruppert, claims a rate of $310-325 per hour.  (Def. Memo. at 4).

"[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc., 246 F.3d 142, 151 (2d Cir. 2001).  The billing rates requested here are among the highest approved in this district.  The Estate points to Barclays Capital Inc. v. Theflyonthewall.com, No. 06 Civ. 4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010), in which the court approved an average hourly rate of $838 for a senior partner who had been practicing since 1973 and was head of his firm's Intellectual Property and Media practice group.[3] Id. at *3 (noting that defendant did not object to billing rates); Attorney Profile for R. Bruce Rich, available at http://www.weil.com/brucerich/ (last visited July 1, 2014); (Def. Memo. at 5).  In Diplomatic Man, Inc. v. Nike, Inc., No. 08 Civ. 139, 2009 WL 935674 (S.D.N.Y. April 7, 2009), the court found $650

---

[3] Although that figure is not mentioned in the court's opinion, I was able to confirm it by looking at a declaration in support of the plaintiff's motion for attorneys' fees in that case. (Declaration of Benjamin E. Marks dated April 9, 2010 ("Marks Declaration"), Barclays Capital Inc. v. Theflyonthewall.com, Inc., No. 06 Civ. 4908, ¶ 8).  Because the Estate relies on the $838 per hour rate, better practice would have been for it to have included the Marks Declaration as an exhibit to its own motion, thus relieving the Court of the necessity of independently confirming the accuracy of the Estate's representation.

per hour "perfectly reasonable" for the head of a large firm's commercial litigation group who had been practicing law since 1972. Id. at *6; (Declaration of Marshall Beil dated Dec. 29, 2008, Diplomatic Man, Inc. v. Nike, Inc., No. 08 Civ. 139, ¶¶ 4, 11).

Although clearly experienced attorneys, neither Ms. Duvdevani nor Ms. Durham have the length of experience of those attorneys for whom such high rates have been approved. Therefore, I find that a rate of $600 per hour is reasonable for these two partners. The rates of Ms. Chaudhari, Ms. Williams, and Ms. Ruppert are similarly reduced to $400 per hour, $300 per hour, and $200 per hour, respectively. See, e.g., Source Vagabond Systems, Ltd. v. Hydrapak, Inc., No. 11 Civ. 5379, 2013 WL 136180, at *8, 10 (S.D.N.Y. Jan. 11, 2013) (approving rates of $320 per hour for junior associate and $405 per hour for senior associate in patent infringement case), report and recommendation adopted in relevant part, 2013 WL 634510 (S.D.N.Y. Feb 21, 2013).

    D.   Time Expended

        1.   Supporting Documentation

"[A]bsent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications." Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010). This enables both the party opposing the fee application and the court evaluating it to assess the reasonableness of the time expended.

See New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

The Estate's attorneys have provided contemporaneous time records, but they have done so in a manner that is, to put it mildly, user-unfriendly. As noted above, the fee application's opening papers included invoices for DLA Piper's work on the matter. These records were redacted to excise descriptions of work that did not relate to the fees claimed. Because of the prevalence of block billing,[4] however, the number of hours actually spent on the allegedly compensable work is not clear from the invoices. For example, Ms. Chaudhari's entry for December 10, 2013, appears to be redacted (although even that is not completely clear -- the hint is that the entry ends with a semicolon and not a period). (2/27/14 Invoice at 3). But the time reflected on the invoice, 6.90 hours, applies to the entire entry, not merely the unredacted part. (2/27/14 Invoice at 3). Thus, it is impossible to weigh the reasonableness of the time actually expended on the compensable task when that figure is unknown.

To rectify this blunder, which was noted in AVELA's opposition papers (Memorandum of Points and Authorities in Opposition to Motion for Attorneys' Fees ("Pl. Memo."), at 17 & n.4), the Estate

---

[4] "Block billing" is the aggregation of discrete tasks into one billing entry.

submitted with its reply papers a spreadsheet that listed each timekeeper and the hours she claimed for each billing entry reflected in the formal billing records submitted with the opening papers. (Spreadsheet 1). Thus, in order to discern how much time is actually claimed for each entry in the billing records, the reader must cross-reference those records with the spreadsheet. Of course, AVELA did not have the benefit of Spreadsheet 1 when it prepared its opposition papers and it was therefore denied a full opportunity to challenge specific entries as unreasonable. In addition, the defendant's submissions have wasted the Court's time, not only because of the required cross-referencing, but also because of the mathematical errors in the supporting documents.[5]

Therefore, although time spent on a fee application is generally compensable, see, e.g., Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing an application for . . . fees."), I will deny the Estate's application to the extent that it seeks fees for the work expended on the fee application.

    2.    <u>Motion for Reconsideration</u>

The Estate seeks reimbursement for time spent opposing AVELA's

---

[5] For example, in addition to the errors in calculating the number of hours worked discussed in footnote 1, above, the "total fees" column of Spreadsheet 2 claims $40,379.50 for the work on the fee application; however, the correct figure is $24,871.00.

motion for reconsideration. However, I have not ordered AVELA to pay attorneys' fees and costs for the motion for reconsideration. Indeed, both opinions are quite clear: the order on the Estate's motion to compel states that "[t]he counter-defendants shall pay the costs and fees associated with litigating this motion," AVELA I, 2014 WL 715540, at *10 (emphasis added); the order on the motion for reconsideration states that "[t]he counter-defendants must bear the costs and attorneys' fees associated with the Estate's motion to compel." AVELA II, 2014 WL 1408488, at *8.

Contrary to the Estate's implication, Rahman v. Smith & Wollensky Restaurant Group, Inc., No. 06 Civ. 6198, 2009 WL 72441 (S.D.N.Y. Jan. 7, 2009), does not stand for the proposition that fees for a motion for reconsideration are always compensable when fees have been awarded for the underlying motion. (Def. Memo. at 8). Rather, in that case, there was a specific determination that fees would be awarded if the reconsideration motion was unsuccessful. Rahman, 2009 WL 72441, at *5 ("When I subsequently agreed to address the plaintiff's motion for reconsideration, I determined that if the defendants prevailed, they could add related fees and costs to their pending fee application."). No such determination was made here, so there is no basis for the Estate to claim costs and attorneys' fees associated with the motion for reconsideration.

11

3.  Block-Billing and Reasonableness of Time Expended

Block-billing can make it more difficult to determine the reasonableness of time expended. It is not, however, "automatically disfavored by courts in this district." Adusumelli v. Steiner, Nos. 08 Civ. 6932, 09 Civ. 4902, 10 Civ. 4549, 2013 WL 1285260, at *4 (S.D.N.Y. March 28, 2013) (internal quotation marks omitted). Rather, across-the-board reductions in fees awarded are "generally limited . . . to situations where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." Id. (internal quotation marks omitted).

According to Spreadsheet 2, the four attorneys working on this case spent 146.5 hours on the briefing for the motion to compel. On December 10, 2013, alone, they spent a total of 17.4 hours drafting, reviewing, and "strategizing." (2/27/14 Invoice; Spreadsheet 1). In the three days before the motion was filed, they billed a total of 51 hours on the opening papers -- over two full days. The Estate argues that the time is reasonable because of the length of the submissions, which required "extensive review of eight deposition transcripts, discovery requests and correspondence [among] counsel." (Def. Memo. at 7). At the same time, it defends staffing Ms. Durham -- who charges over $700 per

12

hour and appears to have spent more than 40 hours on the opening papers, alone -- to the motion because she "was the attorney most familiar with the history and facts surrounding [AVELA's] discovery misconduct, and thus drafted substantial portions of the [motion to compel] in order to keep time spent on reviewing the copious discovery to a minimum."  (The Estate of Marilyn Monroe, LLC's Reply Memorandum of Law in Further Support of Its Motion for Fees and Costs at 5).  DLA Piper's attempts at promoting efficiency failed: the hours are unreasonable.  The block-billing makes it difficult, if not impossible, to determine precisely where the waste occurred.  Therefore, I will impose an across-the-board deduction of 20% of the hours billed for the motion to compel according to Spreadsheet 2.[6]

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| T. Duvdevani | 16.6 | $600 | $9,960.00 |
| G. Durham | 42.2 | $600 | $25,320.00 |
| N. Chaudhari | 36.5 | $400 | $14,600.00 |
| N. Williams | 20.2 | $300 | $6,060.00 |
| V. Ruppert | 1.8 | $200 | $360.00 |
|  |  |  | $56,300.00 |

---

[6] As noted, there are errors in the figures presented on Spreadsheet 2, but the figures reported for the motion to compel seem to be corroborated by the more detailed information in Spreadsheet 1.

E.   Equitable Reduction and Apportionment

"'[F]ee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account.'" Barclays Capital, 2010 WL 2640095, at *6 (quoting Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992). AVELA contends that the Estate has significantly greater financial strength than does AVELA, noting that the approximately $125,000 that the Estate claimed in its opening fee application "is nearly 25% higher than the yearly average profits obtained by AVELA on Marilyn Monroe licenses from 2008-2012." (Pl. Memo. at 18). However, AVELA provides no support for its claims. See, e.g., Harrell v. Van der Plas, No. 08 Civ. 8252, 2009 WL 3756327, at *7 (S.D.N.Y. Nov. 9, 2009) ("Th[e] failure to provide adequate and reliable financial information prevents the Court from exercising its discretion to reduce the presumptively reasonable fee award . . . ."). Moreover, I have already decreased the fee award by tens of thousands of dollars. I will not slash the fee award further as a matter of equity.

Nor will I apportion the fee award. (Pl. Memo. at 19-22). Both controlling orders are clear: AVELA is to pay the fees and costs associated with litigating the motion to compel. AVELA I, 2014 WL 715540, at *10; AVELA II, 2014 WL 1408488, at *8. Indeed, AVELA makes the same apportionment argument here as it did in its

14

motion for reconsideration (Memorandum of Points and Authorities in Support of Motion for Reconsideration of Order Compelling Discovery and Awarding Attorneys' Fees at 23), where it was rejected. I will not revisit that determination.

F. Costs

The Estate has provided support for $1,712.16 in costs related to the motion to compel:[7]

| Costs | Amount |
|---|---|
| Private Investigator Fees | $1,256.25 |
| Delivery Service Charges | $34.08 |
| Electronic Legal Research | $422.28 |
| Total | $1,712.16 |

(2/27/14 Invoice at 11-12). AVELA has not objected to any of these charges and I find that they are compensable.

Conclusion

For these reasons, AVELA is ordered to pay the Estate $58,012.61 in attorneys' fees and costs.

SO ORDERED.

James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

---

[7] Consistent with my decision not to recompense the defendants for work expended on the fee application or the motion for reconsideration, the costs on this chart relate only to the motion to compel.

15

Dated: New York, New York
       July 18, 2014

Copies mailed this date:

Michael R. Adele, Esq.
Technology Litigation Center
828 S. Marjan St
Anaheim, CA 92806

Gina L. Dunham, Esq.
DLA Piper, LLP
555 Mission Street, Suite 505
San Francisco, CA 94105

Tamar Y. Duvdevani, Esq.
DLA Piper, LLP
1251 Avenue of the Americas
New York, NY 10020