```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
A.V.E.L.A., INC.,                    : 12 Civ. 4828 (KPF) (JCF)
                                     :
            Plaintiff,               :     MEMORANDUM
                                     :     AND ORDER
                                     :
   - against -                       :
                                     :
THE ESTATE OF MARILYN MONROE,        :
BIOWORLD MERCHANDISING, and DOES     :
1 THROUGH 10,                        :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
THE ESTATE OF MARILYN MONROE and     :
BIOWORLD MERCHANDISING,              :
                                     :
            Counter Claimants,       :
                                     :
   - against -                       :
                                     :
A.V.E.L.A., INC. and LEO VALENCIA,   :
                                     :
            Counter Defendants.      :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The counter-plaintiff in this dispute over who may rightfully license the likeness of film actress Marilyn Monroe requests leave to file an amended counterclaim, adding alter ego allegations and claims of infringement against three entities it seeks to add as new counter-defendants.

Background

The plaintiff in this action, A.V.E.L.A., Inc. ("AVELA"), is a company that creates and licenses artwork featuring pop culture

1

figures in the public domain, for use on clothing, novelty items, and other consumer products. (Complaint ("Compl."), ¶ 1; Answer and Counterclaims ("Answer") at 17, ¶ 20). In June 2011, the Estate of Marilyn Monroe, LLC (the "Estate"), which holds certain trademarks associated with Marilyn Monroe, including her name and signature, and claims to have protectable rights in her image, persona, and likeness, sent AVELA a cease and desist letter regarding AVELA-licensed products bearing the image of Marilyn Monroe. (Compl., ¶ 9; Answer at 14-16, ¶¶ 9-15). AVELA then sued the Estate, seeking declaratory judgment that the products that AVELA licenses do not infringe on any intellectual property owned by the Estate and also asserting claims of tortious interference. The Estate countersued AVELA and its owner, Leo Valencia, bringing claims of unfair competition, false association, trademark infringement, dilution, and violation of state law. (Answer at 20-28, ¶¶ 39-89).

The Estate now seeks to add three proposed corporate counter-defendants -- IPL, Inc. ("IPL"), X One X Movie Archives Inc. ("X One X"), and V. International Fine Arts Publishing, Inc. ("V. International") -- that it alleges are the alter-egos of the current counter-defendants, AVELA and Mr. Valencia. According to the proposed amended counterclaim, Mr. Valencia "conducts business under a number of assumed names" and corporations "for the purpose

2

of dissipating the liability of any given entity associated with the licensing business." (First Amended Counterclaim ("First Am. Counterclaim") at 7, ¶ 23, attached as Exh. A to Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC's Memorandum of Law in Support of Motion for Leave to File First Amended Counterclaim and to Add Counter-Defendants ("Counter-Pl. Memo.")). The Estate alleges that it first learned of these three additional parties during discovery, and that without the amendment, any potential injunctive relief or damages will be inadequate. (Counter-Pl. Memo. at 5). The proposed amendment also includes updated information regarding the trademarks owned and registered by the Estate, and omits certain allegations that AVELA improperly contacted a licensee of the Estate. (Counter-Pl. Memo. at 4). The latter changes are not contested by the counter-defendants.

Discovery in this action has been disjointed due to numerous disputes and the replacement of AVELA's counsel, and the Estate filed its motion one week before discovery closed. The counter-plaintiff alleges that it first learned of V. International during the deposition of Liza Acuna in September 2013, when Ms. Acuna identified V. International as the licensing agent for AVELA. (Counter-Pl. Memo. at 5). Following the deposition, the Estate sought documentation of any agreements or payments between V. International and AVELA. (Counter-Pl. Memo. at 5-6). After a

lengthy dispute, unredacted copies of checks showing the payment of agency fees to V. International were produced on January 14, 2014, see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, No. 12 Civ. 4828, 2014 WL 715540, at *3, *10 (S.D.N.Y. Feb. 24, 2014), adhered to on reconsideration, 2014 WL 1408488 (S.D.N.Y. April 11, 2014); the Estate maintains that these financial documents were "manufactured" to "create the appearance of independence" between Mr. Valencia and V. International (Counter-Pl. Memo. at 4; First Am. Counterclaim at 8, ¶ 32). During the September 13, 2013 deposition, when asked to list the licensees of Marilyn Monroe images, Ms. Acuna included the company Mighty Fine. (Counter-Pl. Memo. at 6; Deposition of Liza Acuna dated Sept. 13, 2013, attached as Exh. E to Declaration of Gina L. Durham dated Dec. 19, 2013 ("Durham 12/19/13 Decl."), at 102-03). Ms. Acuna subsequently clarified that Mighty Fine was not an AVELA licensee, prompting the Estate to subpoena the license agreement from Mighty Fine, which showed that IPL, rather than AVELA, was the licensor. (Counter-Pl. Memo. at 6-7). The Estate deposed a Mighty Fine representative on November 14, 2013, who stated that Mighty Fine licensed Marilyn Monroe products from IPL, provided royalty reports on the products it sold, and considered IPL to be "one and the same" as AVELA. (Deposition of Patricia Timsawat dated Nov. 14, 2014, attached as Exh. Q to Durham 12/19/13 Decl., at 54-55). The Estate learned of X One X during Mr.

4

Valencia's September 30, 2013 deposition, when he stated that AVELA licenses images from X One X in return for a licensing agent fee. (Counter-Pl Memo. at 7).  Mr. Valencia also stated that he could not locate a written agreement between AVELA and X One X, nor distinguish between those images owned by AVELA and those owned by X One X.  (Counter-Pl. Memo. at 7).  According to the Estate, the counter-defendants had not produced any documentation of invoices or payments between AVELA and X One X related to licensing of Marilyn Monroe images at the time the motion was filed.  (Counter-Pl. Memo. at 7; Declaration of Gina L. Durham dated Feb. 4, 2014, ¶ 6).

Discussion

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603-04 (2d Cir. 2005).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted); MHANY Management Inc. v. County of Nassau, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) ("Amendments are generally favored because they tend to facilitate a proper

decision on the merits." (internal quotation marks omitted)). Motions to amend should therefore by denied only for reasons of undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility. See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman, 371 U.S. at 182); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). The court has broad discretion over such motions. See McCarthy, 482 F.3d at 200. "Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either rule." Zarycki v. Mount Sinai/NYU Health, No. 02 Civ. 6236, 2005 WL 2977568, at *4 (S.D.N.Y. Nov. 4, 2005) (internal quotation marks omitted); see Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 79 (E.D.N.Y. 2011) (noting that same considerations of undue delay, prejudice, and futility apply under Rule 15(a) and Rule 21).

    A. Delay

    As the Second Circuit has repeatedly recognized, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see Parker v. Columbia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000); Park B. Smith, Inc. v. CHF Industries Inc., 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011);

6

see also Rotter v. Leahy, 93 F. Supp. 2d 487, 497 (S.D.N.Y. 2000) ("Typically, the moving party's delay, standing alone, is not sufficient reason to foreclose amendment."). Where a significant period of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay. Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 162 (S.D.N.Y. 2005).

The defendants contend that the Estate unduly delayed in bringing this motion, as it had knowledge of the underlying facts as early as September 2013, roughly four months before filing the motion. (Memorandum of Points and Authorities in Opposition to Motion to Amend ("Counter-Def. Memo.") at 22-24). While the counter-plaintiff was on notice that the other entities existed by the end of October 2013, it was reasonable for it to attempt to develop these facts through additional discovery before moving to amend. See TNS Media Research, LLC v. TRA Global, Inc., No. 11 Civ. 4039, 2012 WL 2052679, at *1 (S.D.N.Y. June 4, 2012) (allowing party to add counterclaim defendants where earlier suspicions were subsequently borne out through discovery); Bridgeport Music, Inc. v. Universal Music Group, Inc., 248 F.R.D. 408, 414 (S.D.N.Y. 2008). Following the September 2013 depositions of Ms. Acuna, the Estate sought documentation relating to these other entities from AVELA and Mr. Valencia and conducted third party depositions.

7

(Counter-Pl. Memo. at 6-7). The relevant time period is therefore somewhat less than four months. Given this context, the delay is not significant enough to derail this motion. Courts in this district have granted motions to amend despite similar temporal gaps between discovery of the relevant facts and filing of an amended pleading. See Securities and Exchange Commission v. DCI Telecommunications, Inc., 207 F.R.D. 32, 34-35 (S.D.N.Y. 2002) (allowing amendment where plaintiff obtained discovery supporting amendment four months before motion); American Medical Assocation v. United Healthcare Corp., No. 00 Civ. 2800, 2006 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006) (finding no undue delay where party moved to amend several months after learning relevant facts in discovery); see also Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc., No. 12 Civ. 5160, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (allowing amendment based on facts and law available at time of initial pleading and collecting cases).

    B. Prejudice

    "Prejudice to the opposing party . . . has been described as the most important reason for denying a motion to amend." Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (internal quotation marks omitted). However, only undue prejudice justifies denial of leave to amend. See A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299

8

(S.D.N.Y. 2000). Prejudice results when the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. New York City Department of Corrections, 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993)); see Adams v. City of New York, __ F. Supp. 2d __, __, 2014 WL 309640, at *11 (E.D.N.Y. Jan. 29, 2014). Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to this determination. See Monahan, 214 F.3d at 284. The procedural posture of a case, including the stage of discovery and whether dispositive motions have been filed, may also be weighed. See, e.g., Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend where amendment was sought after discovery had closed and while summary judgment motion was pending); see also Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting State Teachers Retirement Board, 654 F.2d at 856)). The non-moving party bears the burden "of demonstrating

that substantial prejudice would result were the proposed amendment to be granted." Alexander Interactive, Inc. v. Adorama, Inc., No. 12 Civ. 6608, 2014 WL 113728, at *3 (S.D.N.Y. Jan. 13, 2014) (internal quotation marks omitted); see also ResQNet.com v. Lansa, Inc., 382 F. Supp. 2d 424, 449 (S.D.N.Y. 2005), rev'd on other grounds, 594 F.3d 860 (Fed. Cir. 2010).

The counter-defendants assert that the proposed amendment will "have a dramatic effect on discovery and substantially delay resolution of this action." (Counter-Def. Memo. at 1). As they correctly note, the proposed amendment would not merely hold IPL, X One X, and V. International liable for the actions of AVELA and Mr. Valencia; rather, it alleges that these entities themselves have engaged in infringing conduct. (First Am. Counterclaim at 9, ¶¶ 34-36; at 10-12, ¶¶ 40, 44-51). As such, it will implicate discovery beyond the corporate structure of these entities and into areas that the current counter-defendants view as outside the scope of this litigation.

The counter-defendants' assertion that the addition of the three proposed counter-defendants will delay resolution for "at least a year" (Counter-Def. Memo. at 1), however, is unsupported. Although new discovery will certainly be warranted, it will be limited in scope. As the Estate claims that the new counter-defendants are alter-egos of Mr. Valencia, any additional

10

documentation sought will likely be in the current counter-defendants' possession and therefore can be expeditiously produced. See Sullivan v. West New York Residential, Inc., No. 01 CV 7847, 2003 WL 21056888, at *2 (E.D.N.Y. March 5, 2003) (finding additional discovery not unduly prejudicial where newly asserted alter ego claims "will likely involve only some of the same witnesses already deposed, and any documents sought will likely be in the defendants' possession"). Likewise, while depositions may need to be reopened, this should not impose an undue burden on the current counter-defendants. See id.; Bridgeport Music, Inc., 248 F.R.D. at 414 ("[T]he burden on the current defendants of attending reopened depositions would be less because they have previously prepared for them.").

Generally, "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not [themselves] constitute undue prejudice." A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (internal quotation marks omitted); see Soroof Trading Development Co. v. GE Microgen, Inc., 283 F.R.D. 142, 153 (S.D.N.Y. 2012). An "'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116, 2009 WL 1357946, at *4 (S.D.N.Y. May 12, 2009) (quoting United States v. Continental

11

Illinois National Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)); see also Margel v. E.G.L. GemLab Ltd., No. 04 Civ. 1514, 2010 WL 445192, at *12 (noting that any "prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule," and collecting cases); Lawrence v. Starbucks Corp., No. 08 Civ. 3734, 2009 WL 4794247, at *4 (S.D.N.Y. Dec. 10, 2009). At the time the motion was filed, discovery was not yet closed, nor had any dispositive motions been filed. Although discovery has since closed, "where the proposed amendment arises from the same set of operative facts as the original claims . . . the mere fact that discovery has concluded does not provide a reason for denying leave to amend." Michalek v. Amplify Sports & Entertainment LLC, No. 11 Civ. 508, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012) (internal quotation marks omitted). The counter-defendants have not established that re-opening discovery will cause them undue prejudice in this matter.

Furthermore, while the Estate may not have filed its motion until February 2014, given the nature of the allegations at issue -- unlawful use of the Estate's intellectual property related to Marilyn Monroe -- the counter-defendants were on notice that claims might be alleged against other entities licensing Marilyn Monroe products. Indeed, the three entities at issue are either owned by Mr. Valencia, a current counter-defendant, or intimately involved

12

in the licensing of AVELA's products.  The Estate also clearly indicated its intention to file alter ego claims and identified the relevant entities in its December 2013 motion for discovery sanctions.  See A.V.E.L.A., Inc., 2014 WL 715540, at *10.  Given such notice that these claims might be asserted, the counter-defendants cannot reasonably claim undue prejudice.  "[F]ederal courts have consistently granted motions to amend where, as here, it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings."  Bridgeport Music, Inc., 248 F.R.D. at 415 (internal quotation marks omitted).

Finally, judicial efficiency weighs in favor of allowing the amendment.  See Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 102 n.5 (S.D.N.Y. 2010) ("Where, as here, the original and proposed claims are interrelated, it also serves judicial efficiency to permit them to be brought in the same action.").  Under the proposed amendment, the exact same claims, arising from the same course of conduct, are now asserted against allegedly interrelated entities.  It is appropriate that these claims be adjudicated together, especially in light of the closely-knit web of licensing relationships alleged by the Estate.  See Danaher Corp. v. Travelers Indemnity Co., No. 10 Civ. 121, 2013 WL 150027, at *4 (S.D.N.Y. Jan. 10, 2013) (considering judicial efficiency "an

13

appropriate factor to consider when deciding a motion to add parties"); Bridgeport Music, Inc., 248 F.R.D. at 415 (finding judicial economy favored adding new defendant where the "claims against [new defendant] are identical to those already in the case").

C. Futility

Leave to amend may be denied as futile when the pleading would not survive a motion to dismiss. See AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Slay v. Target Corp., No. 11 Civ. 2704, 2011 WL 3278918, at *2 (S.D.N.Y. July 20, 2011) ("Futility generally turns on whether the proposed amended pleading states a viable claim."); Penn Group, LLC v. Slater, No. 07 Civ. 729, 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007). Under that standard, the proper inquiry "is not whether a [moving party] will ultimately prevail but whether [that party] is entitled to offer evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor. DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 110-11 (2d Cir. 2010).

Although the counter-defendants allege that the evidence that the Estate proffers in its motion is insufficient to support the

alter ego allegations (Counter-Def. Memo. at 23), whether or not the proposed amended counterclaims are sufficient is determined by the facts alleged in the proposed amended counterclaim itself. See DiFolco, 622 F.3d at 111 ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).

"'Under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.'" National Gear & Piston, Inc. v. Cummins Power Systems, LLC, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995). IPL is an unincorporated entity based in California, X One X is a Nevada corporation, and V. International is a California corporation. (First Am. Counterclaim at 3, ¶¶ 4-6). However, as the counter-defendants cite to a Southern District of New York case in contesting the sufficiency of

15

the counter-plaintiff's allegations (Counter-Def. Memo. at 23-24), to which the counter-plaintiff does not object in its Reply, I will consider New York law to be applicable here. See American Fuel Corp. v. Utah Energy Development Co., 122 F.3d 130, 134 (2d Cir. 1997) (applying New York law despite Utah incorporation where parties' briefs "rel[ied] primarily on New York law").

Under New York law, to justify disregarding the corporate form, the Estate must demonstrate that (1) Mr. Valencia dominated the entities with respect to the claimed infringement, and (2) that this domination was used "to commit a fraud or wrong" that injured the Estate. Key Items, Inc. v. Global Jewellery Solutions, Ltd., 514 F. App'x 40, 41-42 (2d Cir. 2013) (citing American Fuel Corp., 122 F.3d at 134). "New York law allows the corporate veil to be pierced either when there is fraud or when the corporation has been used as an alter ego." Itel Containers International Corp. v. Atlanttrafik Express Services Ltd., 909 F.2d 698, 703 (2d Cir. 1990) (emphasis omitted). The factors to be considered when determining whether the corporate veil should be pierced include (1) the absence of corporate formalities; (2) inadequate capitalization; (3) overlap in ownership, officers, directors, and employees; (4) common office space, address, and telephone numbers; (5) the amount of business discretion displayed by the allegedly dominated corporation; and (6) arms length business dealings

between the related corporations. <u>Network Enterprises, Inc. v. APBA Offshore Productions, Inc.</u>, No. 01 Civ. 11765, 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002); see also <u>Camofi Master LDC v. College Partnership, Inc.</u>, 452 F. Supp. 2d 462, 472 (S.D.N.Y. 2006) (noting additional factors).  "In making an alter ego determination, a court is concerned with reality and not form, and with how the corporation operated." <u>Wajilam Exports (Singapore) Pte Ltd. v. ATL Shipping Ltd.</u>, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (internal quotation marks omitted); see also <u>United States v. Funds Held in the Name or for the Benefit of Wetterer</u>, 210 F.3d 96, 106 (2d Cir. 2000) (noting that alter ego determination must be made based on totality of facts).  "[P]urely conclusory allegations" are insufficient to state a claim for alter-ego liability. <u>In re Currency Conversion Fee Antitrust Litigation</u>, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

Here, the Estate alleges facts with sufficient specificity to survive a motion to dismiss.  The Estate asserts that AVELA, IPL, and X One X are undercapitalized and that Mr. Valencia is the sole shareholder, officer, director, and employee.  (First Am. Counterclaim at 7, ¶ 25).  It further asserts that Mr. Valencia does not follow corporate formalities, including maintaining separate books and records, and freely co-mingles funds between IPL, X One X, AVELA, and his own personal finances.  (First Am.

17

Counterclaim at 7-8, ¶¶ 26-27). The Estate also alleges that these entities and Mr. Valencia "exploit the same intellectual property" and do not maintain any written agreements as to its use. (First Am. Counterclaim at 8, ¶ 27). While the Estate does not claim that V. International is either undercapitalized or that Mr. Valencia is its sole shareholder, officer, director, and employee, it nonetheless alleges that V. International should be considered an alter-ego because the corporation operates solely to "provide administrative support" to Mr. Valencia and the other named entities. (First Am. Counterclaim at 8, ¶¶ 29-30). The Estate alleges that V. International's sole clients are Mr. Valencia and the other named entities, several V. International employees have e-mail addresses with the extension @avela.net, and that the counter-defendants' prior counsel identified herself as "in-house counsel" for AVELA but was actually employed by V. International. (First Am. Counterclaim at 8, ¶¶ 30-31). Accepting these allegations as true, they establish a plausible inference that these entities are sufficiently interrelated to be considered alter egos. See Ferrara v. Smithtown Trucking Co., No. 13 CV 3006, 2014 WL 3378350, at *7 (E.D.N.Y. July 10, 2014) (finding "extensive allegations" of common management, supervision, and ownership, inadequate capitalization, and shared operations, equipment, and customers sufficient to support alter ego claims); Network

18

Enterprises, Inc., 2002 WL 31050846, at *4 (finding allegations of same address and telephone number, "complete domination" by same chairman, and financial inconsistencies sufficient to allow proposed amendment adding alter ego claims, and collecting cases). The Estate alleges that this disregard of corporate form was used to evade liability for infringement, for example, by licensing images through IPL as opposed to AVELA (The Estate of Marilyn Monroe, LLC's Reply Memorandum of Law in Support of its Motion for Leave to File First Amended Counterclaim and to Add Counter-Defendants at 3, 5; First Am. Counterclaim at 7, ¶ 23), sufficient to support the second prong of the veil piercing inquiry. See Key Items, Inc., 514 F. App'x at 41 (finding alter ego claims sufficient based on allegations that businesses operated in same market, had same officer and director, used same business address and resources, and transferred assets to avoid liability).

Conclusion

    For the reasons stated above, the counter-plaintiff's motion to amend (Docket no. 72) is granted. Within one week of the date of this Order, counsel shall submit a proposed schedule for adjudicating the new claims.

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 24, 2014

Copies mailed this date:

Michael R. Adele, Esq.
Technology Litigation Center
828 S. Marjan St
Anaheim, CA 92806

Tamar Duvdevani, Esq.
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020-1104

Gina L. Durham, Esq.
DLA Piper, LLP
555 Mission St., Suite 505
San Francisco, CA 94105