UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF NEW YORK

| | |
|---|---|
| A.V.E.L.A., INC., | Case No.: 12 Civ. 4828 (KPF)(JCF) |
| Plaintiff, | ECF Case |
| -against- | |
| THE ESTATE OF MARILYN MONROE, LLC and DOES 1 THROUGH 10, | |
| Defendants. | |
| THE ESTATE OF MARILYN MONROE, LLC, | |
| Defendant/Counter-Plaintiff, | |
| -against- | |
| A.V.E.L.A., INC. et al Counter-Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY COUNTER-DEFENDANT V. INTERNATIONAL
FINE ARTS PUBLISHING, INC. TO DISMISS ALL
CAUSES OF ACTION ASSERTED IN COUNTER-
PLAINTIFF'S FIRST AMENDED COUNTERCLAIM**

## TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………….……..5

II.     APPLICATION OF RULE 12(b)(6) TO THIS CASE…………..7

III.    THE FACTS PRESENTED IN THE ALLEGED THIRD CAUSE OF ACTION DO NOT
        SUPPORT A CLAIM FOR DILUTION……………………...…….9

        A.   THE MARILYN MARKS ARE DESCRIPTIVE AND ARE  NOT ENFORCIBLE
             ABSENT ACQUISITION OF SECONDARY
             MEANING………………………………………………………………9

        B.   THE "MARILYN" MARKS HAVE NOT ACQUIRED SECONDARY MEANING: THE
             WORDS "MARILYN MONROE" CONTINUE TO IDENTIFY THE ICONIC
             INDIVIDUAL OF THAT NAME, NOT A BRAND………..10

        C.   EVEN IF THE "MARILYN MARKS" HAD ACQUIRED SECONDARY MEANING
             THEY ARE NOT "FAMOUS" MARKS PROTECTABLE UNDER THE DILUTION ACT.
             ……………………………………………………………………………14

IV.     THE FIRST, SECOND, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS ARE
        IMPROPER AND FAIL TO STATE FACTS SUFFICIENT TO SUPPORT THOSE CAUSES
        OF ACTION………………………………………………………………16

V.      COUNTER-PLAINTIFF'S CONCLUSORY ALTER EGO ALLEGATIONS ARE NOT
ENOUGH TO PIERCE V. INTERNATIONAL'S CORPORATE VEIL..16

        A.   THE FACC FAILS TO ALLEGE, AS REQUIRED TO ESTABLISH AN ALTER-
             EGO,THAT VALENCIA AND/OR AVELA EXERCISED COMPLETE DOMINATION
             OVER V. INTERNATIONAL………………………………18

        B.   TO SATISFY THE SECOND PRONG TO ESTABLISH AN ALTER EGO, EMMLLC
             MUST ALLEGE FACTS SUFFICENT TO FIND V. INTERNATIONAL MISUSED THE
             CORPORATE FORM TO COMMIT A FRAUD OR AVOID ITS OBLIGATIONS
             …………………………………………………………………………..19

VI.     CONCLUSION ……………………………………………………….21

**TABLE OF AUTHORITIES**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4, 9 (2d Cir. 1976)…...……………………………………………………9
*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)…….…………………………………………………………...7
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)….…………………………………………………………7, 8, 11
*Boarding School Review, LLC v. Delta Career Educ. Corp.*,
  2013 WL 6670584 (S.D.N.Y. March 29, 2013)……………………………8, 13
*Cairns v. Franklin Mint Co ("Cairns III")*,
  107 F.Supp.2d 1212 (CDC 2000)…………………………………………11, 12, 13
*Cairns v. Franklin Mint Co ("Cairns IV")*,
  115 F. Supp.2d 1185 (CDC 2000)……………………………………………………12
*Cargill Investor Services, Inc. v. Cooperstein*,
  587 F. Supp. 13, 15 (S.D.N.Y. 1984)……………………………………………17
*Chamberlain v. Columbia Pictures Corp.*,
  186 F.2d 923, 925 (9th Cir. 1951)……………………………………………………12
*CourtAlert.com v. e-Law, LLC,*
  2013 WL 4754819 (S.D.N.Y. August 26, 2013)………………....…………8, 14
*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336, (2005)……………………………………………………………………8
*Energy Intelligence Grp., Inc. v. UBS Fin. Servs., Inc.*,
  2009 WL 1490603 (S.D.N.Y. May 22, 2009)……………………………………..9
*Forschner Group v. Arrow Trading Co.,*
  124 F.3d 402, 408 (2d Cir. 1997)…………………………………………………10
*Franklin Mint Co. v Manatt, Phelps & Phillips,*
  184 Cal. App. 4th 313 (2d App. 2010)………………….…………………12, 13
*Garter v. Snyder*,
  607 F.2d 582 (2d Cir. 1979)……………………………………………………………17
*Goldman v Chapman*,
  44 AD3d 938, 939 [2d Dept 20071]…………………………………...…………16
*Guptill Holding Corp. v. State*,
  33 A.D.2d 362, 307 N.Y.S.2d 970, 972-73 (1970),
  aff'd, 31 N.Y.2d 897, 340 N.Y.S.2d 638, 292 N.E.2d 782 (1972)………17
*Heller, Inc. v. Design Within Reach, Inc.,*
  2009 U.S. Dist. LEXIS 71991, at *8-10 (S.D.N.Y. 2009)…………………...15
*International Aircraft Trading Co. v. Manufacturers Trust Co.,*
  297 N.Y. 285, 292 (N.Y. 1948)……………………………………………………20

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,*
    192 F.3d 337, 345-46 (2d Cir. 1999)………………………………………..9, 10
*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.,*
    868 F. Supp. 2d 172, 176 (SDNY 2012)…………………………………………11
*Luv N' Care, Ltd. v Regent Baby Products Corp.,*
    841 F. Supp.2d 753(S.D.N.Y. 2012)…………………………...……………………8
*Morris v. New York State Dep't of Taxation & Fin.,*
    82 N.Y.2d 135, 623 N.E.2d 1157, 1160-61 (1993)……………………………19
*Moseley v. V Secret Catalogue, Inc.,*
    537 U.S. 418, 429 (2003)……………………………………………………………14
*Papasan v. Allain,*
    478 U.S. 265 (1986)……………………………………………………………….…7
*Pardo v. Wilson Line of Washington, Inc.,*
    414 F.2d 1145 (D.C. Cir. 1969)……………………………………………………16
*Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
    933 F.2d 131, 137 (2d Cir.1991)……………………………………………18, 19
*Perfumania, Inc. v. Perfulandia, Inc.,*
    279 F. Supp. 2d 86, 96 (D.P.R. 2003)…………………………………………..15
*Pirone v. MacMillan, Inc.,*
    894 F.2d 579, 583 (2d Cir. 1990)……………………………………………………9
*Port Dock & Stone Corp. v. Oldcastle N.E., Inc.,*
    507 F.3d 117, 121 (2d Cir. 2007)……………………………………………………7
*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236, 240 (2d Cir. 2002)……………………………………………………7
*State v. Easton,*
    169 Misc.2d 282, 647 N.Y.S.2d 904, 908-09 (Sup.Ct.1995)……………17
*TCPIP Holding Co. v. Haar Communs,*
    244 F.3d 88, 99 (2d Cir. 2001)……………………………………………………15
*TNS Holdings, Inc. v. MKI Sec. Corp.,*
    92 N.Y.2d 335, 339 (N.Y. 1998)……………………………………………………19
*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S.763 (1992)………………………………………………………………..…9
*Visser v. Macres,*
    214 Cal. App. 2d 249, 253, 29 Cal. Rptr. 367 (1963)…………………………11
*Walkovszky v. Carlton,*
    18 N.Y.2d 414, 276 N.Y.S.2d 585, 587, 223 N.E.2d 6, 8 (1966)……….17
*Wal-Mart Stores, Inc. v. Samara Brothers Inc.,*
    529 U.S. 205 (2000)……………………………………………………………10, 11

V. International Fine Arts Publishing, Inc. (V International") hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss all the causes of action set forth in the First Amended Counterclaim of Defendant/Counter-Plaintiff The Estate of Marilyn Monroe, LLC.  ("EMMLLC")

## I.

## INTRODUCTION

This Memorandum is respectfully submitted by Counter-Defendant V. International Fine Arts Publishing, Inc. in support of its motion, pursuant to FRCP 12(b)(6), to dismiss all causes of action alleged in the First Amended Counterclaim ("FACC") for failure to state claims upon which relief can be granted, and dismiss the alleged "alter-ego" claim presented in the FACC for failure to allege facts sufficient to support such an allegation.

This action was commenced in June, 2012, more than two years ago. However, it was not until last month that V. International, along with two other entities, were named as an additional Counter-Defendant following Magistrate Judge Francis' Order granting Defendant's motion to file the FACC.  V International thus finds itself thrust into this action at the eleventh hour, charged not only with being the "alter ego" of Plaintiff A.V.E.L.A., Inc. ("AVELA") and Counter-Defendant Valencia (FACC ¶ 33) but also facing claims of direct liability as an alleged wrongdoer in its own right.

The First and Fourth Counterclaims are improper and cannot stand due to established New York case law which establishes that there is no enforceable right of

publicity relating to Marilyn Monroe and for other reasons as set forth in X One X
Movie Archives, Inc.'s Motion to Dismiss.

The Second, Fourth, Fifth, Sixth and Seventh Counterclaims fail to allege facts
sufficient to support the claims asserted in the FACC for reasons set forth in X One X
Movie Archives, Inc.'s Motion to Dismiss.

The Third Cause of Action for dilution of purportedly "famous" trademarks
exemplifies the basic error that pervades each of the shotgun style claims of the FACC:
it confuses Marilyn Monroe, the Individual, with "Marilyn Monroe" the brand.  Ms.
Monroe the individual was and is "famous" while "Marilyn Monroe" the brand – the
source indicator – is not.  As a trademark, "Marilyn Monroe" doesn't begin to approach
the level of fame and notoriety required for protection under 15 U.S.C. § 1125(c) or its
state counterpart. (See Section III below).

Even more fundamentally, the alleged "Marilyn Marks" (the words "Marilyn"
and "Marilyn Monroe")[1] are non-distinctive, descriptive "marks" that simply are not
subject to protection against dilution unless they have  acquired secondary meaning as
a source identifier – something that clearly  has not occurred.  The words "Marilyn
Monroe" continue to identify Ms. Monroe, the iconic individual, **not** a brand of goods
or services (See Section III below.)

V. International Fine Arts Publishing, Inc. additionally seeks to Dismiss on the
grounds that all of the allegations against it in the First Amended Counterclaim of
Defendant/Counter-Plaintiff EMMLLC are premised on V. International Fine Arts

---

[1] The "Marilyn Marks" were not used in commerce until 1983, over twenty years <u>after</u>
Ms. Monroe's death. FACC,  ¶¶ 12, 15.  There is no allegation that Ms. Monroe utilized
any trademarks during her life.

Publishing, Inc. being an alleged "alter-ego" of Co-Counter/defendants Leo Valencia

and A.V.E.L.A., Inc., and there has not been facts alleged to support such an "alter-ego"

allegation.


## II

## <u>APPLICATION OF RULE 12(b)(6) TO THIS CASE</u>

The modern analysis of a Rule 12(b) motion is guided by the Supreme Court's

decisions in *Bell Atl. Corp. v. Twombly*, (2007) 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.

2d 929 and *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

The primary principle established by these cases is that in order to survive a motion to

dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Iqbl*, 556 U.S. at 678, quoting *Twombly*, 550

U.S. at 570. **Plausibility is the keystone** and it must be based upon well pleaded facts,

not conclusions of law. *Twombly* at 555. The court is "not bound to accept as true a

legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286

(1986), 106 S. Ct. 2932, 92 L.Ed. 2d 209. See also, *Port Dock & Stone Corp. v. Oldcastle*

*N.E.., Inc*., 507 F.3d 117, 121 (2d Cir. 2007); *Smith v. Local 819 I.B.T. Pension Plan*, 291

F.3d 236, 240 (2d Cir. 2002). Similarly, bare bones allegations are inadequate:

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice." *Iqbal,* 556 U.S. at 678, citing *Twombly*.  As for

the essential requirement of plausibility; *Iqbal* instructs that:

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ibid*

The Court's decision in *Twombly* also emphasizes the practical importance of permitting litigants to dismiss an implausible claim at the pleading stage:

> We alluded to the practical significance of the Rule 8 entitlement requirement in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.' (Citations) So when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.' (Citations)
> *Twombly*, 550 U.S. at 557.

At this point, V International is more than a year behind the other parties in terms of discovery, familiarity with the existing evidence, and trial preparation. It faces an indiscriminate series of shotgun claims – however unwarranted they may be – that threaten the company's very existence. Under these circumstances the facially **implausible dilution claim simply** does not warrant V International's expenditure of discovery funds or attorney time.

Given these considerations, courts within the Southern District of New York have not hesitated in appropriate cases to dismiss trademark dilution claims pursuant to Rule 12(b)(6). See *Luv N' Care, Ltd. v Regent Baby Products Corp.,* 841 F. Supp.2d 753(S.D.N.Y. 2012); *Boarding School Review, LLC v. Delta Career Educ. Corp.* 11 CIV. 8921 DAB, 2013 WL 6670584 (S.D.N.Y. March 29, 2013), *reconsideration denied,* 11 CIV. 8921 DAB, 2013 WL 6670586; and *CourtAlert.com v. e-Law, LLC,* 12 CIV. 2473 DAB,

2013 WL 4754819 (S.D.N.Y. August 26, 2013). This dilution claim similarly warrants such dismissal.

III

**THE FACTS PRESENTED IN THE ALLEGED THIRD CAUSE OF ACTION DO NOT SUPPORT A CLAIM FOR DILUTION.**

The Third Cause of Action for dilution of purportedly "famous" trademarks exemplifies the basic error that pervades each of the claims presented in the FACC, in that it confuses Marilyn Monroe, the Individual, with "Marilyn Monroe" the brand.  Ms. Monroe the individual was and is "famous" while "Marilyn Monroe" the brand – the source indicator – is not.  As a trademark, the brand "Marilyn Monroe" doesn't begin to approach the level of fame and notoriety required for protection under 15 U.S.C. § 1125(c) or its state counterpart N.Y. Gen. Bus. Law § 360-1.

**A.   THE MARILYN MARKS ARE DESCRIPTIVE AND ARE  NOT ENFORCIBLE ABSENT ACQUISITION OF SECONDARY MEANING.**

Trademarks are generally classified in categories of increasing distinctiveness; they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.  See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). The "Marilyn Marks" – "Marilyn" and "Marilyn Monroe" are prototypical examples of descriptive surnames: they refer to a specific deceased person. See e.g., *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 345-46 (2d Cir. 1999).  As descriptive "marks" they are protectable against dilution **only** if they have acquired secondary meaning as a source indicator. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S.763, 768-69 (1992) ,112 S.Ct. 27, 120 L.Ed. 2d 615. See also, *Pirone v. MacMillan,*

*Inc.*, 894 F.2d 579, 583 (2d Cir. 1990); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., In*c., 192 F.3d 337, 345-46 (2d Cir. 1999).

"In a case involving secondary meaning, the crucial question is 'whether the public is moved in any degree to buy an article because of its source.'" *Forschner Group v. Arrow Trading Co.,* 124 F.3d 402, 408 (2d Cir. 1997).  In relation to the matter at bar,(1) there are many separate and distinct entities who are free to sell and do in fact sell Marilyn Monroe related goods and products, and; (2) given these multiple sellers, its implausible and almost nonsensical to think that an image of Monroe on a product indicates that Defendant Counter-Plaintiff EMMLLC produced the product.

**B.   THE "MARILYN" MARKS HAVE NOT ACQUIRED SECONDARY MEANING:  THE WORDS "MARILYN MONROE" CONTINUE TO IDENTIFY THE ICONIC  INDIVIDUAL OF THAT NAME, NOT A BRAND.**

Defendant apparently concedes -- as it must -- the necessity that its marks have acquired secondary meaning and asserts the bare conclusion that the "Marilyn Marks" have "acquired distinction and strong secondary meaning" (FACC ¶ 70). **However, the claim that the marks have achieved a secondary meaning is simply not plausible.** **S**econdary meaning occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Brothers Inc.,* 529 U.S. 205, 211 (2000), 120 S. Ct. 1339, 146 L. Ed. 2d 182.  Thus, <u>if</u> the words "Marilyn Monroe" had actually acquired secondary meaning, the public would no longer identify those words with the woman whose escapades enthralled and shocked the Nation; rather, those words would identify a brand of apparel, a line of cosmetics or an alcoholic beverage. That is, of course, a preposterous notion, one that hardly crosses the line from conceivable to plausible.

*Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also, *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.,* 868 F. Supp. 2d 172, 176 (SDNY 2012) (quoting *Twombly*: "If the non-moving party has 'not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.'")

Legally and factually, the dilution claim in this case mirrors the claim contained in the well known series of *Cairns* cases involving Franklin Mint's use of the name and likeness of Diana, Princess of Wales.[2]  In the *Cairns* cases the plaintiff Foundation asserted a claim for dilution by alleging that the otherwise descriptive phrase "Diana, Princess of Wales" had acquired a secondary meaning identifying Diana's "charitable activities" rather than Diana herself.  The District Court, however, recognized that the essential element – secondary meaning – did not and could not exist:

> For a name or title to qualify for protection under the Federal Trademark Dilution Act, it must have a secondary meaning. 15 U.S.C. § 1052(e)(4); *see also* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 13:1 (4th ed. 1996). Plaintiffs argue that because Princess Diana is well-known for her charitable activities, her title has acquired a secondary meaning as to charitable and humanitarian services.
>
> In this case, secondary meaning would occur when, "in the minds of the public, the primary significance of a [mark]" identifies charitable and humanitarian services rather than Princess Diana the individual. *See Wal-Mart Stores, Inc., v. Samara Brothers Inc.,* 529 U.S. 205, 146 L. Ed. 2d 182, 120 S. Ct. 1339, 1343 (2000) (citation omitted); *Visser v. Macres,* 214 Cal. App. 2d 249, 253, 29 Cal. Rptr. 367 (1963); secondary meaning does not attach as a word identifying goods or services until the goods or services submerge the primary meaning of the name as a word identifying a person).

---

[2] *Cairns v. Franklin Mint Co,* 24 F. Supp.2d 1013 (CDC 1998), *aff'd* 292 F.3d 1139 (9th Cir 2002)("*Cairns I");* 120 F. Supp.2d 880 (CDC 2000) (" *Cairns II");* 107 F.Supp.2d 1212 (CDC 2000) (*"Cairns III"), aff'd The Diana Princess of Wales Memorial Fund v. Franklin Mint, (9th Cir. 2000);* 115 F. Supp.2d 1185 (*"Cairns IV");* and 292 F.3d 1139 (9th Cir. 2002)(*"Cairns V").* See also*, Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, (2d App. 2010) 184 Cal. App. 4th 313, *review denied*, 2010 Cal. LEXIS 7172 (July 21, 2010).

Although Princess Diana is certainly well-recognized for her humanitarian work and fund-raising, she is indisputably also well-recognized for her status as a member of the royal family, her role as a mother, and her image as a fashionable princess. **A finding of secondary meaning in this case would mean that the words "Diana, Princess of Wales" would no longer primarily identify the individual, Princess Diana, but instead identify plaintiffs' charitable activities. This is an absurd contention to say the least. "Diana, Princess of Wales" has not, and the Court suspects, will never, acquire a secondary meaning limited to charitable works.** *See, e.g., Chamberlain v. Columbia Pictures Corp.,* 186 F.2d 923, 925 (9th Cir. 1951) (strong primary meaning of Mark Twain incapable of acquiring a secondary meaning in connection with literary property).

Because secondary meaning is required for an otherwise descriptive name to be "famous," and famousness is required for protection under 15 U.S.C. § 1125(c)(1), defendants are entitled to summary adjudication of plaintiffs' claim for dilution.
*Cairns III, 107 F. Supp.2d at 1222.* (Emphasis added.)[3]

After defeating the dilution claim, among others, on summary judgment,

Franklin Mint moved for an award of attorneys fees. With respect to its entitlement

under the dilution claim, the district court awarded substantial attorney fees holding

that:

[P]laintiff's claims for dilution and false advertising were groundless and unreasonable. Unlike the endorsement claim which could be considered argument for an extension of existing law, **the dilution claim had no legal basis.** As explained in the Court's order, **plaintiffs' claim for dilution was based on the 'absurd' contention that "Diana, Princess of Wales" had taken on a meaning other than identification of an individual. (June 27, 2000 Order at 21.) Attempting to argue that "Diana, Princess of Wales" had acquired a secondary meaning falls just short of frivolous.** Defendants are entitled to recover fees for defending the dilution claim.
*Cairns IV,* 115 F. Supp.2d at 1188-89 (Emphasis added).

Following the conclusion of the *Cairns* cases, Franklin Mint,

---

[3] The defendant had sought earlier to dismiss the *Cairns* dilution claim. Although the court noted that "Diana, Princess of Wales has such a clear primary meaning as a description of the person herself that it seems unlikely that any secondary meaning could be acquired in her name," it considered itself bound, under the law as it existed **prior** to *Twombly and Iqbad, supra,* to accept the complaint's allegations as true.

brought separate suits for malicious prosecution against each the plaintiff Fund and the

trial lawyers for the fund. The case against the Fund was settled by the Fund

establishing a $25 million escrow that would be used primarily for charitable

donations. See *Franklin Mint v. Superior Court*, 130 Cal. App. 4th 1550 (2d App. 2005).

The claim against the attorneys proceeded to trial and ultimate decision. *Franklin Mint*

*Co. v, Manatt, Phelps & Phillips,* 184 Cal. App. 4th 313 (2d App. 2010).

The *Manatt* appellate court made an extensive analysis of the

underlying *Cairns* litigation and federal trademark dilution law before it concluded that

the law firm had indeed maliciously prosecuted the action. The court noted that:

"Because 'Diana, Princess of Wales' has such an extraordinarily strong primary meaning

as descriptive of Princess Diana as a person, the contention that it had acquired

secondary meaning at the time of the underlying lawsuit was, as the district court in

the underlying lawsuit observed, 'absurd.'" (*Cairns v. Franklin Mint Co*. 107 F.Supp.2d

1212, 1222 (C.D.Cal. 2000). (*Cairns III*).) Therefore, we conclude that the trademark

dilution claim was untenable." 184 Cal. App. 4th at 320. The court continued:

> In short, given the enormously widespread use of Princess Diana's name and
> likeness to identify Princess Diana as an individual—Manatt itself described her
> in the underlying complaint as "one of the best known and most widely
> admired public figures of the last half of the 20th century" who "for 16 years
> was the object of intensive public interest and media scrutiny"—no reasonable
> attorney would contend, especially in the immediate aftermath of her death,
> that the primary significance of "Diana, Princess of Wales" was to identify the
> provider of charitable services rather than to  identify Princess Diana herself.
> Thus, **there was no probable cause to allege that "Diana, Princess of Wales"**
> **had acquired secondary meaning—a basic requirement for trademark**
> **protection of a descriptive personal name.** *Id* at 339-40 (Emphasis added)

> Although Princess Diana and Marilyn Monroe were very distinct personalities,

they shared a degree of notoriety that few individuals achieve – or want. Ms. Monroe

was much more than an actress: she was the paramour of a President, wife of baseball

great Joe DiMaggio and famed playwright Arthur Miller;  she was the "blond

bombshell," the sex symbol of  her era. Like Princess Diana, that notoriety continues to

this day. And like the Princess, her name will always mean that spectacular individual,

not a brand of jewelry.

**C.** **EVEN IF THE "MARILYN MARKS" HAD ACQUIRED SECONDARY MEANING
THEY ARE NOT "FAMOUS" MARKS PROTECTABLE UNDER THE DILUTION
ACT.**

The Trademark Dilution Act provides that "the owner of a famous mark shall be

entitled . . . to an injunction against another person's commercial use in commerce of a

mark or trade name, if such use begins after the mark has become famous and causes

dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). The Act applies

"only to those marks which are both truly distinctive *and* famous, and therefore most

likely to be adversely affected by dilution." S. Rep. No. 100-515, at 42 (emphasis

added). "A higher standard must be employed to gauge the fame of a trademark

eligible for this extraordinary remedy." 77 Trademark Rep. at 461. Only the "truly

famous" marks qualify; marks such as NIKE,[4] HOT WHEELS,[5] BUDWEISER, CAMEL and

BARBIE[6]; indeed, the legislative examples of the eligible "famous marks" given in the

House Report – DUPONT, BUICK, and KODAK – "are marks that for the major part of

---

[4] *Nike, Inc. v. Nikepal Int'l, Inc*., 2007 U.S. Dist. LEXIS 66686 (E.D. Cal. 2007).

[5] *Jada Toys v. Mattel, Inc*., 518 F.3d 628, 635 (9th Cir. 2008).

[6] *Bd. Of Regents, Univ. of Tex. Sys. V. KST Elec. Ltd.,* 550 F. Supp. 657, 679 (W.D. Tex. 2008)

the century have been household words throughout the United States. They are representative of the best known marks in commerce." *TCPIP Holding Co. v. Haar Communs;* 244 F.3d 88, 99 (2d Cir. 2001). Dilution protection is afforded rarely; this because it is the only form of trademark protection that does not require confusion. *Moseley v. V Secret Catalogue, Inc*., 537 U.S. 418, 429 (2003) ("Unlike traditional infringement law, the prohibitions against trademark dilution … are not motivated by an interest in protecting consumers."); *Perfumania, Inc. v. Perfulandia, Inc.,* 279 F. Supp. 2d 86, 96 (D.P.R. 2003)[7] See also, *Heller, Inc. v. Design Within Reach, Inc.,* 2009 U.S. Dist. LEXIS 71991, at *8-10 (S.D.N.Y. 2009) ("The policy rationale behind the fame requirement is to encourage and promote competition; without limiting protection to famous marks, anti-dilution laws would turn every trademark into "an anti-competitive  weapon." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:104 *10 (2009 ed.).

The rationale of the above cases is clearly applicable to the instant case: the "Marilyn Monroe" and "Marilyn" "marks" are certainly not "truly distinctive and famous" as required by both the federal and state dilution statutes. Moreover, this inherent defect cannot be cured by amendment.  Accordingly, Counter-Defendant V. International Fine Arts Publishing, Inc. respectfully requests that the Third Cause of Action of the FACC be dismissed pursuant to Rule 12(b)(6) without leave to amend.

---

[7] "The FTDA protects only the trademark owner and is unconcerned with possible confusion on the part of consumers.").  Thane Int'l v. Trek Bicycle Corp., 305 F.3d 894, 905, 64 U.S.P.Q.2d 1564 (9th Cir. 2002) (declaring that "the implications of a broad application of the federal antidilution statute are troubling, as 'dilution causes of action, much more so than infringement and unfair competition laws, tread very close to granting "rights in gross" in a trademark'(Citations).

IV

## THE FIRST, SECOND, FOURTH, FIFTH, SIXTH AND SEVENTH COUNTERCLAIMS ARE IMPROPER AND FAIL TO STATE FACTS SUFFICIENT TO SUPPORT THOSE CAUSES OF ACTION.

V. International joins in, and incorporates by reference, the arguments raised in support of X One X Movie Archives, Inc.'s Motion to Dismiss the First, Second, Fourth, Fifth, Sixth and Seventh Counterclaims, and which was filed concurrently herewith.

V.

## COUNTER-PLAINTIFF'S CONCLUSORY ALTER EGO ALLEGATIONS ARE NOT ENOUGH TO PIERCE V. INTERNATIONAL'S CORPORATE VEIL.

Conclusory assertions that corporations acted as alter egos will not suffice to support the equitable relief of piercing the corporate veil. *Goldman v Chapman*, 44 AD3d 938, 939 [2d Dept 20071).

The FACC alleges that "V. International, Valencia's purported 'licensing agent,' is also an alter-ego for Valencia and/or AVELA." (FACC, page 8, ¶ 29) Counter-Plaintiff EMMLLC also alleges "The corporate existence of these entities should be disregarded as they are mere alter-egos for Valencia." (FACC, page 8, ¶ 28).

Courts start with the presumption of corporate regularity and will only disregard the corporate form when the party seeking to veil pierce makes a substantial showing that the subject corporation is really a dummy or decoy corporation, see *Pardo v. Wilson Line of Washington, Inc.*, 414 F.2d 1145 (D.C. Cir. 1969) (applying New

York law), or where the subject corporation's "separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego," *Garter v. Snyder*, 607 F.2d 582 (2d Cir. 1979). Thus, the party seeking to veil pierce bears a "heavy burden." *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (N.Y. 1998); see *Cargill Investor Services, Inc. v. Cooperstein*, 587 F. Supp. 13, 15 (S.D.N.Y. 1984).

New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 810-11, 623 N.E.2d 1157, 1160-61 (1993) (citing cases). "While complete domination of the corporation is the key to piercing the corporate veil, ... such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required." Id. at 811, 623 N.E.2d at 1161 (citing *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 587, 223 N.E.2d 6, 8 (1966); *Guptill Holding Corp. v. State*, 33 A.D.2d 362, 307 N.Y.S.2d 970, 972-73 (1970), aff'd, 31 N.Y.2d 897, 340 N.Y.S.2d 638, 292 N.E.2d 782 (1972)). Typically, piercing analysis is used to hold individuals liable for the actions of a corporation they control. However, New York law recognizes "reverse" piercing, which, as here, seeks to hold a corporation accountable for actions of its shareholders, please note that there is no allegation that Valencia is a shareholder of V. International. See *State v. Easton*, 169 Misc.2d 282, 647 N.Y.S.2d 904,

908-09 (Sup.Ct.1995).

**A.   THE FACC FAILS TO ALLEGE, AS REQUIRED TO ESTABLISH AN ALTER-EGO, THAT VALENCIA AND/OR AVILA EXERCISED COMPLETE DOMINATION OVER V. INTERNATIONAL.**

There were **no** facts alleged in the FACC which would support a finding that V. International was dominated by Valencia.

In *Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 137 (2d Cir.1991) the Court enunciated a list of factors that tend to identify a dominated corporation: (1) whether corporate formalities are observed, (2) whether the capitalization is adequate, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) whether there is overlap in ownership, officers, directors, and personnel, (5) whether the corporate entities share common office space, address and telephone numbers, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the alleged dominator deals with the dominated corporation at arms-length, (8) whether the corporation is treated as an independent profit center, (9) whether others pay or guarantee debts of the dominated corporation, and (10) whether the corporation in question had property that was used by the alleged dominator as if it were the dominator's own. *Id*. at 139.

Here with respect to V. International, EMMLLC alleges 3 lone facts: (1) that V.

International operates "solely to provide administrative support" to Leo Valencia and other named entities; (2) several V International employees have had an email address with the extension @avela.net; and (3) that prior counsel Melissa Woo identified herself as in-house counsel for AVELA but "was employed and paid by V International". (FACC page 8, ¶¶ 29-31).

There are no factual allegations presented which would allow a mere inference that V. International was dominated by Mr. Valencia or AVELA.  As such, the FACC fails to allege facts upon which a claim of alter-ego can be based.

**B.  <u>TO SATISFY THE SECOND PRONG TO ESTABLISH AN ALTER EGO, EMMLLC MUST ALLEGE FACTS SUFFICENT TO FIND V. INTERNATIONAL MISUSED THE CORPORATE FORM TO COMMIT A FRAUD OR AVOID ITS OBLIGATIONS.</u>**

The second prong encompasses the overarching goal of the veil-piercing doctrine, which is to prevent fraud or achieve equity. See *International Aircraft Trading Co. v. Manufacturers Trust Co.,* 297 N.Y. 285, 292 (N.Y. 1948). To satisfy this prong the party seeking to veil pierce must establish that the parent corporation misused the corporate form for its own ends to commit a fraud or avoid its obligations. See *TNS Holdings, Inc. v. MKI Securities Corp., 92 N.Y.2d 335, 339-40 (1998)*. As stated by the New York Court of Appeals in *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135 (1993),

> "domination, standing alone, is not enough; some
> showing of a wrongful or unjust act toward
> plaintiff is required. The party seeking to
> pierce the corporate veil must establish that the

> owners, through their domination, abused the
> privilege of doing business in the corporate form
> to perpetuate a wrong or injustice against that
> party such that a court in equity will intervene."

There are no factual allegations made by EMMLLC which would allow for a finding that any fraud or wrong doing occurred by and through V. International as a result of the alleged domination of Mr. Valencia or AVELA and which injured EMMLLC.

EMMLLC fails to allege that Leo Valencia or any other entity dominates V International, and additionally EMMLLC fails to state facts alleging how any such domination was used to commit a fraud or wrong injuring EMMLC. EMMLLC attempts to rely upon mere legal labels and conclusions alongside facts which are insufficient to support EMMLLC's alter ego allegations.

///

///

///

///

///

///

///

///

///

///

///

VI.

**CONCLUSION**

For the arguments stated above and the arguments raised in support of X One X

Movie Archives Inc.'s Motion to Dismiss and incorporated herein by reference, V.

International's Motion to Dismiss all causes of action should be GRANTED.

Dated: December 4, 2014          Respectfully submitted:

/s/ Gregory J. Goodheart

Gregory J. Goodheart (*pro hac vice*)
GOODHEART LAW OFFICES
22736 Vanowen Street, Suite 303
West Hills, CA 91307
Telephone: (818) 992-4463
Facsimile: (818) 992-7629
ggoodheartlaw@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify the following: I am over the age of 18 years and am not a party to the above-captioned action. I am a registered user of the CM/ECF system for the United States District Court for the Southern District of New York.

On December 4, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. To the best of my knowledge, all counsel to be served in this action are registered CM/ECF users and will be served by the CM/ECF system.

I declare under penalties of perjury under the laws of the United States that the foregoing is true and correct.

/s/ Gregory J. Goodheart

GREGORY GOODHEART (BAR NO.226501)