**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

A.V.E.L.A., INC.,

Plaintiff,

-against-

THE ESTATE OF MARILYN MONROE, LLC and DOES 1 THROUGH 10

Defendants.

THE ESTATE OF MARILYN MONROE, LLC,

Defendant/Counter-Plaintiff,

-against-

A.V.E.L.A., INC., LEO VALENCIA, IPL, INC., X ONE X MOVIE ARCHIVES INC., and V. INTERNATIONAL FINE ARTS PUBLISHING, INC.,

Counter-Defendants.

Case No. 1:12-cv 4828-KPF-JCF

ECF Case

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF COUNTER-DEFENDANT X ONE X MOVIE ARCHIVES, INC. TO DISMISS COUNTERCLAIMS IN FIRST AMENDED COUNTERCLAIM**

## TABLE OF CONTENTS

**I. INTRODUCTION** ........ **1**

**II. ARGUMENT** ........ **1**

**A. THE FIRST AND FOURTH COUNTERCLAIMS FAIL TO STATE A CLAIM** ........ 1

*1. **EMMLLC Has Failed to Adequately Allege that It Owns the Right to Prosecute a Marilyn Monroe Celebrity Endorsement Claim*** ........ *1*

*2. **EMMLLC Has Failed to Allege a False or Misleading Representation of Fact, a Necessary Element of a Celebrity Endorsement Claim*** ........ *3*

*3. **Cases Cited by EMMLLC Are Inapt*** ........ *3*

*4. **EMMLLC Fails to Allege Other Necessary Elements of Its Counterclaims*** ........ *4*

**B. THE SECOND COUNTERCLAIM FAILS TO STATE A CLAIM** ........ 6

C. **THE THIRD COUNTERCLAIM FAILS TO STATE A CLAIM** ........ 8

**D. THE FIFTH COUNTERCLAIM FAILS TO STATE A CLAIM** ........ 8

E. **THE SEVENTH COUNTERCLAIM FAILS TO STATE A CLAIM** ........ 9

**III. CONCLUSION** ........ **10**

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 1, 3
*Bogart, LLC v. Ashley Furniture Indus., Inc.*, No. 3:10-CV-39 CDL, 2012 WL 3745833 (M.D. Ga. Aug. 28, 2012) .......... 8
*Bruce Lee Enter., LLC v. A.V.E.L.A., Inc.*, No. 10 Civ. 2333 (LTS), 2011 WL 1327137 (S.D.N.Y. Mar. 31, 2011) .......... 4
*Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212 (C.D. Cal. 2000) .......... 5, 6
*Cairns v. Franklin Mint Co*., 24 F. Supp. 2d 1013 (C.D. Cal. 1998) .......... 4, 5
*Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231 (E.D.N.Y. 2013) aff'd in part, appeal dismissed in part sub nom. *Coggins v. Buonora*, No. 13-4635, 2015 WL 148982 (2d Cir. Jan. 13, 2015) .......... 2
*Erickson Beamon Ltd. v. CMG Worldwide, Inc*., No. 12 Civ 5105 (NRB), 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) .......... 4, 8
*Experience Hendrix, LLC. v. Elec. Hendrix, LLC*., No. C07-0338 TSZ, 2008 WL 3243896 (W.D. Wash. Aug. 7, 2008) .......... 8
*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) .......... 4
*Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D. Nev. 2010) .......... 4
*Gebbia v. Toronto-Dominion Bank*, 306 A.D. 2d 37, 38, 762 N.Y.S.2d 38 (2003) .......... 10
*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 273 (S.D.N.Y. 2002) .......... 8
*Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2003 .......... 9
*Idema v. Dreamworks, Inc.*, 2003 WL 23095763 (9th Cir. 2004) .......... 2
*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. Cal. 2012) .......... 6, 7
*Nomination Di Anotonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 07 Civ. (DAB), 2009 WL 4857605 (S.D.N.Y. Dec. 14, 2009) .......... 8
*Sch. of Visual Arts v. Kuprewicz*, 3 Misc. 3d 278 (Sup Ct, NY County 2003) .......... 9

## Statutes

15 USC § 1125 .......... 5

## Treatises

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 28:14 (4th ed. 1996) .......... 6

X One X Movie Archives, Inc. ("X One X") respectfully submits this reply memorandum of points and authorities in support of its Motion to Dismiss ("Motion") the Counterclaims in the First Amended Counterclaim ("FAC") of The Estate of Marilyn Monroe, LLC ("EMMLLC").

## I. Introduction

EMMLLC states "Judge Francis held that the Estate's motion to amend could not be denied, and that the proposed FAC alleged sufficient facts with respect to the addition of X One X (and other alter egos) to survive a motion to dismiss," thereby falsely implying that Judge Francis already ruled on the issues raised in X One X's Motion to Dismiss. However, Judge Francis did not rule on any of the arguments raised in X One X's motion to dismiss, nor V International's argument that the Third Counterclaim fails to state a claim. EMMLLC's intimation, that the Court has already addressed the issues raised in the briefs (with the exception of the alter ego issue raised in V's brief), is simply false. These issue are ripe (if not overripe) for determination here as evidenced by the fact that the mere threat of this motion as to the Sixth Counterclaim resulted in EMMLLC dismissing the claim with prejudice. (Dkt. 199.)

## II. ARGUMENT

### A. The First and Fourth Counterclaims Fail to State a Claim

#### 1. EMMLLC Has Failed to Adequately Allege that It Owns the Right to Prosecute a Marilyn Monroe Celebrity Endorsement Claim

EMMLLC bases its First and Fourth Counterclaims on its sham assertion that it is "the exclusive owner of those rights in and to Marilyn Monroe's identity, persona, name and likeness . . . ," (Dkt. 133 ¶18.) and erroneously asserts that this is "a factual allegation that must be taken as true". (Dkt. 201, p.5.) It is wrong. First and foremost, broad allegations that EMMLLC is "the exclusive owner" of the above-mentioned rights is nothing more than a legal conclusion, couched as a fact, which this court need not accept as true on motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Moreover, the allegation is wildly implausible, and easily belied by countless copyrighted images of Ms. Monroe not owned by EMMLLC (not to mention countless images of Ms. Monroe that were never copyrighted and essentially owned by all who care to use them). The Court can and should take judicial notice of the countless copyrighted Marilyn Monroe likenesses *not* owned by EMMLLC, and find that EMMLLC's ownership allegation is implausible in light of these judicially noticeable documents. *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 243 (E.D.N.Y. 2013) aff'd in part, appeal dismissed in part sub nom. *Coggins v. Buonora*, No. 13-4635, 2015 WL 148982 (2d Cir. Jan. 13, 2015) ("In analyzing the sufficiency of a complaint, a court need not accept as true "pleadings that . . . that are contradicted . . . by facts of which the court may take judicial notice."); *see e.g., Idema v. Dreamworks, Inc.,* 2003 WL 23095763, *1 (9th Cir. 2004) (finding copyright registration was the sort of document as to which judicial notice was appropriate). For instance, a search of the United States Copyright Office's online database at http://www.copyright.gov/, with the keyword phrase Marilyn Monroe and photograph evidences that there are countless registered images of Marilyn Monroe that are not owned by EMMLLC. Moreover, a search of the Copyright Office's online registry only goes back to 1978, and likely reveals only a tiny fraction of the copyrighted images of Marilyn Monroe not owned by EMMLLC. *See* Supplemental Declaration of Michael R. Adele, filed concurrently herewith, and related Supplemental Request for Judicial Notice (showing that there are thousands of copyrighted Marilyn Monroe images not owned by EMMMLLC) .

Given EMMLLC's sham assertion of exclusive ownership to Ms. Monroe's identity, likeness and persona, as well as EMMLLC's failure to plead *facts* from which such ownership can be inferred, EMMLLC has failed to adequately allege that it has standing to assert its purported "false endorsement claim." EMMLLC (which, once again, is not Marilyn Monroe's

estate and does not allege that it is) merely alleges that it is a "brand development and licensing company." *See generally* Dkt. 74-1 and *specifically* (Dkt. 133, ¶ 13). Thus, EMMLLC has failed to allege *facts* (not legal conclusions) showing that it may enforce Monroe's celebrity endorsement claim. *Iqbal*, 556 U.S. at 664. ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.")

**2. EMMLLC Has Failed to Allege a False or Misleading Representation of Fact, a Necessary Element of a Celebrity Endorsement Claim**

EMMLLC's opposition is particularly telling in its inability to actually cite <u>*any*</u> allegation in the FAC that, if true, would constitute a "false or misleading representation of fact." Instead, EMMLLC is forced to weakly assert, *without any citation whatsoever to the FAC*, that "[EMMLLC] alleged X One X's false and misleading representation of fact with regard to its design, licensing, sale, marketing and distribution of merchandise bearing the Marilyn Monroe Intellectual Property." (Dkt. 201, p. 7.) Indeed, it is impossible to ascertain from the FAC what actual "misrepresentation of fact" was purportedly made. Because EMMLLC fails to allege this essential element of its claim (*See* Dkt. 201, p. 4 [acknowledging elements of claim]), the First (and related Fourth) Counterclaim should be dismissed .

**3. Cases Cited by EMMLLC Are Inapt.**

In explaining its "false endorsement" claim, EMMLLC cites a variety of cases involving false endorsement under 43(a). As EMMLLC points out "[t]he mark in such cases is the ***plaintiff's*** identity" (Dkt. 201, p. 3) (emphasis added). EMMLLC's argument proceeds as though the plaintiff/claimant here is Marilyn Monroe, the deceased celebrity. The counter-plaintiff here is The Estate of Marilyn Monroe, LLC, a Delaware limited liability company, not Marilyn

Monroe or the actual estate of Marilyn Monroe.[1] (Dkt. 133, ¶ 1.) EMMLLC fails to cite *any* case law where an unrelated entity brought a claim on behalf of a deceased celebrity for false endorsement rather than the deceased celebrity's family or actual estate.[2]

To its own detriment, EMMLLC quotes *Cairns*, stating, "By using the term 'another person,' Congress selected language broad enough to encompass a claim by a deceased celebrity's Estate or any celebrity's assignee." *Cairns*, 24 F. Supp. 2d at 1032. EMMLLC has *nowhere* alleged that it is Marilyn Monroe's actual estate nor Marilyn Monroe's assignee. (Dkt. 133.) Even under EMMLLC's own logic, EMMLLC falls outside Congress's intended scope.

4. **EMMLLC Fails to Allege Other Necessary Elements of Its Counterclaims**

In its Opposition, EMMLLC again attempts to conflate two very distinct lines of cases. One line of cases is most applicable to "traditional trademarks" and establishes a cause of action for "false association" or "unfair competition" when a defendant makes false assertions that are likely to cause confusion between defendant's product and plaintiff's protectable trademark. The second line of cases, in a far blurrier application of 15 USC 1125(a), provides for a cause of action for "false association" with or "false endorsement" by a celebrity. Though EMMLLC commingles the two separate legal theories whenever it finds either theory more convenient, EMMLLC fails to state a claim under either line of case law.

[1] Finally, X One X's statement that it "does not sell, license, or distribute products with Marilyn Monroe's image," was placed in the Motion to Dismiss only to ensure that nothing in X One X's Motion would later be contorted by EMMLLC into an admission of this fact. (Dkt. 194, p. 7.) It does not highlight a factual dispute as it is directly followed by the statement, "…even if this allegation were true, this alone cannot establish a false endorsement claim." (Dkt. 194, p. 7.) X One X's argument then proceeds under assumption, for matters of the motion only, of this statement's truth.

[2] *See Bruce Lee Enter., LLC v. A.V.E.L.A., Inc*., No. 10 Civ. 2333 (LTS), 2011 WL 1327137, at *1 (S.D.N.Y. Mar. 31, 2011) ("[Bruce] Lee's family created Concord Moon… as the sole and exclusive rights holder of Lee's Intellectual Property. On April 1, 2008, Lee's family established Bruce Lee Enterprises as the successor-in-interest to… Concord Moon"); *Facenda v. N.F.L. Films, Inc*., 542 F.3d 1007, 1011 (3d Cir. 2008) ("John Facenda's Estate sued NFL Films"); *Cairns v. Franklin Mint Co*., 24 F. Supp. 2d 1013, 1021 (C.D. Cal. 1998) ("Plaintiffs are the executors of the Estate of Diana, Pricness of Wales"; *Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc*., 688 F. Supp. 2d 1148, 1150 (D. Nev. 2010) ("Hope Road is composed of and owned by Bob Marley's children"); *Erickson Beamon Ltd. v. CMG Worldwide, Inc*., No. 12 Civ 5105 (NRB), 2014 WL 3950897, at *1 (S.D.N.Y. Aug. 13, 2014) (Defendants were "the Estate of the late movie star Bette Davis").

Under the first "traditional trademark" line of case law, EMMLLC must establish a false or misleading description or representation of fact that is likely to cause confusion or mistake " … as to the origin, sponsorship, or approval of his or her goods." 15 USC § 1125. However, in the FAC EMMLLC fails to allege that X One X has engaged in false or misleading conduct or made false assertions that cause a likelihood of confusion between X One X's licensed images and EMMLLC's purported trademarks in the words "Marilyn Monroe," or stylized versions thereof. EMMLLC fails to allege how (or even that) the mere use of an image of Marilyn Monroe creates confusion regarding false endorsement by or association with the company EMMLLC. As noted in X One X's Motion to Dismiss (Dkt. 194, p. 10.) EMMLLC fails to allege trademark ownership in the identity, persona or likeness of Marilyn Monroe; thus, allegations that Counter-Defendants sell, license, or distribute products bearing Monroe's image fail to state claim. Additionally, an inference that use of Monroe's image on products creates confusion of false endorsement by or association with The Estate of Marilyn Monroe, LLC is implausible on its face.[3]

Under the second "celebrity" line of case law, EMMLLC fails to state a valid claim for "false association" with or "false endorsement" by Marilyn Monroe. No known case sets out an exact standard for a deceased celebrity, in part because such a claim's viability remains suspect. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1215 (C.D. Cal. 2000) citing *Lord Simon Cairns, et al. v. Franklin Mint*, 24 F. Supp. 2d at 1032) ("neither the availability nor the parameters of a false endorsement claim brought by the estate of a celebrity have been established.") In short, celebrity endorsement cases involve confusion regarding endorsement

[3] Similar to arguing a t-shirt company that sells t-shirts with a photo of an apple, the fruit, creates confusion regarding Apple, Inc., the technology company. EMMLLC cannot use its name to establish a monopoly on the use of images of Marilyn Monroe, any more than Apple, Inc. can create a monopoly on the use of images of apples.

by the depicted celebrity. EMMLLC fails to allege any likelihood that consumers might be confused about whether or not Marilyn Monroe herself endorsed a product.[4] EMMLLC also fails to allege any facts supporting an inference that EMMLLC owns Marilyn Monroe's rights. Cairns specifically noted, "no evidence presented to the Court supports plaintiffs' contention that any and all uses of a celebrity's image may be the subject of a trademark registration." *Id.*

Finally, even a claim brought by a living celebrity under this "celebrity" endorsement theory at a minimum requires "false endorsement, *not mere use of an image or name*." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d at 1214. Unlike the broader right of publicity, which is infringed by the "unpermitted use of a person's identity" containing "no false inference that plaintiff endorses or approves the product," §1125(a) prohibits only *false endorsement,* not mere use of an image or name…" *Id.* (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 28:14 (4th ed. 1996)).[5]

The above analysis applies equally to X One X's motion to dismiss EMMLLC's fourth counterclaim. X One X has in no way conceded that EMMLLC adequately pled "bad faith." Instead it focused on EMMLLC's various other failures.

**B. The Second Counterclaim Fails to State a Claim**

EMMLLC's Opposition once again impermissibly attempts to conflate its purported Trademarks, broadly alleging ownership of "common law" and "registered marks." It provides a chart of eight registered marks, but fails to describe the nature of any common law marks.

---

[4] EMMLLC also fails to explain how the deceased Monroe even *could* endorse a product.

[5] EMMLLC contends that it is not making a post mortem right of publicity claim (presumably because EMMLLC has already done that, and lost). *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 1000 (9th Cir. Cal. 2012) (holding no post mortem right of publicity exists in Marilyn Monroe). Instead, X One X's argument is that EMMLLC is impermissibly attempting to circumvent its adverse ruling in *Greene* by arguing that 15 USC 1125(a) creates what is essentially the equivalent of a post mortem right of publicity.

Ultimately, EMMLLC fails to adequately allege X One X used or otherwise infringed its marks.

EMMLLC's opposition alleges that it "clearly alleged in the FAC that the Counter-Defendants advertised, promoted, and marketed merchandise bearing images of Marilyn Monroe and the MARILYN mark and that such conduct is likely to cause confusion. (Dkt. 133, ¶¶ 38, 45.) EMMLLC alleged that AVELA advertised, promoted, and marketed merchandise at the 2011 Las Vegas Licensing Expo displaying the Marilyn Monroe Intellectual Property, and that such actions have caused confusion, mistake or deception in the trade "with consumers being led to believe that the Infringing Merchandise is authentic and licensed Marilyn Monroe merchandise, when in fact it is not." *Id.* These allegations are insufficient; Paragraph 45 of the FAC (Dkt. 133, ¶ 45) is nothing more than a bare legal assertion. Moreover, EMMLLC misleadingly uses the phrase "authentic and licensed Marilyn Monroe merchandise." It is well established that Marilyn Monroe, the deceased actress, cannot have "authentic" merchandise. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 1000 (9th Cir. Cal. 2012). EMMLLC fails to specify who is responsible for any authenticating and licensing or what constitutes "authentic and licensed" Marilyn Monroe merchandise".[6]

EMMLLC's infringement claims are not plausible. EMMLLC does not allege the "Marilyn Monroe" marks were used anywhere on the depicted tradeshow booth. The word "Marilyn" is shown once on the depicted tradeshow booth under a photograph of the deceased actress Marilyn Monroe in a clearly descriptive manner. Moreover, EMMLLC's trademark rights in "Marilyn" are limited to one class of good, alcoholic beverages (except beer). There is no allegation that X One X is in any way involved in the market of alcoholic beverages.

[6] EMMLLC also fails to explain how merely registering Monroe's name as a trademark allows Marilyn Monroe the individual to somehow function as a "brand", or as a source of origin under trademark law.

EMMLLC fails to allege which image of the actress infringes which mark EMMLLC purportedly owned by EMMLLC and fails to give X One X fair notice of the claims against it. EMMLLC's cited cases do not change this analysis. *Bogart* and *Experience Hendrix* both involve trademarks related to the name of a deceased celebrity; the similarities to the instant case end there. *Bogart* involved two furniture companies that sold competing products with similar product names, however, the defendant never used any photographs of Humphrey Bogart and there were no allegations that a use of Bogart's image infringed on any trademarks in his name. *Bogart, LLC v. Ashley Furniture Indus., Inc.*, No. 3:10-CV-39 CDL, 2012 WL 3745833, at *1 (M.D. Ga. Aug. 28, 2012). Similarly, *Experience Hendrix*, does not decide any issues related to the use of a celebrity's image and whether or not an image can infringe a word mark. *Experience Hendrix, LLC. v. Elec. Hendrix, LLC.*, No. C07-0338 TSZ, 2008 WL 3243896, at *1 (W.D. Wash. Aug. 7, 2008).

**C. The Third Counterclaim Fails to State a Claim**

X One X joins in and incorporates by reference V International's argument for dismissal of the Third Counterclaim.

**D. The Fifth Counterclaim Fails to State a Claim**

The majority view is that acts of trademark infringement alone do not harm the public interest in a manner sufficient to state a claim under N.Y. Gen. Bus. Law § 349. *Nomination Di Anotonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 07 Civ. (DAB), 2009 WL 4857605 at *8 (S.D.N.Y. Dec. 14, 2009) (collecting cases). In its Opposition EMMLLC asserts trademark infringement claims are enough to also support a claim under § 349 and cites two cases, *Erickson* and *GTFM, Inc.*, supporting its position. *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105 (NRB), 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 273 (S.D.N.Y. 2002). These cases are not in line with the majority view

within this Circuit, which requires substantial injury to the public interest above and beyond trademark infringement. (Dkt. 133.)

The court in *Gucci* illustrates the nuances of the majority view. The court stated that "[c]laims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003). While EMMLLC alleges that deceptive acts were aimed at consumers, there are no allegations that the public suffered harm. (Dkt. 133.) Instead, EMMLLC alleges in conclusory fashion that "[a]s a direct and proximate result of the Counter-Defendants' deceptive business acts and practices, the Monroe Estate has sustained, and will continue to sustain, monetary damages and irreparable injury." (Dkt. 133 at ¶ 86.) The fifth counterclaim fails to allege the type of substantial injury to the public interest over and above trademark infringement necessary to sustain a claim. Thus, EMMLLC's fifth counterclaim fails to state a claim and must be dismissed.

**E. The Seventh Counterclaim Fails to State a Claim**

X One X's memorandum cited multiple cases from New York courts regarding the level of "interference" necessary to plead a claim for tortious interference. (Dkt. 194, p. 18-19.) Specifically, "[i]t is well-settled that an essential element of this tort is that the plaintiff would have consummated a contract with another person *but for* the interference of the defendant." *Sch. of Visual Arts v. Kuprewicz*, 3 Misc. 3d 278, 288 (Sup Ct, NY County 2003).

EMMLLC's opposition apparently concedes the standard and argues that it met the standard by alleging that AVELA "sent a letter" and relations were "interfered with." (Dkt. 201,

p. 18.) But nowhere in EMMLLC's reply does it even argue that EMMLLC would have consummated a contract with any third party (including Bioworld or Spencer's), but for some action of Defendants. (Dkt. 201, p. 18.) Having tacitly conceded that it did not allege a contract would have been consummated but for Defendants' actions, the seventh counterclaim should be dismissed for failure to adequately allege the "interference" element of the claim. *See Gebbia v. Toronto-Dominion Bank,* 306 A.D. 2d 37, 38, 762 N.Y.S.2d 38 (2003) (claim for intentional interference with prospective economic advantage was properly dismissed "since there was no sufficient allegation that a contract would have been entered into between plaintiff … and another firm but for defendants' interference"). Thus, EMMLLC fails to state a necessary claim and plead adequately that a contract with another entity would have been entered into but for Counter-Defendants' conduct. The Seventh Counterclaim fails to state a claim and must be dismissed.

## III. Conclusion

For all of the foregoing reasons, the Court should dismiss the FAC and each counterclaim alleged therein.

Dated: January 19, 2015

Respectfully submitted,

By: ______________________________

Michael R. Adele
Technology Litigation Center
828 S. Marjan St.
Anaheim, California 92806
Telephone: (714) 342-6987
E-mail: techlitcenter@yahoo.com

Attorney for Plaintiff/Counter-Defendant A.V.E.L.A, Inc., Counter-Defendant Leo Valencia and Counter-Defendant X One X Movie Archives, Inc.