### SEVENTEENTH AFFIRMATIVE DEFENSE
(Public Policy)

130.  EMMLLC's claims are barred as contrary to public policy.

### EIGHTEENTH AFFIRMATIVE DEFENSE
(Copyright Act)

131.  EMMLLC's claims are also inconsistent the Copyright Act and the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

### NINETEENTH AFFIRMATIVE DEFENSE
(Non-Use)

132.  EMMLLC's claims are barred because Counter-Defendant does not use EMMLLC's alleged trademarks.

### TWENTIETH AFFIRMATIVE DEFENSE
(Reservation of Affirmative Defenses Not Yet Known)

133.  Counter-Defendant has insufficient information upon which to form a belief as to whether it may have additional unstated affirmative defenses; Counter-Defendant consequently hereby reserves the right to assert additional affirmative defenses in the event discovery indicates that the same is appropriate.

## AMENDED COUNTERCLAIMS

Counter-Defendant X One X Movie Archives, Inc. ("X One X") hereby alleges its counterclaims against The Estate of Marilyn Monroe, LLC ("EMMLLC"), Authentic Brands Group, LLC ("ABG", collectively referred to herein with EMMLLC as the "ABG Parties"), James Salter ("Salter"), and Leonard Green & Partners, L.P. ("Leonard Green & Partners") (collectively, the "Counterclaim Defendants") as follows:

### PARTIES

1. X One X is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 85902. X One X is in the business of, *inter alia*, creating new artistic works in print, graphic and lithographic mediums. X One X obtains copyrights registered with the United States Copyright Office for its artistic works, and licenses these artistic works to third parties.

2. On information and belief, EMMLLC is a Delaware limited liability company with its principal place of business at 100 West 33rd Street, Suite 1007, New York, New York 10001. X One X is further informed and believes and on that basis alleges that EMMLLC is the alter ego of ABG.

3. On information and belief, ABG is a Delaware limited liability company with its principal place of business at 100 West 33rd Street, Suite 1007, New York, New York 10001.

4. On information and belief, Salter is an individual residing in New York, New York who conducts business and is subject to personal jurisdiction, in New York, New York and is the Chief Executive Officer of both ABG and EMMLLC.

5. On information and belief, Leonard Green & Partners is a limited partnership organized under the laws of Delaware with a principal place of business at 11111 Santa Monica

Boulevard, Suite 2000, Los Angeles, CA 90025 who conducts business, and is subject to personal jurisdiction, in New York, New York. Leonard Green & Partners is a private equity firm and owner of a variety of retailers and major retail chains.

## JURISDICTION AND VENUE

6. X one X's counterclaims are brought under the federal Copyright Act, 17 U.S.C. § 101 *et. seq.*, the Lanham Act and trademark laws of the United States, 15 U.S.C. §1051 *et. seq.*, and New York statutory and common law, providing this Court with subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367. In addition, this Court has subject matter jurisdiction over X One X's counter-claims arising under the Sherman Act pursuant to 15 U.S.C. § 4. Lastly, X One X, Salter, the ABG Parties, and Leonard Green & Partners are citizens of different states.

7. This Court has personal jurisdiction over the Counterclaim Defendants because each: (a) is headquartered/maintain offices in this judicial district; (b) transacts and solicits business in the State of New York within this judicial district; (c) engages in the sale of merchandise to consumers in the State of New York; and/or (d) has committed tortious acts within the State of New York which the Counterclaim Defendants knew or should have known would cause injury to X One X in the State of New York.

8. X One X's counterclaims arise out of transactions and occurrences that are the subject matter of EMMLLC's claims herein, and none of those counterclaims require the introduction into this action of any third party over whom this Court cannot exercise jurisdiction. Therefore X One X's counterclaims may be asserted pursuant to Federal Rule of Civil Procedure ("FCRP") 13 and under the Declaratory Judgment Act at 28 U.S.C. §§ 2201, 2202.

9. X One X joins the Counterclaim Defendants pursuant to FRCP 19 and Rule 20

because: (1) ABG, Leonard Green & Partners, and Salters' actions underlie the majority of the critical events in the present action; (2) this Court cannot accord complete relief among existing parties without the addition of ABG, Leonard Green & Partners, and Salter as parties; (4) X One X asserts rights arising from the same disputed intellectual property rights at issue in this action; and (5) X One X's claims concern common questions of law and fact at issue in the present action.

10. Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) because the ABG Parties, Leonard Green & Partners, and Salter: (a) are headquartered/maintain offices in or reside in and are subject to jurisdiction in this judicial district; (b) transact and solicit business in the State of New York within this judicial district; and (c) a substantial part of the events or omissions that form the basis of X One X's counterclaims against the ABG Parties, Leonard Green & Partners, and Salter occurred in this judicial district.

## ALTER EGO AND CONSPIRACY CLAIMS

11. X One X is informed and believes, and on that basis alleges, EMMLLC is dominated and controlled by ABG in such a way that EMMLLC was and is in essence an alter ego of ABG. Specifically, X One X is informed and believes that:

- At all relevant times, EMMLLC was and is a mere corporate shell over which ABG maintains ownership, domination and pervasive control and through which it conducted and conducts its business;

- The ABG Parties share the same address and office space in Manhattan;

- The ABG Parties share the same Chief Executive Officer, James Salter; President, Nick Woodhouse; General Counsel/Chief Operating Officer, Terri DiPaolo; Chief Financial Officer, Kevin Clarke; Brand Manager/Director of Brand Licensing, Katie Jones; and

22

other officers and managers;

- The ABG Parties do not have any officers or managers distinct from one another, and EMMLLC does not have any employees;
- Written communications sent on behalf of EMMLLC are printed on ABG letterhead.
- ABG represents the purported Marilyn Monroe Intellectual Property at licensing trade shows; and
- EMMLLC functions as a mere façade or instrumentality for ABG.
- ABG deceptively and falsely purports that EMMLLC is the Estate of Marilyn Monroe and/or related to the late Marilyn Monroe herself in order to position itself as the owner of the nonexistent and sham purported "exclusive right" to utilize Marilyn Monroe's name or image in commerce and subsequently secure licensing business for ABG.

12. Based upon the foregoing EMMLLC is, and at all relevant times was, the alter ego of ABG, and recognition of the separate existence of EMMLLC would not promote justice in that it may permit ABG to insulate itself from liability for injuries it caused X One X to suffer as a result of its improper conduct. Accordingly, the fiction of the ABG Parties' separate existence must be disregarded, and ABG should be liable for and required to fully comply with the terms of any and all judgments entered against EMMLLC in the same manner and to the same degree as EMMLLC.

13. On information and belief, all Counterclaim Defendants were acting in furtherance of a conspiracy or agreement to undertake the wrongful conduct as alleged herein, and/or acting as agents for each other, so that each is legally responsible for the wrongful conduct as alleged herein,

14. On information and belief, Leonard Green & Partners, a co-conspirator, is a separate entity from the other Counterclaim Defendants, does not have identical owners as EMMLLC or

23

ABG, does not make up with the other Counterclaim Defendants a group of corporations with identical owners guided by a single consciousness, and is not otherwise so intertwined with the other Counterclaim Defendants so as to prevent liability for a combination or conspiracy with the other Counterclaim Defendants.

## LEGAL BACKGROUND

15. Marilyn Monroe, the legendary American actress, singer, and model died in August 1962.

16. Marilyn Monroe did not apply for or receive any trademarks during her lifetime.

17. Monroe bequeathed her personal effects and money to various family and friends in her Last Will & Testament, and Monroe divided the rest, residue and remainder of her estate between: 1: Monroe's personal secretary ($40,000); 2. Monroe's psychiatrist Dr. Marianne Kris (twenty five percent interest); and 3. Monroe's acting coach Lee Strasberg (the remaining balance, or seventy five percent interest). Monroe did not bequeath any intellectual property rights. Neither Dr. Marianna Kris nor Lee Strasberg applied for or received any trademarks related to Marilyn Monroe during their lifetime. Dr. Marianne Kris died in 1980, and Lee Strasberg died in 1982.

18. Anna Strasberg, widow of acting coach Lee Strasberg, as administratrix Marilyn Monroe's estate, and Aaron Frosch, the executor of Monroe's estate, registered design trademarks for images of Marilyn Monroe's stylized signature for various classes in 1988 and 1995 (Reg. Nos. 1509758 and 1889730, respectively). In 1998, Anna Strasberg, as administratrix, registered the word mark "Marilyn Monroe" for various classes (Reg. No. 2180950). In 1999, Anna Strasberg, as "executor" of Monroe's estate, registered the word mark "Marilyn Monroe" for various classes (Reg. No. 2223599).

19. Marilyn Monroe's estate closed in 2001. Upon information and belief, an entity called "Marilyn Monroe LLC" was subsequently formed in 2001.

20. In 2005, Marilyn Monroe LLC registered the word mark "Marilyn Monroe" for various classes (Reg. No. 2985935).

21. In 2008, the Central District of California in Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., 568 F.Supp.2d 1152 (2008) and the Southern District of New York in Shaw Family Archives, Ltd. v. CMG Worldwide, Inc., 486 F.Wupp.2d 309 (2008) (collectively, the "Monroe Litigation") respectively determined Marilyn Monroe LLC was estopped from asserting that it held valid and enforceable post mortem rights to Marilyn Monroe's persona, identity or likeness and that no such rights existed because Monroe was domiciled in New York at the time of her death and any such rights belonging to Monroe terminated upon her death.

22. Upon information and belief, in 2010, ABG acquired Marilyn Monroe LLC and formed a subordinate entity called "MM-ABG LLC."

23. In 2011, MM-ABG LLC registered a US Class 47 (wines) and US Class 49 (Distilled alcoholic liquors) word mark "Marilyn" (Reg. No. 4040943).

24. Upon information and belief, at some point ABG decided to rename the entity MM-ABG LLC "The Estate of Marilyn Monroe LLC" which entity now purports to be the owner of the Contested Marks, and which entity uses its name to falsely and fraudulently imply that it is the estate of Marilyn Monroe – when it is not -- in order to further its illegal scheme to monopolize any and all use of Marilyn Monroe's name, image and/or likeness (both with the public at large and, separately, within the judicial system itself) and to prevent members of the public (including X One X, A.V.E.L.A, Inc. ("AVELA") and others) from: (a) using, licensing and marketing public domain images of Marilyn Monroe; and (b) using copyrighted images of

Marilyn Monroe owned by anyone other than EMMLLC.

25. In 2012, in Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 1000 (9th Cir. 2012), the Ninth Circuit confirmed the holding in the 2008 Monroe Litigation that Monroe's right of publicity did not survive her because Monroe died domiciled in the State of New York, which does not recognize postmortem rights of publicity.

26. In 2013, EMMLLC registered the word mark "Marilyn Monroe" for various classes (Reg. Nos. 4336364 and 4419275).

27. In 2014, EMMLLC registered the word mark "Marilyn Monroe" for various classes (Reg. Nos. 4487208, 4487210, and 4511420).

28. In 2015, EMMLLC registered the word mark "Marilyn Monroe" for various classes (Reg. No. 4743834, together with the trademarks identified by Reg. Nos. 1509758, 1889730, 2180950, 2223599, 2985935, 4040943, 4336364, 4419275, 4487208, 4487210, and 4511420 described in paragraphs 16, 18, 21, 24, and 25 above, the "Contested Marks"). All of the Contested Marks are currently owned by EMMLLC, located at 100 West 33rd Street, Suite 1007, New York, NY 10001 with the exception of Reg. No. 4040943, which is currently owned by "MM-ABG, LLC," located at 100 West 33rd Street, Suite 1007, New York, NY 10001.

## FACTS UNDERLYING COUNTERCLAIMS

29. The ABG Parties do not have exclusive rights to intellectual property related to Marilyn Monroe.

30. Marilyn Monroe was one of the most photographed women of the 20th century, and dozens (if not hundreds) of photographers and/or entities purport to own copyrights in Monroe's images. Additionally, many photographs of the long-deceased Monroe are within the public domain.

31.  Other entities own trademark and copyright rights in Monroe's films and characters. Other entities and individuals own federally registered trademarks in the name "Marilyn" and even in "Norma Jeane."

32.  Salter has attempted to prevent X One X's owner, Leo Valencia ("Valencia") from showing and selling X One X's artwork featuring Marilyn Monroe's image at licensing trade shows. Salter publicly confronted Valencia at a licensing trade show and told Valencia, in front of potential X One X licensees, that Valencia is a "bootlegger," that Salter "owns Marilyn Monroe," and that Salter has told major retailers not to do business with X One X or Valencia. Salter has told licensing agents and various entities that X One X and Valencia do not have any rights to sell artwork featuring Monroe's image and not to do business with X One X or Valencia. Salter has publicly and privately threatened to shut down X One X and Valencia's licensing of artwork featuring Marilyn Monroe's image.

33.  The Contested Marks are, in essence, strategic litigation tools by which ABG, under the misleading name "Estate of Marilyn Monroe, LLC," purport to exercise exclusive ownership of the right to exploit Marilyn Monroe's image, likeness and name in commerce, despite judicial precedent establishing that no such right exists. The Contested Marks form the basis for the ABG Parties' representations that it owns sweeping rights in any and all uses of Marilyn Monroe's image, likeness, name and persona.

34.  Relying on the Contested Marks, the ABG Parties threaten and intimidate other entities (including without limitation X One X, AVELA and others) in an effort to discourage and prevent their lawful use of Marilyn Monroe's image, likeness and/or name in commerce. Specifically, in an attempt to gain a monopoly over every use of Marilyn Monroe's image, likeness and/or name in commerce, the ABG Parties misuse the Contested Marks to allege that