Defendants' conspiracy to monopolize the market for Marilyn Monroe memorabilia.

71. On information and belief, Salter specifically authorized, directed and/or participated in the ABG's unlawful acts and attempt to gain a monopoly over every use of Marilyn Monroe's image, likeness and/or name in commerce.

72. On information and belief, Salter knowingly authorized, directed and/or participated in ABG's dealings with the Green Partnerships in order to preclude lawful competitors from selling Marilyn Monroe-related products in the retailers owned by the Leonard Green & Partners.

73. Any judgment tending to validate EMMLLC's claims herein would not only contradict controlling precedent, but would impermissibly grant the ABG Parties monopoly power over any use of Monroe's name or the use of any image of Marilyn Monroe on any article or in any advertising. Such a monopoly would outlast any period of copyright, would usurp the right of the public (and X One X) to make commercial use of public domain images, and would enable the ABG Parties to unlawfully restrain any use of Marilyn Monroe's image, likeness or name in commerce. The monopoly would eliminate all competitive uses regardless of whether other entities used any common law or registered trademark purportedly owned by EMMLLC, or whether the source of the product bearing Marilyn Monroe's image, likeness or name is clearly identified as originating from a third party. The monopoly would create a barrier to entry for any entities attempting to compete in the market and result in a restriction on lawful competition in the market. The monopoly would be against public policy and would restrain the market by requiring consumers to purchase all Marilyn Monroe-related products from the ABG Parties. Given Salter and the ABG Parties' exclusionary conduct and misleading and unlawful actions, a dangerous probability exists that the ABG Parties will achieve monopoly power in the market of

Marilyn Monroe-related products unless restrained.

74. The ABG Parties contend that *any* use of Monroe's image, likeness or name results in a likelihood of confusion in violation of the Lanham Act, including the instant litigation where EMMLLC contends counter-defendants' mere use of Monroe's image and/or use of the name "Marilyn" is in violation of the Lanham Act. Thus, the ABG Parties' monopoly power would prevent all other entities or individuals (including X One X) from using Monroe's image, likeness or name in commerce and foreclose all competition. Such litigation is a sham and based on the patently false allegation that EMMLLC is "the exclusive owner of those rights in and to Marilyn Monroe's identity, persona, name and likeness arising under common law and/or statute."

75. As a direct and proximate result of ABG, Leonard Green & Partners, and Salters' unlawful attempt to monopolize trade as hereinabove alleged, X One X has been and will continue to be damaged by ABG, Leonard Green & Partners, and Salter's continued attempts to monopolize the market of Marilyn Monroe-related products, in an amount to be proved at trial; ABG, Leonard Green & Partners, and Salters' misconduct is willful and malicious, and otherwise sufficiently egregious to warrant the imposition of punitive, exemplary and/or treble damages against Salter and the ABG Parties and in favor of X One X.

### FIFTH CAUSE OF ACTION
(Deceptive Business Practices – N.Y. Gen. Bus. Law § 349)
(Against All Counterclaim Defendants)

76. X One X repeats and realleges each and every allegation of paragraphs 1-75, above, as if fully set forth herein.

77. On information and belief, ABG acquired the entity "Marilyn Monroe LLC" in December 2010. A corporation called "MM-NJ" was then formed in October, 2010, and MM-NJ

was renamed "MM-ABG, LLC" on October 21, 2010. The entity "MM-ABG, LLC" dropped the reference to ABG and was renamed "The Estate of Marilyn Monroe, LLC" in April 2011.

78. On information and belief, ABG intentionally chose the name "The Estate of Marilyn Monroe, LLC" for its purported subsidiary to make consumers, licensees, and merchants believe that EMMLLC is the actual estate of the late Marilyn Monroe and/or that the ABG Parties have a relationship with the estate and/or the late Marilyn Monroe that somehow affords them a monopoly over the use of Marilyn Monroe's image, likeness and name.

79. On information and belief, the ABG Parties send baseless cease and desist letters to merchants and other legitimately-operating entities purporting to be the estate of Marilyn Monroe, in an effort to deceive those entities into either entering into license agreements with the ABG Parties or to cease selling lawfully made products; so too, the ABG Parties have, in the past, and/or continue to require their licensees to include disclaimers which further falsely imply that EMMLLC owns a Right of Publicity in Marilyn Monroe and is the only legitimate source for licensing Marilyn Monroe's image, likeness and name.

80. The ABG Parties interfere with X One X's lawful licensing of its copyright registrations and artwork featuring Marilyn Monroe by falsely claiming (publically and through sham litigation) that EMMLLC is the exclusive owner of rights to all intellectual property relating to Monroe and by falsely purporting to be the estate of Marilyn Monroe.

81. For instance, the ABG Parties continue to advertise and state on product labels and hangtags that "Rights of publicity & Persona are used with permission of The Estate of Marilyn Monroe" to make consumers, licensees, and merchants believe that EMMLLC owns such intellectual property rights when in fact they have been judicially estopped from asserting any right of publicity in Marilyn Monroe.

82. X One X is further undermined and prevented from licensing lawful images of Marilyn Monroe because of the ABG Parties' deceptive entity name "The Estate of Marilyn Monroe LLC" and the ABG-Parties' deceptive claims to ownership of a Right of Publicity in Marilyn Monroe.

83. As a direct and proximate result of the Counterclaim Defendants' deceptive business practices as hereinabove alleged, all of which were done pursuant to a conspiracy between and among Counterclaim Defendants to unlawfully monopolize market for Marilyn Monroe memorabilia and to deceive the public into believing that they are the only lawful source of products and services depicting (or alluding to) Marilyn Monroe, X One X has been damaged and continues to suffer damages, in an amount to be proved at trial. Additionally, the ABG Parties' misconduct is willful, intentional, knowing and malicious, and otherwise sufficiently egregious to warrant the imposition of treble damages and reasonable attorneys' fees and costs incurred in connection with this action against the ABG Parties and in favor of X One X.

## SIXTH CAUSE OF ACTION
### (Nevada Unfair Trade Practices Act – Nev. Rev. Stat. § 598A.060)
### (Against All Counterclaim Defendants)

84. X One X repeats and realleges each and every allegation of paragraphs 1-83, above, as if fully set forth herein.

85. The ABG Parties and Salter have engaged in exclusionary conduct in an attempt to monopolize the relevant market of Marilyn Monroe-related products in violation of Nev. Rev. Stat. § 598A.060. The ABG Parties and Salter have acted with the specific intent to achieve a monopoly in the relevant market of Marilyn Monroe-related products and gain exclusive control over all uses of Monroe's image, likeness and name in commerce. Given Salter and the ABG Parties' misleading and unlawful actions, a dangerous probability exists that the ABG Parties

will achieve monopoly power in the market of Marilyn Monroe-related products unless restrained.

86. Salter and the ABG's conduct has caused anticompetitive effects in the market of Marilyn Monroe-related products, including those described above.

87. X One X has been injured and has been threatened with additional injury or damage in its business or property due to Salter and ABG's conduct.

88. Consumers in the relevant market of Marilyn Monroe-related products have been denied the benefits of lawful competition. The ABG Parties have used unlawful and bad faith threats of sham litigation to restrict the menu of choices for consumers and expand its limited purported trademark rights far beyond their actual scope.

89. Upon information and belief, Salter and ABG had and have no legitimate competitive justifications for their practices.

90. Upon information and belief, the sole purpose of Salter and ABG's conduct (both in the market generally and through sham litigation (and threats of sham litigation) was to protect and extend its dominance in the relevant market of Marilyn Monroe-related products and gain exclusive control over all uses of Monroe's image, likeness and name in commerce. Any purported business justifications for ABG's conduct are mere pretext.

91. As a direct and proximate result of the Counterclaim Defendants' exclusionary conduct, misleading and unlawful actions, and deceptive business practices as hereinabove alleged, including without limitation all of the above-referenced actions, which were undertaken pursuant to a conspiracy between and among Counterclaim Defendants to unlawfully monopolize the market for Marilyn Monroe memorabilia and to deceive the public into believing that they are the only lawful source of products and services depicting (or alluding to) Marilyn

Monroe, X One X has been damaged and continues to suffer damages, in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition – Nevada Common Law)
### (Against All Counterclaim Defendants)

92. X One X repeats and realleges each and every allegation of paragraphs 1-91, above, as if fully set forth herein.

93. Salter and the ABG Parties have used and continue to use their purported common law and statutory trademark rights to unfairly compete with and deter fair competition by its competitors, including X One X.

94. Counterclaim Defendants have used the ABG Parties' purported trademark rights, baseless threats, and deceptive practices, including those described above, to enter into unlawful restraints on competition, and including without limitation all of the above-referenced actions, which were undertaken pursuant to a conspiracy between and among Counterclaim Defendants to unlawfully monopolize the market for Marilyn Monroe memorabilia and to deceive the public into believing that they are the only lawful source of products and services depicting (or alluding to) Marilyn Monroe.

95. As a direct and proximate result of the Counterclaim Defendants' exclusionary conduct, misleading and unlawful actions, and deceptive business practices as hereinabove alleged, X One X has been damaged and continues to suffer damages, in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, X One X prays that this Court enter judgment against all Counterclaim Defendants by issuing an Order:

1. Canceling the registrations of the Contested Marks;

2. Permanently restraining and prohibiting the Counterclaim Defendants, their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, from falsely representing to X One X's existing or prospective licensees and retailers that they are the sole and exclusive owner of intellectual property relating to Marilyn Monroe, or otherwise interfering with X One X's lawful use of Marilyn Monroe images;

3. Declaring that X One X has not infringed, is not infringing, and is not otherwise liable for any perceived violation of the ABG Parties' alleged rights in and to the name and/or likeness of the late Marilyn Monroe;

4. Declaring that the ABG Parties own no rights in Monroe's persona, likeness, image or identity under Lanham Act 1125(a).

5. Declaring that X One X has not used, and is not using, the ABG Parties' trademarks in violation of the Lanham Act;

6. Declaring that X One X has not used, and is not using, Marilyn Monroe images in violation of unfair competition law;

7. Declaring that any rights related to Marilyn Monroe claimed by the ABG Parties do not supersede X One X's valid, enforceable copyrights in and to certain images of the late Marilyn Monroe, and X One X's right to use public domain images of Marilyn Monroe;

8. Declaring that X One X has not interfered with any prospective economic advantage of the ABG Parties;

9. Awarding X One X its reasonable attorneys' fees and costs incurred in defending this action;

10. Awarding X One X actual, punitive, exemplary and/or treble damages against

Counterclaim Defendants for their attempted monopolization in violation of the Sherman Act, the Nevada Unfair Practices Act, and Nevada common law;

11. Awarding X One X interest and costs; and for

12. Such other and further relief as the Court deems just and proper.

Dated:  March 29, 2016

By: *Michael Ray Adele*

Michael R. Adele
Technology Litigation Center, APC
828 S. Marjan St.
Anaheim, California 92806
Telephone:  (714) 342-6987
E-mail:  techlitcenter@yahoo.com

*Attorney for Counter-Defendants*
*A.V.E.L.A, Inc., Leo Valencia, and*
*Counter-Defendant/Counter-Plaintiff X*
*One X Movie Archives, Inc.*

## DEMAND FOR JURY TRIAL

Counter-claimant X One X Movie Archives, Inc. hereby demands a trial by jury on all matters so triable

Dated: March 29, 2016

By: _____

Michael R. Adele
Technology Litigation Center, APC
828 S. Marjan St.
Anaheim, California 92806
Telephone: (714) 342-6987
E-mail: techlitcenter@yahoo.com

*Attorney for Counter-Defendants*
*A.V.E.L.A, Inc., Leo Valencia, and*
*Counter-Defendant/Counter-Plaintiff X*
*One X Movie Archives, Inc.*