UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.V.E.L.A., INC., <br><br> Plaintiff, <br><br> -against- <br><br> THE ESTATE OF MARILYN MONROE, LLC and DOES 1 THROUGH 10 <br><br> Defendants. | Case No: 12 Civ. 4828 (KPF)(JCF) <br><br> ECF Case |
| THE ESTATE OF MARILYN MONROE, LLC, <br><br> Defendant/Counter-Plaintiff, <br><br> -against- <br><br> A.V.E.L.A., INC., LEO VALENCIA, IPL, INC., X ONE X MOVIE ARCHIVE INC., and V. INTERNATIONAL FINE ARTS PUBLISHING, INC., <br><br> Counter-Defendants. | |
| V. INTERNATIONAL FINE ARTS PUBLISHING, INC. <br><br> Counter-Defendant/Counter-Plaintiff, <br><br> -against- <br><br> THE ESTATE OF MARILYN MONROE, LLC, AUTHENTIC BRANDS GROUP, LLC, JAMES SALTER <br><br> Counter-Defendants. | |

# V. INTERNATIONAL FINE ARTS PUBLISHING, INC.'s MEMORANDUM OF LAW IN OPPOSITION TO THE ESTATE OF MARILYN MONROE, LLC, AUTHENTIC BRANDS GROUP, LLC, AND JAMES SALTER'S MOTION TO DISMISS V. INTERNATIONAL FINE ARTS PUBLISHING, INC. AND X ONE X MOVIE ARCHIVE, INC.'S CLAIMS IN FIRST AMENDED COUNTERCLAIM

# V. INTERNATIONAL FINE ARTS PUBLISHING, INC.'s MEMORANDUM OF LAW IN OPPOSITION TO THE ESTATE OF MARILYN MONROE, LLC, AUTHENTIC BRANDS GROUP, LLC, AND JAMES SALTER'S MOTION TO DISMISS V. INTERNATIONAL FINE ARTS PUBLISHING, INC. AND X ONE X MOVIE ARCHIVE, INC.'S CLAIMS IN FIRST AMENDED COUNTERCLAIM

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................1

II.  PROCEDURAL BACKGROUND ..................................................................................2

III. V INTERNATIONAL'S AMENDED CLAIMS .............................................................3

IV.  LEGAL STANDARD ......................................................................................................3

V.   ARGUMENT ...................................................................................................................4

   A.  V International's First through Third Causes of Action and Alter Ego Claims..........4

   B.  V International's Tortious Interference with Existing Contractual Relationships Claim..............................................................................................................................4

   C.  This Court Should Grant V International Leave to Replead if Any Part of the Motion is Granted..........................................................................................................7

VI.  CONCLUSION ................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................3

*Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993) ...................................................................8

*Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167 (W.D.N.Y. 2003) .........................................5

*Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35 (2d Cir. 1990) ............................................4

*Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ........................................3

*G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233 (S.D.N.Y. 2001) ......................................4

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228 (S.D.N.Y.1999) ..........................5

*Harrison v. Enventure Capital Group, Inc.,* 666 F. Supp. 473 (W.D.N.Y. 1987) ................................8

*Hines v. City of Albany*, 542 F. Supp. 2d 218 (N.D.N.Y. 2008) ..........................................................8

*In re NYSE Specialists Secs. Litig.*, 503 F.3d 89 (2d Cir. 2007) ..........................................................3

*LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492 (S.D.N.Y. 2002) .....................................................5

*Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F. Supp. 933 (S.D.N.Y.1983) ......................................5

*Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008) .....................................6

*Nagler v. Admiral Corp.*, 248 F.2d 319 (2d Cir. 1957*)* ......................................................................8

*Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453 (1st Dep't 2011) .............6

*Reich v. Glasser*, No. 95 CIV. 8288 (JFK), 1996 WL 243243 (S.D.N.Y. May 10, 1996) ..............4

*State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir. 1981) .................................................8

*Stern v. Gen. Elec. Co.*, 924 F.2d 472 (2d Cir. 1991*)* .........................................................................8

Counter-Plaintiff V. International Fine Arts Publishing, Inc. ("V International") respectfully submits this memorandum of law in opposition to Counter-Defendants The Estate of Marilyn Monroe, LLC ("EMMLLC"), Authentic Brands Group, LLC ("ABG"), and James Salter ("Salter")'s (collectively, the "ABG Parties") Motion to Dismiss V International and X One X Movie Archive, Inc. ("X One X")'s First Amended Counterclaims (the "Motion"). (Dkt. 291.)

## I.     PRELIMINARY STATEMENT

V International's numerous added factual assertions in the Amended Counterclaims leave no doubt that V. International has alleged facts sufficient to support the causes of action alleged in the First Amended Counterclaim and sufficient to defeat the Motion to Dismiss. For the reasons herein stated, the ABG Defendants strained and improper interpretation of facts and law are misplaced.

EMMLLC dragged V International into the present action by alleging V International was an alter ego of AVELA and/or AVELA's owner, Leo Valencia, despite the fact that there has never been any overlap in ownership between V International and its client AVELA, nor has Leo Valencia ever owned any part of V International. Thus far, EMMLLC has failed to plead any substantive facts from which this Court could find liability on behalf of V International. Nonetheless, the ABG Parties seek to silence V International's well-pled factual allegations regarding the ABG Parties' deceptive and tortious conduct and EMMLLC and ABG's generic and functional trademarks.

V International adequately alleges facts to support all causes of action alleged in its First Amended Counterclaims for the reasons set forth below, and this Court should deny the ABG Parties' Motion in its entirety.

1

## II.     PROCEDURAL BACKGROUND

On February 4, 2014, EMMLLC moved to amend its Counterclaims and name V International and other entities in the instant action. (Dkt. 72.) EMMLLC premised the addition of V International to this litigation on the sole allegation that V International was an alter ego of AVELA and/or Valencia. (Dkt. 73 at 3-4.) On September 18, 2015, however, this Court rejected EMMLLC's alter-ego contentions because EMMLLC was unable to allege to a critical element necessary to sustain a claim for alter-ego liability under California law: ownership interest. (Dkt. 215 at 41-42.) On October 9, 2015, after this Court rejected EMMLLC's alter ego claims, EMMLLC stated it would be maintaining its counterclaims against V International. (Dkt. 217.)

On October 30, 2015, V International filed its Answer and Counterclaims against EMMLLC, ABG, and Salter. V International brought alter ego allegations against ABG and EMMLLC and further alleged the following causes of action: cancellation of EMMLLC's trademark registrations on the grounds of lack of distinctiveness, functionality, and fraud; attempted monopolization of trade or commerce in violation of the Sherman Act; deceptive business practices; tortious interference with existing contractual relationships; and intentional interference with prospective economic advantage. (Dkt. 219.)

On March 13, 2017, the Court denied the ABG Parties' Motion to Dismiss V International's claims for cancellation of EMMLLC's trademarks on the grounds that the marks are generic and functional. (Dkt. 279.) The Court also denied the ABG Parties' Motion to Dismiss as to V International's claim for intentional interference with prospective economic advantage. *Id.*

On April 3, 2017, V International filed its First Amended Counterclaims. (Dkt. 282.) V International listened to the reasoning of this court and did not reallege its claims for cancellation

2

of EMMLLC's trademark registrations on the grounds of fraud or attempted monopolization of trade or commerce in violation of the Sherman Act.

### III. V INTERNATIONAL'S AMENDED CLAIMS

V International's First Amended Counterclaims against the ABG Parties bring the following causes of action: cancellation of ABG and EMMLLC's trademark registrations on the grounds of lack of distinctiveness, and functionality; deceptive business practices; tortious interference with existing contractual relationships; and intentional interference with prospective economic advantage. (Dkt. 282.) The Amended Counterclaims also allege "The Estate of Marilyn Monroe, LLC" is merely an alter ego of ABG. (*Id*.)

### IV. LEGAL STANDARD

This Court generally disfavors motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010). On a 12(b)(6) motion, the Court much accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *See*, *e.g.*, *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Thus, no matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To defeat a Rule 12(b)(6) motion, the complaint must only allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Id.* at 570).

In deciding a motion to dismiss for failure to state a claim, "the Court's function is merely to assess the legal sufficiency of the complaint rather than to weigh the evidence that might be presented at a trial." *Reich v. Glasser*, No. 95 CIV. 8288 (JFK), 1996 WL 243243, at *1

(S.D.N.Y. May 10, 1996) (citing *Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir. 1990)).

V. **ARGUMENT**

   A. **V International's First through Third Causes of Action and Alter Ego Claims**

With respect to V International's First through Third Causes of Action and V International's alter ego claims regarding EMMLLC and ABG, V International joins in, and incorporates by reference, the arguments raised in X One X's Memorandum of Law in Opposition to EMMLLC, ABG, and Salter's Motion to Dismiss V International and X One X's Amended Counterclaims claims filed (more or less) concurrently herewith (the "X One X Opposition").

   B. **V International's Tortious Interference with Existing Contractual Relationships Claim**

V International has adequately pled its Amended Counterclaim alleging tortious interference with existing contractual relationships against the ABG Parties because the Amended Counterclaims allege the ABG Parties' conduct caused actual breaches of contract.

To state a claim for tortious interference with existing contractual relationships under New York law, a plaintiff must allege: "(1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages." *See, e.g., G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 252 (S.D.N.Y. 2001) (internal citation omitted).

In its Order on Movants' Motion to Dismiss V International's original counterclaims, this Court stated that V International's tortious interference claim failed "for a simple reason: V

4

International does not allege that a contract was breached as a result of the Estate Movants' misconduct." (Dkt. 279 at 38.) The Amended Counterclaim alleges that a result of the ABG Parties' actions, two entities ceased licensing artwork through V International and that these entities breached their contracts and business relationships with V International. (Dkt. 282 ¶¶ 80-81.) This amendment sufficiently cures any deficiencies this Court previously found in the interference claim.

The ABG Parties misstate and misrepresent relevant case law. V International is not required to explicitly plead the specific provisions of the contracts that were breached, and the ABG Parties attempt to impose on V International obligations greater than those required at the pleading stage. In connection with a tortious interference claim, a plaintiff must allege either a valid, existing contract *or* any terms of contract with a third party. *See, e.g.*, *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F. Supp. 933, 945 (S.D.N.Y.1983) (emphasis added); *see also Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 176 (W.D.N.Y. 2003) (finding a party adequately pled its tortious interference claim and sufficiently gave notice of the claim even thought "no contractual terms" were specified because the allegations set forth the existence of contracts and intentional conduct inducing the breach of those contracts.).

Movants' case law is inapposite and does not mandate that V International must allege specific provisions of the contracts at issue. *See LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002) (analyzing a tortious interference claim on a motion for judgment as a matter of law and not at the motion to dismiss stage); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 266-67, 267 n.21 (S.D.N.Y.1999) (finding the plaintiff failed to allege the defendant's intent to interfere where the plaintiff alleged a specific contractual provision itself caused the tortious interference; not finding that a plaintiff generally must allege specific

5

contractual provisions); *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454 (1st Dep't 2011) (citing to a case considering a breach of contract claim, not a tortious interference claim).

Additionally, even though case law does not mandate that V International do so, V International does in fact allege how Freeze and Silver Buffalo breached the relevant contracts; V International alleges that these third parties ceased licensing artwork after the ABG Parties' disruptive conduct and threats made the contracts untenable to them. (Dkt. 282 ¶ 80.)

Furthermore, the ABG Parties cite *Medtech Products Inc. v. Ranir, LLC* in an attempt to support their claim that V International insufficiently alleges the ABG Parties "knew or should have known" about the contracts at issue. (Motion at 16.) However, *Medtech* is distinguishable from the facts at hand because in that case this Court chose not to accept the plaintiff's allegation that the defendant "knew or should have known" of the contracts at issue because that statement contradicted other allegations in the complaint and other fact-specific context in the case. *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008). Here, V International's allegation that the ABG Parties knew about V International's contracts is consistent with V International's other statements in the Amended Counterclaims. Particularly, V International also alleges: (1) the ABG Parties "diverted Freeze and Silver Buffalo away from licensing artwork from V International and subsequently established contracts with Freeze and Silver Buffalo" (Dkt. 282 ¶ 79.); and (2) that the ABG Parties "have falsely advised V International's licensees that the ABG Parties own exclusive rights to Marilyn Monroe's image, resulting in lost licensing opportunities for V International. ABG and Salter have unlawfully coerced licensees and retailers not to license from V International's clients or do business with other competing entities." (*Id.* ¶ 43.) V International sufficiently alleges the ABG Parties knew

of its contracts with Freeze and Silver Buffalo. V International also alleges facts indicating the ABG Parties engaged in intentional conduct in order to induce the breach of V International's contracts with Freeze and Silver Buffalo.

The Amended Counterclaims allege facts establishing each and every other necessary element required to state a claim for tortious interference with existing contractual relationships. V International alleges the existence of valid contracts involving "Freeze," a division of Central Mills, Inc. and Silver Buffalo, LLC. (Dkt. 282 ¶ 76.)

Additionally, the Amended Counterclaims allege the ABG Parties' knowledge of the contracts: "Counterclaim Defendants knew or should have known of the existence of such contract and the business relationship between V International and Freeze and between V International and Silver Buffalo." (*Id*. ¶ 77.) V International has further alleged that the ABG Parties intentionally and, with malice toward V International, disrupted the business relationships between V International and Freeze and Silver Buffalo without justification. (*Id*. ¶¶ 79, 82.)

Finally, V International alleged damages resulting from the ABG Parties' tortious interference and the actual breach of the Freeze and Silver Buffalo contracts: "As a direct and proximate result of Salter and the ABG Parties' intentional contractual interference, V International has sustained, and will continue to sustain, monetary damages and irreparable injury." (*Id*. ¶ 83.)

V International adequately alleges facts to sustain its First Amended Counterclaim for tortious interference with existing contractual relationships against the ABG Parties.

C.     **This Court Should Grant V International Leave to Replead if Any Part of the Motion is Granted**

For the foregoing reasons, and for the each of the reasons stated in X One X's Opposition, V International asserts that is has adequately pled each and every cause of action in

7

its Amended Counterclaims. Even if this Court could find that V International did not adequately plead one or all of its counterclaims, this Court should grant V International leave to amend as each and every argument raised by the ABG Parties can be remedied with the addition of factual insertions. It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting *Nagler v. Admiral Corp.*, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991).

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citing *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also Hines v. City of Albany*, 542 F. Supp. 2d 218, 224 (N.D.N.Y. 2008) ("It is axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile.") (internal citation omitted). No such showing of prejudice or bad faith has been made by the ABG Parties.

**VI.   CONCLUSION**

For the arguments stated above, and the arguments raised in support of the X One X Opposition and incorporated herein by reference, V International respectfully requests that this Court deny the ABG Parties' Motion in its entirety. In the alternative, in the event this Court grants the ABG Parties' Motion to Dismiss as to any amended counterclaim, V International respectfully requests that the Court grant V International leave to replead.

8

Dated: June 29, 2017                     Respectfully Submitted,

By: //Gregory J. Goodheart//
_____
Gregory J. Goodheart (pro hac vice)
GOODHEART LAW OFFICES
22736 Vanowen Street, Suite 303
West Hills, CA 91307
Telephone: (818) 992-4463
Facsimile: (818) 992-7629
Email: ggoodheartlaw@gmail.com

*Attorney for V International Fine Arts Publishing, Inc.*