**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.V.E.L.A., INC., | Case No: 12 Civ. 4828 (KPF)(JCF) |
| Plaintiff, | ECF Case |
| -against- | |
| THE ESTATE OF MARILYN MONROE, LLC and DOES 1 THROUGH 10 | |
| Defendants. | |
| THE ESTATE OF MARILYN MONROE, LLC, | |
| Defendant/Counter-Plaintiff, | |
| -against- | |
| A.V.E.L.A., INC., LEO VALENCIA, IPL, INC., X ONE X MOVIE ARCHIVE INC., and V. INTERNATIONAL FINE ARTS PUBLISHING, INC., | |
| Counter-Defendants. | |
| X ONE X MOVIE ARCHIVE INC. | |
| Counter-Defendant/Counter-Plaintiff, | |
| -against- | |
| THE ESTATE OF MARILYN MONROE, LLC, AUTHENTIC BRANDS GROUP, LLC, JAMES SALTER | |
| Counter-Defendants. | |

V INTERNATIONAL FINE ARTS
PUBLISHING, INC.

Counter-Defendant/Counter-Plaintiff,

-against-

THE ESTATE OF MARILYN
MONROE, LLC, AUTHENTIC BRANDS
GROUP, LLC, JAMES SALTER

Counter-Defendants.

**X ONE X MOVIE ARCHIVE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE ESTATE OF MARILYN MONROE, LLC, AUTHENTIC BRANDS GROUP, LLC, AND JAMES SALTER'S MOTION TO DISMISS V. INTERNATIONAL FINE ARTS PUBLISHING, INC. AND X ONE X MOVIE ARCHIVE, INC.'S FIRST AMENDED COUNTERCLAIMS**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. PROCEDURAL BACKGROUND.......................................................................................... 2

III. X ONE X'S AMENDED CLAIMS ...................................................................................... 4

IV. LEGAL STANDARD............................................................................................................ 4

V. ARGUMENT ............................................................................................................................ 5

   A.   The Alter-Ego Allegations.................................................................................................. 5

   B.   The Trademark Cancellation Claims Against ABG ........................................................... 9

   C.   N.Y. Gen. Bus. Law § 349 Claim ..................................................................................... 11

   D.   At a Minimum, This Court Should Grant X One X Leave to Replead ....................... 14

VI. CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
  2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ........................................................ 12
*Anwar v. Fairfield Greenwich, Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...................................................................................... 4
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 4
*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ....................................................................................................... 4
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4
*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ................................................................................................... 15
*Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*,
  2009 Del. Ch. LEXIS 136 (Del. Ch. July 30, 2009) ................................................................. 6
*Fed. Express Corp. v. JetEx Air Express Inc.*,
  No. 16 Civ. 01553, 2017 WL 816479 (E.D.N.Y. Jan. 26, 2017) .............................................. 7
*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
  No. 04 Civ. 08510, 2011 WL 4005321 (S.D.N.Y. Sept. 1, 2011) .......................................... 10
*Freeman v. Complex Computing Co.*,
  119 F.3d 1044 (2d Cir. 1997) ................................................................................................... 7
*Global Network Communications, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) ..................................................................................................... 4
*Hannah v. Metro-North Commuter C.R. Co.*,
  753 F. Supp. 1169 (S.D.N.Y. 1990) ....................................................................................... 15
*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  810 F. Supp. 2d 1013 (C.D. Cal. 2011) .................................................................................. 10
*In re Houbigant Inc.*,
  914 F.Supp. 964 (S.D.N.Y.1995) ........................................................................................... 11
*In re Initial Pub. Offering Sec. Litig.*,
  383 F. Supp. 2d 566 (S.D.N.Y. 2005) ...................................................................................... 4
*Informix Software, Inc. v. Oracle Corp.*,
  927 F. Supp. 1283 (N.D. Cal. 1996) ....................................................................................... 10
*Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*,
  280 F. Supp. 2d 184 (S.D.N.Y. 2003) .................................................................................... 15
*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
  887 F. Supp. 2d 519 (S.D.N.Y. 2012) .................................................................................... 13
*Perkins School for the Blind v. Maxi-Aids, Inc.*,
  274 F. Supp. 2d 319 (E.D.N.Y. 2003) .................................................................................... 13
*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) .................................................................................... 12
*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,

No. 14 Civ. 6294 (LTS), 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) ................................. 13

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) ................................................................................................... 11

*De Sole v. Knoedler Gallery, LLC*,
   139 F. Supp. 3d 618 (S.D.N.Y. 2015) ................................................................................ 5, 7

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
   No. 06 Civ. 1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ................................ 13

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*,
   842 F. Supp. 2d 502 (S.D.N.Y. 2012) .................................................................................... 5

*Stern v. Gen. Elec. Co.*,
   924 F.2d 472 (2d Cir. 1991) ................................................................................................. 14

*Winner Acceptance Corp. v. Return on Capital Corp.*,
   2008 Del. Ch. LEXIS 196 (Del. Ch. Dec. 23, 2008) .............................................................. 6

**Rules**

Federal Rule of Civil Procedure 15(a) ......................................................................................... 15

**Treatises**

J. McCarthy, Trademarks and Unfair Competition § 18.14 (2d ed. 1984) ..................................... 9

Counter-Plaintiff X One X Movie Archive, Inc. ("X One X") respectfully submits this memorandum of law in opposition to Counter-Defendants The Estate of Marilyn Monroe, LLC ("EMMLLC"), Authentic Brands Group, LLC ("ABG"), and James Salter ("Salter")'s (collectively, the "ABG Parties") Motion to Dismiss (the "Motion") V International and X One X Movie Archive, Inc.'s First Amended Counterclaims (the "Counterclaims") (Dkt. Nos. 282, 284.) (Dkt. 291.)

## I.    PRELIMINARY STATEMENT

The Amended Counterclaims sufficiently allege that EMMLLC is an alter ego of ABG and that the ABG Parties are liable for deceptive business practices. Furthermore, X One X has sufficiently alleged its trademark cancellation claims against ABG.

Official public records plainly identify ABG as the owner of three trademarks at issue in the instant action. This Court has already denied the ABG Parties' attempts to dismiss X One X and V International's trademark cancellation claims for lack of distinctiveness and functionality. (*See* Dkt. 279 at 24, 26.) Accordingly, these claims are valid as alleged against ABG, the owner of marks subject to X One X's cancellation claims.

The Amended Counterclaims add significant facts to X One X's alter ego claims, including allegations that ABG and EMMLLC share the same corporate address and EMMLLC does not have any office space of its own, that EMMLLC and ABG share legal and financial departments, and that there is significant financial overlap where ABG pays EMMLLC's overhead and expenses and EMMLLC's licensees remit royalty statements and payments to ABG.

The Amended Counterclaims also add factual allegations to X One X's Section 349 claims for deceptive business practices, including allegations that the ABG Parties have created

1

an unlawful scheme to deceive consumers as to the source and origin of their "official" Monroe products, and that the ABG Parties have caused substantial harm to the public as a result of their false claims to the public online, on products, on social media, and through sham cease and desist letters that EMMLLC is actually Monroe's estate and owns fictional rights in Monroe.

The ABG Parties seek to have this Court blindly accept that EMMLLC actually owns the rights they claim to own. The Amended Counterclaims assert that ABG Parties' purported "exclusive rights" in Marilyn Monroe's identity, persona, image, name and likeness do not actually exist. The Amended Counterclaims further assert that ABG has unlawfully purported to own such fictional rights as an entity called "The Estate of Marilyn Monroe, LLC" to the detriment of the public. This Court must accept such facts as true on a motion to dismiss.

X One X has adequately pled each and every one of its amended claims and respectfully requests that this Court deny the Motion in its entirety for the reasons set forth below.

## II.     PROCEDURAL BACKGROUND

On June 20, 2012, AVELA filed its initial Complaint against EMMLLC alleging that EMMLLC's purported rights in Monroe's persona and purported exclusive right to the use of Monroe's name and image in commerce did not exist. (Dkt. 1.) AVELA's Complaint seeks declaratory relief determining that, *inter alia*, AVELA has not infringed EMMLLC's purported

rights to Monroe's persona and that any purported EMMLLC-owned "persona" rights do not supersede AVELA's valid copyrights in images of Monroe. (*Id.*)

On August 31, 2012, EMMLLC filed its Answer and Counterclaims against AVELA and Valencia, alleging false association, unfair competition, and trademark infringement. (Dkt. 5.)

On February 4, 2014, EMMLLC moved to amend its Counterclaims and add X One X and V International Fine Arts Publishing, Inc. ("V International") to the ongoing litigation, alleging that X One X and V International were alter egos of Valencia. (Dkts. 72 and 73.)

On October 30, 2015, X One X filed its Answer and Counterclaims, naming Authentic Brands Group ("ABG"), ABG and EMMLLC's CEO James Salter ("Salter"), and Leonard Green & Partners, L.P. ("Green") as parties. (Dkt. 223.) X One X brought the following causes of action against the ABG Parties and Green: (1) claims for cancellation of EMMLLC's registered trademarks on the grounds of lack of distinctiveness, functionality, and fraud; (2) claims for attempted monopolization in violation of Section 2 of the Sherman Act; (3) claims for deceptive business practices in violation of New York General Business Law Section 349; (4) claims under the Nevada Unfair Trade Practices Act; (5) claims under Nevada common law; and (6) and claims alleging EMMLLC is a mere alter ego of ABG. (*Id.*)

On March 13, 2017, the Court entered its Order: (1) granting in part and denying in part the ABG Parties' first Motion to Dismiss X One X's Counterclaims; (2) allowing X One X to move forward with its claims for cancellation of EMMLLC's trademarks on grounds of lack of distinctiveness and functionality; and (3) granting X One X leave to replead its claims. (Dkt. 279.)

On April 4, 2017, X One X filed its First Amended Counterclaims against ABG, EMMLLC, and Salter. (Dkt. 284.) X One X did not replead any claim against Leonard Green &

3

Partners, L.P. X One X also did not replead its claims for: (1) cancellation of EMMLLC's trademarks on grounds of fraud; (2) Attempted Monopolization of Trade under Section 2 of the Sherman Act; (3) violation of the Nevada Unfair Trade Practices Act; or (4) unfair competition under Nevada common law.

## III. X ONE X'S AMENDED CLAIMS

X One X's Amended Counterclaims: (1) seek to cancel ABG and EMMLLC's registered trademarks in Monroe's name and signature on the grounds of lack of distinctiveness and functionality; (2) allege deceptive business practices against the ABG Parties; and (3) allege EMMLLC is a mere alter ego of ABG. (Dkt. 284.)

## IV. LEGAL STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept all allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *See*, *e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "The task of the court in ruling on a motion to dismiss is to 'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 403 (S.D.N.Y. 2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005)). The purpose of a motion to dismiss is "to test in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

regarding its substantive merits." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

V.  **ARGUMENT**

    A.  **The Alter-Ego Allegations**

The Amended Counterclaims sufficiently plead additional facts to allege EMMLLC is an alter-ego of ABG under Delaware law and indicate "EMMLLC" is merely a fraud perpetrated by ABG and/or a mere instrumentality of ABG.

In evaluating whether or not two entities operate as a single entity under Delaware law, this Court has considered factors such as shared corporate addresses and telephone systems, shared office space, and overlap in employees, officers, and departments. *See De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 665-67 (S.D.N.Y. 2015). In *De Sole*, this Court found that there was substantial evidence of mingling of operations, and this evidence weighed in favor of finding the two entitles operated as a single entity, where two entities used the same corporate address and telephone system, one entity did not have any separately designated office space, the entities had significant overlap in purported employees and personnel and shared a CFO and Vice President, the entities shared an accounting department, and the entities regularly transferred money without observing formalities. *Id*. at 666-67.

In *Soroof,* this Court granted summary judgment and allowed a plaintiff to pierce the corporate veil based its consideration of the following factors under Delaware law:  (1) the "pierced" LLC had no cash assets at the time of dissolution; (2) the "pierced" LLC had no employees and was solely staffed by employees of the members; (3) the "pierced" LLC did not lease its own office space and used the premises of its members; and (4) the "pierced" LLC had

5

no sign on the premises to indicate it was there. *Soroof Trading Dev. Co. v. GE Fuel Cell Sys. LLC*, 842 F. Supp. 2d 502, 552 (S.D.N.Y. 2012).

Alter ego theories of liability "are generally fact intensive and not readily subject to resolution a motion for judgment on the pleadings," or the analogous motion to dismiss for failure to state a claim. *Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, 2009 Del. Ch. LEXIS 136, *11 n. 23 (Del. Ch. July 30, 2009). On motions to dismiss that relate to alter ego theory, "the key inquiry is whether the Complaint fairly put Defendants on notice that [the complainant] seeks to pierce the corporate veil," *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 Del. Ch. LEXIS 196, *15 (Del. Ch. Dec. 23, 2008) (finding alter ego sufficiently alleged).

The Amended Counterclaims allege facts from which the Court can readily infer the elements of an alter ego claim under Delaware law, including that ABG and EMMLLC operate as a single economic entity because their officers and directors do not function properly, corporate formalities are not observed, and there is commingling of corporate funds and finances. X One X also pleads additional facts that allow this Court to infer that "EMMLLC" is merely a fraud perpetrated by ABG and/or a mere instrumentality or alter ego of ABG and that an overall element of injustice or unfairness is present.

The Amended Counterclaims allege each of the following additional facts regarding the relationship between ABG and EMMLLC:

- "ABG and EMMLLC share the same corporate address and EMMLLC does not have any office space of its own";
- ABG and EMMLLC share the same telephone system and number;
- "ABG is EMMLLC's sole manager";
- "[A]ny individuals purportedly working for EMMLLC are in fact employees of ABG";
- EMMLLC and ABG share a legal department and a financial department;
- "EMMLLC's contracts direct licensees to submit financial statements to ABG";
- "EMMLLC's contracts direct licensees to submit mail care of ABG";
- ABG actually owns certain trademarks purportedly owned by EMMLLC, and its record address for communication is actually ABG's– not EMMLLC's;
- EMMLLC and ABG each purport to own and operate the same website;
- "EMMLLC's licensees have remitted royalties and/or royalty statements to ABG"; and
- "ABG pays EMMLLC's overhead and expenses, including, but not limited to, rent, salary and benefits expenses, in-house legal costs and expenses, professional fees and expenses, insurance premiums, and Federal and state taxes."

(See Dkt. 282 ¶ 10.) X One X's additional factual allegations create a factually intensive inquiry regarding piercing the corporate veil. X One X adequately alleges that ABG and EMMLLC function as a single economic entity where X One X alleges: (1) ABG and EMMLC use the same corporate address and telephone system; (2) EMMLLC does not have any separately designated office space; (3) ABG and EMMLLC have complete overlap in purported employees, officers, and managers; (4) ABG and EMMLLC share legal and financial departments; (5) EMMLLC's licensees remit payments to ABG; and (6) ABG and EMMLLC regularly transfer and overlap finances. *See De Sole*, 139 F. Supp. 3d at 665.

The ABG Parties cite *Fed. Express Corp. v. JetEx Air Express Inc.*, No. 16 Civ. 01553, 2017 WL 816479, at *6 (E.D.N.Y. Jan. 26, 2017), *report and recommendation adopted*, No. 16 Civ. 01553, 2017 WL 780801 (E.D.N.Y. Feb. 28, 2017), for the proposition that dismissal is

7

proper where only one of the factors for veil piercing is present. In *Fed. Express Corp.,* the Court noted that:

> The Second Circuit has instructed courts to consider many factors in the veil-piercing inquiry, including:
>
> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Id.* (considering an alter ego claim under New York law) (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)). Here, however, X One X alleges, at a minimum, several factors for veil piercing. X One X has alleged items (3) intermingling of funds *e.g.*, ABG pays EMMLLC's overhead and expenses; (4): overlap of personnel, officers, and directors; (5): common office space, address and telephone numbers; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8): whether the corporations are treated as independent profit centers, *e.g.*, EMMLLC's licensees submit financial statements to ABG and remit royalties to ABG; (9): payment or guarantee of the corporations debts by the dominating entity, *i.e.*, shared lawyers and directing "EMMLLC's" mail to ABG's counsel; and (10): intermingling of property between the entities, *e.g.*, EMMLLC and ABG each own and operate the same website. (*See*, *e.g.*, Dkt. 282 ¶ 10.) As such, unlike in *Fed. Express Corp.,* the Court should not dismiss X One X's alter ego allegations.

The Amended Counterclaims also add significant additional facts alleging that there is an overall element of injustice or unfairness, that fraud is present, and that EMMLLC functions as a mere façade for ABG. Counter-Claimants allege injustice far beyond the underlying claims in

this action and harm to X One X. Counter-Claimants allege injustice to the public, consumers, and countless other entities where "recognition of the separate existence of EMMLLC would not promote justice in that it may permit ABG to continue to deceive the public and consumers by perpetuating ABG's false claims that EMMLLC is actually Monroe's estate" and "would also permit ABG to continue to send countless individuals and entities cease and desist letters and institute sham litigation" purporting to own nonexistent and sham rights in Monroe's persona. *(See* Dkt. 284 ¶ 11.)

For the reasons discussed above, X One X has adequately alleged its alter ego claims.

### B. The Trademark Cancellation Claims Against ABG

The entity which controls the nature and quality of the goods sold under a mark is the owner of that mark. J. McCarthy, Trademarks and Unfair Competition § 18.14, p. 830 (2d ed. 1984). X One X has also alleged sufficient facts indicating ABG controls the nature and quality of the "official" Monroe products at issue sold under the Contested Marks. (*See* Dkt. 284 ¶¶ 36, 38 ("The Contested Marks are, in essence, strategic litigation tools by which ABG, under the misleading name "Estate of Marilyn Monroe, LLC," purport to exercise exclusive ownership of the right to exploit Marilyn Monroe's image, likeness and name in commerce, despite judicial precedent establishing that no such right exists"; "ABG claims to be the exclusive licensor of products bearing Marilyn Monroe's image, likeness and name and seeks to prevent any use of Marilyn Monroe's image, likeness and name on all products absent its consent.").)

Additionally, X One X alleges that ABG owns trademark registration Nos. 4527088, 4743834, and 4336364. (Dkt. 284. ¶¶ 26, 28, 30.) The trademark registrations identify ABG in the ownership section of the marks, and direct all correspondence related to the trademarks to Authentic Brands Group. (See Dkt. Nos. 292-1, 292-2, 292-3.) If ABG were not the owner of

9

the marks and did not control the use of the trademarks, there would be no reason for the registrations to identify ABG.  Alternatively, if EMMLLC owns the marks, one would think that correspondence regarding those marks would be directed to EMMLLC – not ABG. At the very least, these allegations show further co-mingling that support X One X's alter ego claims.

The ABG Parties cite *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 04 Civ. 08510, 2011 WL 4005321, at *8 (S.D.N.Y. Sept. 1, 2011), *aff'd sub nom. Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62 (2d Cir. 2013) for the proposition that trademark cancellation claims were dismissed where defendants did not own the marks at issue. But in *Fed. Treasury Enter.* the Court dismissed the claims because plaintiffs, who did not own the marks, lacked standing to sue for remedies premised on the plaintiffs' ownership of the marks. Thus, *Fed. Treasury Enter.* is inapposite.

Moreover, the ABG Parties cite *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1034 (C.D. Cal. 2011), aff'd, 738 F.3d 1085 (9th Cir. 2013) for the proposition that "a complaint for trademark cancellation in federal court must proceed against the party who currently owns the trademark," and further cite *Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1286 (N.D. Cal. 1996) for the proposition that "the owner of the trademark is the only proper defendant [in a trademark cancellation claim]." These cases are inapplicable to the instant facts where X One X brings its trademark cancellation claims against the party who allegedly owns the marks: ABG. Additionally, *Hokto* and *Informix* do not say that a party cannot sue the owner of the trademark *and* its alter ego.  Thus, inasmuch as the ABG Parties contend that EMMLLC is the owner of the marks, and not ABG, there is still no impediment to suing EMMLLC and ABG for cancellation of the marks.  Further, as shown above, there is a factual question as to whether ABG or EMMLLC owns the marks, so the cancellation action should be

allowed to proceed against both of them.

In short, the trademark cancellation claims should not be dismissed as against ABG, the alleged owner (or at the very least alter ego of the owner) of the marks.

### C. N.Y. Gen. Bus. Law § 349 Claim

X One X's amended factual allegations sufficiently state a claim against the ABG Parties under New York General Business Law § 349.

Since the gravamen of a Section 349 claim must allege consumer injury or harm to the public interest, "the critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). Where a defendant is part of an unlawful scheme to deceive consumers as to the source and origin of products, with the intent to cause confusion and mistake, a defendant's false advertising can be found to involve a public harm. *In re Houbigant Inc.,* 914 F.Supp. 964, 983–84 (S.D.N.Y.1995) ("While it is true that the courts have found that the primary focus of these laws is consumer protection [Citation], it is also true that the courts have held that competitors have standing to challenge deceptive practices under Sections 349 and 350 so long as 'some harm to the public at large is at issue'").

Under § 349, "whether a particular act or practice is deceptive is usually a question of fact." *See*, *e.g.*, *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *see also Ackerman v. Coca-Cola Co*., 2010 U.S. Dist. LEXIS 73156, at *68 (E.D.N.Y. July 21, 2010) ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which

11

requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss") (internal quotations omitted).

The factual allegations in X One X's Amended Counterclaims extend far beyond the claims between the parties in the instant action. X One X alleges the ABG Parties deceptively seek to control every use of Monroe's name and image, the wide-sweeping consequences of this conduct reach countless other members of the public. X One X also alleges the ABG Parties falsely claim to be Monroe's estate, falsely claim to exclusively own all intellectual property rights in Monroe, and falsely claim to own a Right of Publicity in Monroe. (Dkt. 284 ¶¶ 65-67.)

X One X alleges the ABG Parties' deceptive practices harm every other entity or member of the public attempting to use or license Monroe's name and image, any copyright holder, and any individual purchasing the ABG Parties' Monroe-related products. X One X does not allege the ABG Parties have merely prevented X One X from licensing its copyrighted artwork featuring Monroe. It is clear that the gravamen of X One X's Section 349 claim is harm to the public and that any harm to the public at large far outweighs X One X's damages.

X One X's additional factual allegations in the Amended Counterclaims include the following:

- ABG has made deceptive false claims to the public online, at trade shows, on products, on social media, in interviews, and through sham litigation and cease and desist letters;
- Movants' deceptive conduct harms consumers by limiting choices of available products, and by allowing [Movants] to charge higher prices for "official" Monroe products;
- ABG, purporting to be the estate of Marilyn Monroe: "sends baseless cease and desist letters to Marilyn Monroe fans and individuals to prevent them from using any indicia of Monroe"; "has prevented the public from creating and maintaining community fan pages for Monroe on the Internet"; and "has restricted and sought to restrict the public from even noncommercial uses of any indicia of Monroe";
- ABG's deceptive actions usurp the right of the public to make use of public domain images of Monroe and limit the choices of products available to the consuming public;
- ABG manages www.marilynmonroe.com and various social media accounts purportedly

and falsely on behalf of Monroe in order to promote ABG's Monroe-related products;
- "Lawful copyright holders and the public are undermined and prevented from using and licensing lawful images of Marilyn Monroe"; and
- The public has been damaged through limited choices, higher prices, and restrictions on the use of any indicia of Marilyn Monroe.

(See Dkt. 284 ¶¶ 64-68, 70-71, 73-74.)

Further, X One X's Section 349 claims do not arise out of any claim by X One X for trademark infringement or mere harm to X One X. X One X's Section 349 claim does not involve any claim that the ABG Parties' infringement of X One X's trademarks has caused injury to the public interest. Thus, case law regarding deceptive business practices claims and a Section 349 plaintiff's trademark infringement claims is inapposite.[1] The facts at issue in the instant action, where X One X does not bring any trademark infringement claim against the ABG Parties, do not align with the rationale behind case law restricting the use of Section 349 claims in connection with a trademark infringement action. Consumer confusion is generally the gravamen of a trademark claim, thus, trademark infringement actions "alleging only general consumer confusion do not threaten the direct harm to consumers" for purposes of a Section 349 claim." *Perkins*, 274 F. Supp. 2d at 327 (internal citations omitted). X One X does not bring any

---

[1] *See RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14 Civ. 6294 (LTS), 2015 WL 5008762, at *5 (S.D.N.Y. Aug. 24, 2015) (a plaintiff alleged improper use of the plaintiff's marks and the Court dismissed the plaintiff's Section 349 claim made in connection with the plaintiff's trademark infringement claim); *see also Perkins School for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 327 (E.D.N.Y. 2003) (dismissing a plaintiff's Section 349 claim made in connection with the *plaintiff's* trademark infringement claim); *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (rejecting defendant's Section 349 claim where the *defendant* also brought a trademark infringement claim *against the plaintiff*); *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, No. 06 Civ. 1774 (GEL), 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) (dismissing plaintiff's Section 349 claim brought in connection with plaintiff's trademark infringement claim).

such trademark infringement action. Thus, the general standards regarding Section 349 apply and X One X's allegations of harm to the public at large sufficiently state a claim under Section 349.

The Amended Counterclaims allege the ABG Parties' actions are targeted at consumers (Dkt 284. ¶¶ 65-66.) ("ABG intentionally chose the name 'The Estate of Marilyn Monroe, LLC' for it purported subsidiary to make consumers and the public believe that EMMLLC is the actual estate of the late Marilyn Monroe … ") The Amended Counterclaims also allege specifically how the ABG Parties' deceptive conduct harms consumers: consumers and the public have been damaged through limited choices, higher prices, and restrictions on the commercial or non-commercial use of any indicia of Marilyn Monroe. (Dkt. 284 ¶¶ 67-71.) Furthermore, the Amended Counterclaims allege that the ABG Parties' deceptive name "The Estate of Marilyn Monroe" and false claims to a nonexistent right of publicity mislead consumers and the public into believing that "the ABG Parties have a relationship with the estate and/or the late Marilyn Monroe that somehow affords them a monopoly over the use of Marilyn Monroe's image, likeness and name." (*Id.* at ¶¶ 65-67.)

These factual allegations adequately state a claim for deceptive business practices.

**D.     At a Minimum, This Court Should Grant X One X Leave to Replead**

Should this Court determine that X One X has not plausibly pled one or all of its counterclaims, X One X respectfully requests that this Court grant X One X leave to amend its Counterclaims one more time. *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) ("dismissals for insufficient pleadings are ordinarily with leave to replead"). Courts should freely give leave to amend a pleading under Federal Rule of Civil Procedure 15(a) "when justice so requires." Courts in this Circuit liberally grant leave to amend, and "The broad language [of Federal Rule of Civil Procedure 15(a)] encourages courts to adhere to a policy in favor of

granting leave to amend." *Nomura Sec. Int'l, Inc. v. E\*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 198-199 (S.D.N.Y. 2003) (quoting *Hannah v. Metro-North Commuter C.R. Co.*, 753 F. Supp. 1169, 1176 (S.D.N.Y. 1990)).

## VI. CONCLUSION

X One X respectfully requests that this Court deny the Motion in its entirety.

Dated:  June 29, 2017

**Respectfully submitted,**

By: *[signature: Michael Ray Adele]*

Michael R. Adele (*pro hac vice*)
TECHNOLOGY LITIGATION CENTER, APC
828 S. Marjan St.
Anaheim, California 92806
Telephone:  (714) 342-6987
E-mail:  techlitcenter@yahoo.com

Attorney for Plaintiff/Counter-Defendant A.V.E.L.A, Inc., Counter-Defendant Leo Valencia and Counter-Defendant X One X Movie Archives, Inc.

15