# EXHIBIT C



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAW FAMILY ARCHIVES, LTD., BRADFORD LICENSING, INC., JAMES E. DOUGHERTY, and VALHALLA PRODUCTIONS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>CMG WORLDWIDE, INC. and MARILYN MONROE, LLC,<br><br>Defendants. | 05 CV 3939 (CM)<br><br>Honorable Colleen McMahon<br><br>**DECLARATION OF**<br>**ANNA STRASBERG** |

ANNA STRASBERG, being duly sworn, deposes and says:

1. I am over eighteen years of age and competent and capable of making this declaration in opposition to Plaintiffs/Consolidated Defendants' Cross-Motion for Summary Judgment. The following facts are personally known to me and, if called as a witness, I could and would competently testify thereto.

2. Marilyn Monroe died on August 5, 1962.

3. In her Last Will and Testament, Marilyn Monroe gave 75% of the "rest, residue and remainder of [her] estate, both real and personal, of whatsoever nature and wheresoever situate. . . to which I shall be in any way entitled" to my late husband, Lee Strasberg, who was Marilyn Monroe's close friend and long-time acting teacher. A true and accurate copy of Marilyn Monroe's Last Will and Testament is attached hereto as Exhibit A.

4. I married Lee Strasberg in 1968.

5. When Lee died, his 75% rights and interest in Marilyn Monroe's intangible personal property, including, but not limited to, all rights of publicity, trademarks, and

copyrights, among other things, were passed to me through his Last Will and Testament. A true and accurate copy of Lee Strasberg's Last Will and Testament is attached hereto as Exhibit B.

6. Aaron Frosch, who was appointed executor of the estate of Marilyn Monroe, lived in New York when Marilyn Monroe died. He was suffering from multiple sclerosis at that time. In addition to being physically ill, Mr. Frosch did not like to travel. Because of these issues, Mr. Frosch decided, for his own convenience, to probate Marilyn Monroe's will in New York, instead of in California, where she owned her only home and made her living as an actress.

7. I had no involvement with the Estate until 1982, when Lee Strasberg died and I was named Executor of the Estate of Lee Strasberg ("Strasberg Executor"). I was also the sole beneficiary under Mr. Strasberg's will, thus entitling me to receive Mr. Strasberg's interest in the Monroe Estate. I continued to serve as Strasberg Executor through the creation of MMLLC in 2001.

8. In 1989, following Mr. Frosch's death, the New York Surrogate's Court appointed me as Administratrix, c.t.a of the Monroe Estate ("Administratrix"). The Estate remained open until June 19, 2001, on which date the Surrogate's Court authorized me, in my capacity as Administratrix, to close the estate and transfer the residuary assets to Marilyn Monroe, LLC ("MMLLC"), a Delaware company formed to hold and manage the intellectual property assets of the residuary beneficiaries of Marilyn Monroe's will. A true and correct copy of the Surrogate's Court Decree on a Voluntary Final Accounting and Related Matters, dated June 19, 2001, is attached hereto as Exhibit C.

9. MMLLC, a Delaware limited liability company, was formed on July 5, 2001. A true and accurate copy of the July 5, 2001 Certificate of Formation is attached hereto as Exhibit D. The initial capital of MMLLC consisted of the residuary assets of the Monroe Estate. A true and correct copy of the Limited Liability Company Agreement is attached hereto as Exhibit E. Also on July 5, 2001, ownership interests in MMLLC were assigned, 75% to myself, and 25% to the Anna Freud Centre. A true and accurate copy of the Assignment of Member's Interest is attached hereto as Exhibit F.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of April, 2007, in New York, New York.

Anna Strasberg

100204624_3.DOC

# Exhibit A

I, MARILYN MONROE, do make, publish and declare this to be my Last Will and Testament.

FIRST: I hereby revoke all former Wills and Codicils by me made.

SECOND: I direct my Executor, hereinafter named, to pay all of my just debts, funeral expenses and testamentary charges as soon after my death as can conveniently be done.

THIRD: I direct that all succession, estate or inheritance taxes which may be levied against my estate and/or against any legacies and/or devises hereinafter set forth shall be paid out of my residuary estate.

FOURTH: (a) I give and bequeath to BERNICE MIRACLE, should she survive me, the sum of $10,000.00.

(b) I give and bequeath to MAY REIS, should she survive me, the sum of $10,000.00.

(c) I give and bequeath to NORMAN and HEDDA ROSTEN, or to the survivor of them, or if they should both predecease me, then to their daughter, PATRICIA ROSTEN, the sum of $5,000.00, it being my wish that such sum be used for the education of PATRICIA ROSTEN.

(d) I give and bequeath all of my personal effects and clothing to LEE STRASBERG, or if he should predecease me, then to my Executor hereinafter named, it being my desire that he distribute these, in his sole discretion, among my friends, colleagues and those to whom I am devoted.

FIFTH: I give and bequeath to my Trustee, hereinafter

named, the sum of $100,000.00, in Trust, for the following uses and purposes:

(a) To hold, manage, invest and reinvest the said property and to receive and collect the income therefrom.

(b) To pay the net income therefrom, together with such amounts of principal as shall be necessary to provide $5,000.00 per annum, in equal quarterly installments, for the maintenance and support of my mother, GLADYS BAKER, during her lifetime.

(c) To pay the net income therefrom, together with such amounts of principal as shall be necessary to provide $2,500.00 per annum, in equal quarterly installments, for the maintenance and support of MRS. MICHAEL CHEKHOV during her lifetime.

(d) Upon the death of the survivor between my mother, GLADYS BAKER, and MRS. MICHAEL CHEKHOV to pay over the principal remaining in the Trust, together with any accumulated income, to DR MARIANNE KRIS to be used by her for the furtherance of the work of such psychiatric institutions or groups as she shall elect.

SIXTH: All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situate, of which I shall die seized or possessed or to which I shall be in any way entitled, or over which I shall possess any power of appointment by Will at the time of my death, including any lapsed legacies, I give, devise and bequeath as follows:

(a) To MAY REIS the sum of $40,000.00 or 25% of the total remainder of my estate, whichever shall be the lesser.

(b) To DR. MARIANNE KRIS 25% of the balance thereof, to be used by her as set forth in ARTICLE FIFTH (d) of this my Last Will and Testament.

(c) To LEE STRASBERG the entire remaining balance.

SEVENTH: I nominate, constitute and appoint AARON R. FROSCH Executor of this my Last Will and Testament. In the event that he should die or fail to qualify, or resign or for any other reason be unable to act, I nominate, constitute and appoint L. ARNOLD WEISSBERGER in his place and stead.

EIGHTH: I nominate, constitute and appoint AARON R. FROSCH Trustee under this my Last Will and Testament. In the event he should die or fail to qualify, or resign or for any other reason be unable to act, I nominate, constitute and appoint L. ARNOLD WEISSBERGER in his place and stead.

12915

[signature] (L.S.)

SIGNED, SEALED, PUBLISHED and DECLARED by MARILYN MONROE, the Testatrix above named, as and for her Last Will and Testament, in our presence and we, at her request and in her presence and in the presence of each other, have hereunto subscribed our names as witnesses this 14 day of January, One Thousand Nine Hundred Sixty-One.

[signature] residing at [handwritten address]

Louise D. White residing at [handwritten address]

_____________ residing at _____________

[illegible] October 30, 1962

A TRUE COPY
Robert M. Reaves
CLERK OF THE SURROGATE'S COURT
CERTIFIED December 22, 1980

# Exhibit B

EMM0000009

LAST WILL AND TESTAMENT

OF

LEE STRASBERG

I, LEE STRASBERG, now residing in the City, State and County of New York, do hereby make, publish and and declare this instrument to be my Last Will and Testament, hereby revoking any and all Wills and Codicils heretofore made by me.

FIRST: At the date of this my Will my immediate family consists of my wife, ANNA STRASBERG, ADAM and DAVID STRASBERG, sons of my present marriage, and JOHN STRASBERG and SUSAN STRASBERG, children of my first marriage.

[illegible] all insurance [illegible] thereon, [illegible] mortgages and other liens thereon, to my wife, ANNA STRASBERG, if she survives me.

THIRD: I give and bequeath all of my tangible personal property (including, without limitation, all of my jewelry, clothing, books, pictures, personal effects, household furnisings and equipment, automobiles and boats), wheresoever situated together with all insurance policies thereon, to my wife, ANNA STRASBERG, if she survives me.

FOURTH: All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situate, which I may own, or to which I may in any way be entitled at the time of my death, including any lapsed legacies or devises, is referred to in this my Will as "my residuary estate."

A. I give, devise and bequeath my residuary estate to my wife, ANNA STRASBERG, if she survives me.

B. If my wife, ANNA STRASBERG, predeceases me, I give devise and bequeath my residuary estate to my sons, ADAM and DAVID, in equal shares, *per stirpes*.

8863

FIFTH: If any share of my residuary estate shall, under any of the provisions of this my Will (other than those of this Article FIFTH), be payable to my sons ADAM or DAVID or their issue, and such beneficiary shall not have attained the age of thirty-five (35) years, then the disposition of such share in favor of such beneficiary shall not be operative and, instead, I give, devise and bequeath such share to my Trustee hereinafter named, IN TRUST, NEVERTHELESS, to hold, manage, and invest the same, to collect the income thereon, and to pay to or apply for the benefit of such beneficiary so much or all of the net income thereof as my Trustee, in his sole discretion, deems necessary or desirable for the support, maintenance, health, education, comfort or general welfare of such beneficiary. Any balance of net income not so paid or applied shall be added to principal annually.

My Trustee may, at any time or from time to time, pay to or apply for the benefit of such beneficiary so much or all of the principal of this trust as my Trustee, in his sole discretion, deems necessary or desirable for the support, maintenance, health, education, comfort or general welfare of such beneficiary.

Upon such beneficiary's attaining the age of twenty-five (25) years (or if such beneficiary shall have attained the age of twenty-five (25) years, but not the age of thirty (30) years, prior to the establishment of this trust, upon the establishment of this trust), my Trustee shall assign, transfer and pay over to such beneficiary one-third (1/3) of the then principal of this trust, and any accrued income on hand.

Lee Shai Ling 7/24/81

864

Upon such beneficiary's attaining the age of thirty (30) years, my Trustee shall assign, transfer and pay over to such beneficiary one-half (1/2) of the then principal of this trust and any income accrued or on hand; provided, however, that if such beneficiary shall have attained the age of thirty (30) years prior to the establishment of this trust, then, upon the establishment of this trust, my Trustee shall assign, transfer and pay over to such beneficiary two-thirds (2/3) of the then principal of this trust and any income accrued or on hand.

Upon such beneficiary's attaining the age of thirty-five (35) years, my Trustee shall assign, transfer and pay over to such beneficiary the then principal of this trust, and any income accrued or on hand.

Upon the death of such beneficiary prior to attaining the age of thirty-five (35) years, my Trustee shall assign, transfer and pay over the then principal of this trust, and any income accrued or on hand, to such beneficiary's then living issue, per stirpes, or if there be no such issue, to the then living issue of my marriage to my wife ANNA STRASBERG, per stirpes.

SIXTH: A. In exercising any discretions concerning whether to make payments or applications of income or principal of any trust to or for the benefit of any beneficiary, my Trustee may, but shall not be required to, inquire into or take into consideration any other property which such beneficiary may have, together with any other factors which he may deem pertinent. My Trustee's decisions shall be binding upon all interested persons.

B. In making any payment or application of income or principal to or for the benefit of any beneficiary, my Trustee may make payment directly to such beneficiary if he deems him or her to be of reasonable age and competence (even if such beneficiary is under the age of eighteen (18) years) or may make payment to a guardian, committee or custodian under a Uniform

Lee Strasberg 4/24/81

10/19/2006 15:16 212-533-2333 PRESIDENT LSTIT NY PAGE 04/13

Gift to a Minor Act of such beneficiary appointed in the State of New York, or in any other jurisdiction, or to an adult person with whom such beneficiary resides or who has the care or custody of such beneficiary temporarily or permanently (the receipt of such beneficiary, guardian, committee, custodian, or adult person shall discharge my Trustee with respect to such payment or application and my Trustee shall not be responsible for the application of such income or principal by such beneficiary, guardian, committee, custodian, or adult person).

C. If, in the sole discretion of my Trustee, any trust created under the provisions of this my Will shall at any time be of a size which shall make it inadvisable or unnecessary to continue such trust, then, anything contained in this my Will to the contrary notwithstanding, my Trusee, in his sole discretion, may terminate such trust and assign, transfer and pay over the entire principal of any such trust, and any income accrued or on hand, to the person then entitled to receive the income therefrom.

SEVENTH: I direct my Executrix to pay any and all estate, inheritance and other death taxes, and all interest and penalties thereon, imposed by reason of my death by the United States or any other government or subdivision thereof, in respect of any property required to be included in my gross estate for the purposes of such taxes, whether passing under this my Will or otherwise (and specifically authorize my Executrix, in her sole discretion, to pay any such taxes imposed by any foreign government or subdivision thereof) and I direct that any taxes so paid shall be charged, without any apportionment otherwise required by law, against my residuary estate.

Lee Solomon 4/24/81

3866

EIGHTH: I appoint my wife, ANNA STRASBERG, to be the Executrix of this my Will. If my said wife shall fail to qualify or cease to act, I appoint AARON R. FROSCH and ELLIOT J. LEFKOWITZ, as Successor Executors. I also appoint Aaron R. Frosch and ELLIOT J. LEFKOWITZ as Trustees under this my Will. If said Trustees and Successor Executors shall fail to qualify or cease to act as either Successor Executors or Trustees, or both, I authorize them or their survivor by an instrument executed and acknowledged by them, or their survivor, and filed in the court wherein this my Will is probated, to appoint an individual or a corporation as Successor, Executor, or Trustee, or both. I direct that such appointment made in compliance with the wishes of ████████████ ████████████████████████████████████████

I direct that no bond or other security shall be required in any jurisdiction of any Executor (or of any administrator C.T.A.) or trustee, of, or under this my Will to secure the faithful performance of his or her duties as such.

NINTH: In addition to any powers conferred by law, my Executrix and Trustees hereunder shall have the following powers, authorities and discretions with respect to any property, real or personal, at any time held under any provision of my Will and may exercise the same without the order or approval of any court:

1. To retain any such property without regard to the proportion any such property or similar property held may bear to the entire amount held and without any obligation to diversify the same, whether or not the same is of the kind in which fiduciaries are authorized by law or any rule of court to invest funds;

- 5 -

EMM0000014

2. To sell any such property upon such terms and conditions as may be deemed advisable, at public or private sale, for cash or on credit for such period of time as may be deemed advisable, or partly for cash and partly on credit, and with or without security, and the purchaser of such property shall have no obligation to inquire as to the use or application of the proceeds of sale; to exchange any property held hereunder upon such terms and conditions, as may be deemed advisable; and to grant options for any of the foregoing;

3. To lease or to sublease any such property, for such period of time and to grant such covenants or options for renewal as may be deemed advisable without regard to the duration of any trust; and to mortgage, pledge or otherwise encumber any such property upon such terms as may be deemed advisable;

4. To invest and reinvest in and to acquire by purchase, exchange or otherwise, property of any character whatsoever, foreign or domestic, or interests or participations therein, without regard to the proportion any such property or similar property held may bear to the entire amount held and without any obligation to diversify, whether or not the same is of the kind in which fiduciaries are authorized by law or any rule of court to invest funds;

5. To borrow such sums of money at any time and from time to time for such periods of time upon such terms and conditions from such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and to secure such loans by the pledge or hypothecation of any property held hereunder; and the lender shall have no obligation to inquire as to the application of the sums loaned or as to the necessity, expediency or propriety of the loan;

Copy 4/24/81

868

6. To register and hold any property of any kind, whether real or personal, at any time held hereunder in the name of a nominee or nominees and to hold any such personal property in any State; and to receive and keep any stocks, bonds or other securities unregistered or in such condition as to pass by delivery;

7. To distribute in the exercise of sole and absolute discretion any property in kind at market value unless otherwise directed herein or in cash, or partly in kind and partly in cash, and to allocate among the recipients the property distributed in kind without any obligation to make proportionate distributions or to distribute to all recipients property having an equivalent Federal income tax cost;

8. To decide in the exercise of sole and absolute discretion whether to exercise any income, estate or gift tax option, including whether to claim executor's commissions, attorneys' fees and other administration expenses in my estate as estate tax or income tax deductions and whether to make an adjustment from income to principal because of any such decision, and any such determination shall be final and binding, upon all beneficiaries hereunder;

9. To allocate to principal (unless otherwise directed herein) all dividends and distributions payable in property or in stocks, bonds or other securities whether of the disbursing company or another company;

10. After the termination of any trust hereunder to exercise all powers, authorities and discretions herein conferred until the complete distribution of the property held hereunder;

Lee Bitz 4/24/81

8869

such period of time as he or she shall deem advisable. [illegible]

11. To administer any two or more of the trusts herein created or any part thereof together or as a single fund by holding the principal of such trusts in one or more consolidated funds in which the separate trusts shall have undivided interests.

12. To act in any jurisdiction where permitted by law, or to designate one or more persons, or a corporation to be ancillary executor or trustee who shall serve without bond or security in any jurisdiction in which ancillary administration may be necessary; and to negotiate and determine the compensation to be paid to such ancillary executor or trustee whether or not any compensation would otherwise be authorized by law, and to pay such compensation out of principal or income or both; and such ancillary executor and trustee shall have with respect to any and all property subject to its administration all powers, authorities and discretions granted in this Article NINTH, provided, however, that any action which may require the investment of additional funds or the assumption of additional obligations shall not be undertaken without prior written consent of my domiciliary fiduciary or fiduciaries;

13. I specifically authorize and empower any fiduciary hereunder in his or her sole and absolute discretion to retain any common stock or other securities of the LEE STRASBERG THEATRICAL INSTITUTE, INC. (hereinafter referred to as the "Company") as an investment of my estate or of any trust hereunder for such period of time as he or she shall deem advisable. I specifically authorize and empower such fiduciary in his or her sole and absolute discretion to direct, control, supervise, manage, operate or participate in the business of the Company to whatever

Lee Strasberg 4/24/81

8870

extent he or she shall deem advisable and to determine the manner and degree of his or her active participation in the operation of such business. I further authorize and empower any fiduciary hereunder as stockholder to elect such directors as he or she shall in his or her sole and absolute discretion deem advisable, and through his or her control of the directors of the Company to elect such officers as he or she shall in his or her sole and absolute discretion deem advisable and to instruct such directors and officers regarding any and all decisions required to be made with respect to the operation of the Company, and the directors and officers elected by any such fiduciary may be directors, officers or employees of such fiduciary or beneficiaries of my estate or any trust hereunder. I specifically authorize any fiduciary hereunder through his or her control of the Company to retain himself or herself in any capacity, advisory or otherwise, and to avail himself or herself of any and all services offered by such fiduciary and to pay himself or herself from the Company reasonable compensation for such services. I further authorize any fiduciary hereunder to delegate all or any of the powers, authorities and discretions conferred herein to agents, including any director, officer or employee of the Company, and as a stockholder to give proxies or to vote to engage, compensate and discharge directors, officers, employees, attorneys, accountants or consultants or to enlarge, diminish or change the scope or nature of the business of the Company; and as stockholder to give proxies or to vote and to instruct the directors or officers of the Compay to vote to enter into and perform contracts in connection with the business of the Company, to

Lee B [signature] 4/24/81

1871

purchase, to take options for the purchase, and to lease property, real or personal, for any period of time whether or not such option or lease extends beyond the period of administration of my estate or the term of any trust hereunder, to borrow as required for the operation of said business or for capital improvements and to pledge any assets of the Company as collateral for such borrowing. I further authorize any fiduciary hereunder to commit additional assets of my estate and of any trust hereunder to the risk of the business of the Company whether by lending to, extending credit to, or investing directly in the Company, or by pledging assets of my estate or of such trust as collateral for any borrowing of the Company; to sell any assets of the Company or to exchange assets for stock or other securities or forms of indebtedness of any corporation or otherwise; to sell and dispose of the stock or other securities of the Company held hereunder in whole or in part upon such terms and conditions as such fiduciary shall in his or her sole and absolute discretion deem advisable; and to merge or to consolidate the Company with any other corporation.

Any fiduciary hereunder shall not be liable to anyone whomsoever for any loss occasioned by the retention of such stock or other securities of the Company or resulting from any action taken or omitted to be taken by him or her in good faith in his or her capacity as stockholder, director or officer of the Company or otherwise with respect to the operation, sale, liquidation or other disposition of the business of the Company.

TENTH: No interest of any beneficiary under this my Will, either in income or principal, shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any beneficiary

[signature] 4/24/81

1872

have the right to anticipate, charge or encumber his or her interest, nor shall such interest be liable or subject in any manner for the debts, contracts, liabilities or torts of such beneficiary.

ELEVENTH: A. If my wife, ANNA STRASBERG, and I should die under such conditions that it would be difficult to impossible to determine which of us died first, then, for the limited purposes of Articles SECOND, THIRD and FOURTH of this my Will, my wife shall be deemed to have survived me and for all other purposes of this my Will shall be deemed to have predeceased me.

B. If any beneficiary under this my Will (except, for the limited purposes of Articles SECOND, THIRD and FOURTH of this my Will, my wife) and I should die under such conditions that it would be difficult or impossible to determine which of us died first, then such beneficiary shall be deemed for the purposes of this my Will to have predeceased me.

TWELFTH: If my wife, ANNA STRASBERG, predeceases me, and if any child of mine is under the age of eighteen (18) years at my death, I hereby nominate, constitute and appoint my wife's sister, VICTORIA KRANE, as the guardian of the person and property of each child of mine during his minority. If VICTORIA KRANE shall, for any reason, fail to qualify or cease to act as such guardian, I hereby nominate, constitute and appoint my daughter, SUSAN STRASBERG, as such guradian in her place and stead.

I expressly direct that no bond or security of any kind shall be required of any guardian in any jurisdiction to secure the faithful performance of her duties as such and, to the extent

Lee [signature] 4/24/81

8873



legally permissible, I hereby relieve her from filing accounts of her proceedings in any court.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 24 day of April in the year ONE THOUSAND NINE HUNDRED and ~~SEVENTY-NINE~~. eighty-one

Lee Strasberg

The foregoing instrument was on the day and date thereof, signed, sealed, published and declared by LEE STRASBERG, the Testator therein named, as and for his Last Will and Testament, in the presence of us, the undersigned, who, at his request and in his presence, and in the presence of each other, have hereunto set our names as witnesses.

Marie Margaret Bishop residing at 70-25 Yellowstone Blvd, Forest Hills 11375 New York

Christina Dyzyl residing at 69-01 Northern Blvd, Woodside N.Y.

[signature] residing at 27 Birch Brook Lane, Scarsborough, NY 10550

8874

- 12 -

ORIGINAL ADMITTED TO PROBATE August 23, 1982

A TRUE COPY
Robert M. Reaves
CLERK OF THE SURROGATE'S COURT
CERTIFIED March 15, 1984

# Exhibit C

EMM0000022

At the Chambers of the Surrogate's Court held in and for the County of New York, at 31 Chambers Street, New York, New York, on the 19th day of June, 2001

PRESENT:

HONORABLE ~~[illegible]~~ EVE PREMINGER
Surrogate.

In the Matter of the Judicial Settlement of the Account of the Proceedings of ANNA STRASBERG, Administratrix C.T.A. of the Estate of

MARILYN MONROE,

Deceased.

File No. P 2781/1962

DECREE ON A VOLUNTARY FINAL ACCOUNTING AND RELATED MATTERS

Anna Strasberg, as Administratrix C.T.A. of the Estate of Marilyn Monroe ("Petitioner"), having filed a final account of the Petitioner's proceedings covering the period from July 20, 1989, the date on which Letters of Administration C.T.A. were issued to Petitioner, through October 3, 2000, and Anna Strasberg having presented a petition ("Petition") duly verified the 18th day of October, 2000, praying (i) for the judicial settlement of the account; and (ii) for authority to execute the Limited Liability Company Agreement attached as Exhibit 4 to the Petition, the Supplement thereto attached as Exhibit 5 to the Petition, the Assignment attached as Exhibit 6 to the Petition, the Certificate of Formation attached as Exhibit 7 to the Petition, and any and all other documents necessary to establish the limited liability company and register and/or qualify it in other jurisdictions; and (iii) for authority to take all other necessary steps to establish and operate the limited liability company, including registering and qualifying the limited liability company in one or more other jurisdictions; and (iv) for authority to use estate assets for the purposes of establishing the limited liability company and registering and qualifying it in one or more other jurisdictions; and (v) for authority to transfer all assets of the estate to the limited liability company and distribute membership interests in the limited liability company pro rata to the residuary beneficiaries as

Gibson, Dunn & Crutcher LLP

follows: 75% to Anna Strasberg, as Executor of the Estate of Lee Strasberg, and 25% to the Anna Freud Centre; and (vi) for these estate proceedings to be closed;

AND there having been filed herein the Consents to Execution of Limited Liability Company Agreement and Related Matters of Anna Strasberg, as Executor of the Estate of Lee Strasberg, and the Anna Freud Centre;

AND a Citation having been issued on the 29th day of January, 2001, pursuant to statute directed to all interested parties in the proceeding, directing them and each of them to show cause before this Court on the 9th day of March, 2001, at 9:30 a.m. of that day, why such relief should not be granted;

AND said Citation having been duly served, on January 29, 2001, upon the following: Anton O. Kris and Anna Kris Wolff, pursuant to the Authorization of The Anna Freud Center, the Authorization of Anton O. Kris and the Authorization of Anna Kriss Wolff; Continental Insurance Company; and upon the Attorney General of the State of New York;

AND proof of service on all such parties having been filed with this Court;

AND the Attorney General of the State of New York having appeared by filing a Notice of Appearance on March 7, 2001;

AND this Court having examined the final account now finds the state and condition of the account to be stated and set forth in the following Summary Statement thereof made by this Court as judicially settled and allowed by it to be recorded and taken as part of this Order and Decree;

SUMMARY STATEMENT

The following is a Summary Statement of the final account of the Petitioner's proceedings covering the period from July 20, 1989 through October 3, 2000:

CHARGES:

| | | |
|---|---|---|
| Amount shown by Schedule "A" (Principal received) | $ | 34,373.66 |
| Amount shown by Schedule "A-1" (Realized increases on principal) | | 0.00 |

Gibson, Dunn & Crutcher LLP

| | | |
|---|---|---|
| Amount shown on Schedule "A-2" (Income collected) | | 15,956,520.01 |
| | TOTAL CHARGES: | $15,990,893.67 |
| CREDITS:: | | |
| Amount shown on Schedule "B" (Realized decreases on principal) | | $ 0.00 |
| Amount shown on Schedule "C" (Funeral and administration expenses) | | 636,180.06 |
| Amount shown on Schedule "D" (Creditors' claim actually paid) | | 0.00 |
| Amount shown on Schedule "E" (Distributions to legatees, distributees, etc.) | | 15,353,243.17 |
| | TOTAL CREDITS: | $15,989,423.23 |
| Balance on hand shown by Schedule "F" | | $1,470.44 |

AND it appearing that Petitioner having fully accounted for all monies and property of said estate which have come into the hands of the Petitioner and the Summary Statement of the same having been shown above, it is hereby

ORDERED, ADJUDGED AND DECREED that the Account of Anna Strasberg, Aministratrix C.T.A. of the Estate of Marilyn Monroe, covering the period from July 20, 1989 to and including October 3, 2000 be and it is hereby judicially settled and allowed as filed; and it is further

ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to execute the Limited Liability Company Agreement attached as Exhibit 4 to the Petition, the Supplement thereto attached as Exhibit 5 to the Petition, the Assignment attached as Exhibit 6 to the Petition, the Certificate of Formation attached as Exhibit 7 to the Petition, and any and all other documents necessary to establish the limited liability company and register and/or qualify it in other jurisdictions, as the Petitioner deems appropriate; and it is further

Sonnen, Dunn & Sheehan LLP

ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to take all other necessary steps to establish and operate the limited liability company, including registering and qualifying the limited liability company in one or more other jurisdictions, as the Petitioner deems appropriate; and it is further

ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to use estate assets for the purposes of establishing the limited liability company and registering and qualifying it in one or more other jurisdictions, as the Petitioner deems appropriate; and it is further

ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to transfer all assets of the estate to the limited liability company and distribute membership interests in the limited liability company pro rata to the residuary beneficiaries as follows: 75% to Anna Strasberg, as Executor of the Estate of Lee Strasberg, and 25% to the Anna Freud Centre; and it is further

ORDERED, ADJUDGED AND DECREED that ~~[illegible]~~ UPON COMPLYING WITH THE DIRECTIONS OF THIS DECREE THAT THE PETITIONER HEREBY SHALL BE DISCHARGED AS TO ALL MATTERS AND THINGS CONTAINED IN THIS ACCOUNTING AND DECREE.

SURROGATE

30118337_1.DOC

Gibson, Dunn & Crutcher LLP

In the Matter of the Appraisal under the Estate Tax Law of the Estate of

MARILYN MONROE

Deceased.

ORIGINAL

RECEIVED
AUG 6 1964
TRANSFER & ESTATE TAX
DEPARTMENT OF TAXATION AND FINANCE
N. Y. C.

STATE OF NEW YORK
COUNTY OF New York } ss.:

AARON R. FROSCH executor of the estate of the above named decedent, being duly sworn in this proceeding for the determination of the tax, if any, to be paid upon the assets of the said estate under Article 10-C of the Tax Law, deposes and says that as such executor deponent is personally familiar with the affairs of said estate, the property constituting the assets thereof, their fair market value, and the debts, expenses and charges properly allowable as deductions therefrom, and makes the following return:

**GENERAL INFORMATION**

1. Date of death Aug. 5, 1962 2. Resident of New York County

3. Did the decedent leave a will? (Answer "yes" or "no") Yes
If the answer is "yes" attach copy of last will.

4. Letters of administration *testamentary* were issued on October 30, 1962 by the Surrogate's Court of New York County.

5. The names and post-office addresses of the executors or administrators are:

| *Name* | *Post Office Address* |
|---|---|
| AARON R. FROSCH | 120 E. 56th Street, |
| | New York 22, New York |

**GROSS ESTATE**

**Answer all questions "yes" or "no" and submit appropriate schedule in each case where answer is "yes". Refer to instructions for each schedule in listing the assets.**

**SCHEDULE A—REAL ESTATE**

6. Did the decedent at the time of death own any interest in real estate located within the State of New York? No

**SCHEDULE B—STOCKS AND BONDS**

7. Did the decedent at the time of death own any stocks and bonds? Yes

**SCHEDULE C—MORTGAGES, NOTES AND CASH**

8. Did the decedent at the time of death own any mortgages, notes or cash? Yes

**SCHEDULE D—INSURANCE**

9. Was any insurance on life of decedent receivable by his estate? Yes

10. Was any insurance on life of decedent receivable by beneficiaries other than the estate? No

**SCHEDULE E—JOINTLY OWNED PROPERTY**

11. Did the decedent at the time of his death own any property as a joint tenant or as a tenant by the entirety with right of survivorship or as community property? No

**SCHEDULE F—OTHER MISCELLANEOUS PROPERTY**

12. Did the decedent, at the time of death, own any interest in a co-partnership or unincorporated business? No

13. Did the decedent, at the time of death, own any miscellaneous property not returnable under any other schedule? Yes

**SCHEDULE G—TRANSFERS DURING DECEDENT'S LIFE**

14. Did the decedent during life make any transfer, including any transfer believed to be nontaxable, which the instructions with reference to Schedule G require to be reported? No

15. Was there in existence at the time of decedent's death any trust created by him during life? Yes - copy of trust hereto attached

**SCHEDULE H—POWERS OF APPOINTMENT**

16. Did the decedent, at any time, possess, release or exercise any power of appointment? No

**SCHEDULE I—ANNUITIES**

17. Was any annuity or other payment receivable by any person surviving the decedent under an annuity contract or any similar contract or agreement, other than a policy of life insurance? No

**DEDUCTIONS**

**SCHEDULE J—FUNERAL AND ADMINISTRATION EXPENSES**

18. Itemize the funeral expenses and administration expenses in Schedule J.

**SCHEDULE K—DEBTS OF DECEDENT**

19. Itemize the debts of the decedent in Schedule K.

**SCHEDULE L—MORTGAGES AND LIENS, AND NET LOSSES DURING ADMINISTRATION**

20. List deductions claimed for these items in accordance with instructions.

**SCHEDULE M—MARITAL DEDUCTION FOR TRANSFERS TO SURVIVING SPOUSE**

21. Itemize in this schedule all interests in property transferred to decedent's surviving husband or wife, with respect to which a deduction is claimed.

**SCHEDULE N—CHARITABLE, PUBLIC, AND SIMILAR GIFTS AND BEQUESTS**

22. Itemize in Schedule N all devises and bequests to exempt corporations or associations.

**SCHEDULE O—BENEFICIARIES**

23. Give in Schedule O a statement of the names of all persons beneficially interested in the estate, the nature of their respective interests, etc.

I HEREBY CERTIFY THAT: No income tax deduction, either Federal or State, has been or will be claimed by the decedent or his estate, for a taxable year ending on or after December 31, 1960, on account of any administrative expenses, expenses of the decedent's medical care or casualty losses during administration, for which estate tax deductions are claimed herein.

Sworn to before me this 31st day of July 1964

ELLIOT J. LEFKOWITZ
Notary Public, State of New York
No. 03-1474775
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 196[illegible]

[signature]
Aaron R. Frosch
Executor

## SCHEDULE A—REAL ESTATE

Real estate should be so described that it may be readily located. Give town or city, map, lot, block and section numbers, and place of record of deed. State the exact right, title or interest the decedent had in every parcel of real estate. The full valuation of the property and not the equity must be given. The mortgages should be deducted under Schedule L. Show also, with respect to each parcel of property, the assessed valuation thereof, and furnish the estimated market value at the date of death. Attach appraisal made by a competent real estate appraiser.

Real property which the decedent has contracted to purchase should be listed in this schedule. The full value of the property and not the equity must be shown. The unpaid portion of the purchase price should be deducted under Schedule K.

The value of dower and courtesy is taxable, and no reduction on account thereof or on account of homestead or other exemptions should be made in returning the value of the real estate.

All rents accrued and unpaid should be apportioned to the date of death, whether due at that time or not.

## SCHEDULE B—STOCKS AND BONDS

*Description.*—Description of stocks should indicate number of shares, whether common or preferred, issue, par value, price per share, exact name of corporation, and, if not listed on a stock exchange, the post-office address of the principal business office, the State in which incorporated, and the date of incorporation. If listed, state principal exchange upon which sold. Description of bonds should include quantity and denomination, name of obligor, kind of bond, date of maturity, interest rate, and interest-due dates. State the exchange upon which listed, or if unlisted the principal business office of the company.

*Valuation.*—In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the date of death shall be considered as the fair market value per share or bond. If there were no sales on the date of death, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. For example, assume that sales of stock nearest the date of death (June 15) occurred 2 days before (June 13) and 3 days after (June 18) and that on such days the mean sale prices per share were $10 and $15, respectively. The price of $12 shall be taken as representing the fair market value of a share of such stock as of the date of death. If, however, on June 13 and 18 the mean sale prices per share were $15 and $10, respectively, the price of $13 shall be taken as representing the fair market value of a share of such stock as of the date of death. If the security was listed on more than one exchange, the records of the exchange where the security is principally dealt in should be employed. In valuing listed stocks and bonds the executor should observe care to consult accurate records to obtain values as of the date of death.

Dividends declared on shares of stock prior to the death of the decedent but payable to stockholders of record on a date after his death are not includable in his gross estate for estate tax purposes. However, in a case where the stock is being traded on an exchange and is selling ex-dividend on the date of the decedent's death, the amount of the dividend should not be included in the gross estate as a separate item but should be added to the ex-dividend quotation in determining the fair market value of the stock as of the date of the decedent's death.

In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of death; or, if there were no sales on that date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If quotations are obtained from brokers, or evidence as to the sale of securities is obtained from the officers of the issuing companies, copies of the letters funishing such quotations or evidence of sale should be attached to the return.

If actual sales are not available during a reasonable period beginning before and ending after the date of death, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If actual sale prices or quoted bona fide bid and asked prices are available on a date within a reasonable period prior to the date of death, but if no actual sale prices or bona fide bid and asked prices are available on a date within a reasonable period after the date of death, or vice versa, then the mean between such highest and lowest available sale prices or bid and asked prices may be taken as the value.

*Inactive unlisted stock and stock in close corporations* should be valued upon the basis of the company's net worth and earning capacity. Attach to each set of schedules balance sheets and earning statements of such companies for five years preceding the date of death. If there were any sales of these securities within a reasonable period before or after the date of death, furnish a statement of such sales, showing the number of shares sold and the prices at which sold.

*Securities returned as of no value* or of nominal value should be listed last and a statement furnished of the reasons for returning them as of no value or of nominal value.

*Accrued interest on bonds* should be computed to the date of death and reported separately.

*Community Property.* If a decedent died after April 18, 1943, a transfer of property held as community property by the decedent and surviving spouse under the law of any state, territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. This reference to community property applies not only to Schedule B but also to Schedules C, E, F and G.

## SCHEDULE C—MORTGAGES, NOTES AND CASH

The five classes of property in this schedule should be listed separately in the order given.

*Mortgages.* State (1) the face value and the unpaid balance (2) the date of mortgage, (3) the name of maker, (4) property mortgaged, (5) interest date and rate of interest, (6) the date to which interest was paid, and (7) date of maturity. Add accrued interest to date of death.

*Notes.* Give similar data.

*Contract by Decedent to Sell Land.* Give name of vendee, date of contract, description of property, sale price, initial payment, amounts of installment payments, unpaid balance of principal and accrued interest, interest rate, and date prior to decedent's death to which interest had been paid.

*Cash in Possession.* List separately from bank deposits.

*Cash in Bank.* Give name of bank and address, amount in bank, accrued interest, if any.

## SCHEDULE D—INSURANCE

*Insurance.* Include all insurance upon the life of the decedent, stating whether payable to the estate or to a named beneficiary. For annuities, see instructions under Schedule I.

## SCHEDULE E—JOINTLY OWNED PROPERTY

All property of whatever kind or character, whether real estate, personal property, bank accounts, etc., in which the decedent held at the time of his death an interest either as a joint tenant, a tenant by the entirety or as an owner of community property, must be returned under this schedule.

The full value of the property must be included, unless it can be shown that a part of the property originally belonged to the other tenant or tenants and was never received or acquired by the other tenant or tenants from the decedent for less than a fair consideration in money or money's worth.

Where it is shown that the property or any part thereof, or any part of the consideration with which the property was purchased, was acquired by the other tenant or tenants from the decedent for less than an adequate and full consideration in money or money's worth, there should be omitted from this schedule only so much of the value of the property as is proportionate to the consideration furnished by such other tenant or tenants.

Where the property was acquired by gift, bequest, devise, or inheritance by the decedent and spouse as tenants by the entirety, then only one-half of the value of the property should be listed on this schedule. Where the property was acquired by the decedent and another person or persons by gift, bequest, devise, or inheritance as joint tenants, and their interest are not otherwise specified or fixed by law then there should be entered on this schedule only such fractional part of the value of the property as is obtained by dividing the full value of the property by the number of joint tenants.

If the executor contends that less than the value of the entire property is includable in the gross estate for purposes of the tax, the burden is upon him to show his right to include such lesser value, and in such case he should make proof of the extent, origin, and nature of the decedent's interest and the interest of decedent's co-tenant or co-tenants.

If the property consists of real estate, the assessed valuation thereof for the year of death should be shown, and the estimated market value as of the date of death should be furnished, supported by an appraisal made by a competent real estate appraiser.

Property in which the decedent held an interest as a tenant in common should not be listed here but the value of his interest therein should be returned under Schedule A if real estate, or if personal property under the appropriate schedule. The value of the decedent's interest in a partnership should be reported under Schedule F.

## SCHEDULE F—OTHER MISCELLANEOUS PROPERTY

Under this schedule include all items of gross estate not returned under another schedule, including the following: Debts due the decedent, interests in business, claims, rights, royalties, pensions, leaseholds, judgments, shares in trust funds or in estates of other decedents, household goods and personal effects including wearing apparel, farm products and growing crops, livestock, farm machinery, automobiles, etc.

When an interest in a copartnership or unincorporated business is returned, submit statement of assets and liabilities as of date of death and for the five years preceding death, and statement of the net earnings for the same five years; also salary of decedent. Good will must be accounted for.

In listing automobiles, give make, model, year, and condition as of date of decedent's death.

ing capacity. Attach to each set of schedules balance sheets and earning statements of such companies for five years preceding the date of death. If there were any sales of these securities within a reasonable period before or after the date of death...

ness is returned, submit statement of assets and liabilities as of date of death and for the five years preceding death, and statement of the net earnings for the same five years; also salary of decedent. Good will must be accounted for. In listing automobiles, give make, model...

T 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE A - Real Estate | | |
| NONE *Located State of California* | | |
| SCHEDULE B - Stocks and Bonds | | |
| 1. 100 shares no par value preferred stock of MARILYN MONROE PRODUCTIONS, INC. Said preferred stock is the corpus of a trust. A copy of Trust Indenture is hereto annexed. | | |
| 2. 101 shares of common stock no par value of MARILYN MONROE PRODUCTIONS, INC. | *61,250.19* $ 7,250.19 | |
| SCHEDULE C Mortgages, Notes and Cash | | |
| 1. Cash at decedent's N.Y. Residence | 3.50 | |
| 2. Checking Account - Irving Trust Co. | 2,334.65 | |
| 3. Savings Account - Bowery Savings Bank | 614.29 | |
| 4. Savings Account - Excelsior Savings Bank | 1,171.06 | |
| 5. Account First National City Bank | 84.67 | |
| 6. Account - City National Bank of Beverly Hills, Beverly Hills, Calif. | 2,200.00 | |
| 7. Cash at decedent's California residence | 405.00 | |
| | $ 6,813.17 | |
| SCHEDULE D - Insurance | | |
| 1. Union Labor Life Insurance No.1263, payable to the decedent's estate | $ 3,000.00 | |
| SCHEDULE E Jointly Owned Property | | |
| NONE | | |
| SCHEDULE F Other Miscellaneous Property | | |
| 1. Furs and miscellaneous jewelry from New York apartment | $ 1,423.00 | |
| 2. Personal effects and clothing and furniture at decedent's apartment at 444 W. 57th St., New York City | 11,057.00 | |
| 3. Clothing and personal effects at decedent's residence in California | 1,558.00 | *-0-* |
| 4. Furniture and furnishings at decedent's residence in California | 2,486.00 | *-0-* |

*Federal Lien Audit Annexed.*

319

(Cont.)

TT 143 A

Give title of schedule and total each schedule.

It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE F (Cont.) | | |
| 5. Refund of NYState income tax for 1962 | $ 4,935.36 | |
| 6. Return of premium on NY Insurance Fund | 10.85 | |
| 7. Return of premium on Royal Insurance Co. policy | 351.05 | |
| 8. Commuted value after payment of taxes of decedent's rights pursuant to contract dated 7/1/58 between decedent and Ashton Productions, Inc. pertaining to motion picture "SOME LIKE IT HOT" and in contract between decedent and Seven Arts Productions, Inc. dated 1/30/60 pertaining to the motion picture, film "THE MISFITS" | 593,675.88 / 140,920.00 | 153,008.31 |
| 9. Decedent's share in Profit Sharing Plan Marilyn Monroe Productions, Inc. | 13,832.45 ($176,573.71) | |
| Total F = $764,461.45 | | |
| SCHEDULE G Transfers During Decedent's Life | | |
| 1. The decedent created a trust on October 26, 1959 for the benefit of her mother, Gladys Baker, to which the decedent transferred 100 shares of preferred stock of Marilyn Monroe Productions, Inc. This trust is disclosed for information purposes only, as it is not includible in the decedent's gross estate. Though this transfer was made within three years before decedent's death such transfer was not made in contemplation of death. Decedent's motive of making the said transfer was to provide an annual income to her mother and at the time of such transfer there was no contemplation of death and no undue influence. *perfected* | 1000.00 | |
| SCHEDULE H Powers of Appointment NONE | | |
| SCHEDULE J Funeral and Administration Expenses | | |
| 1. Westwood Memorial Funeral expenses | $ 4,352.00 | |

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE J - (Cont.) | | |
| 2. Bel Air Patrol Co. - guarding property | $ 1,982.75 | |
| 3. Norman Jefferies - handy man services | 360.00 | |
| 4. Landon Pool Service - pool maintenance | 496.52 | |
| 5. Edward P. Halavaty - lock and key services | 71.55 | |
| 6. West L.A. Patrol - guarding property | 1,325 00 | |
| 7. General Telephone | 123.35 | |
| 8. Sam Tateishi - gardener | 939.55 | |
| 9. Department of Water and Power - water and electricity | 203.31 | |
| 10. Southern Counties Gas Co. | 185.62 | |
| 11. Appraisal Bureau | 220.00 | |
| 12. Actual Appraisal Co.,Inc. for appraisal | 300.00 | |
| 13. Appraiser | 96.78 | |
| 14. Rovins & West, - insurance on decedent's household effects for two years | 1,989.96 | |
| 15. J. Santini & Bros., Inc. - storage charges | 2,021.00 | |
| 16. Bekins Van & Storage | 54.10 | |
| 17. Cherie Redmond - secretarial services | 689.30 | |
| 18. Fidelity Van & Storage | 767.45 | |
| 19. Eunice Murray - housekeeping after death | 400.00 | |
| 20. Mura Bright - services and expenses reimbursement | 181.60 | |
| 21. Estimated additional administration expenses for storage of personal and household effects increases at the rate of 197.75 per month - estimated additional 12 months charges until disposed of | 2,373.00 | |
| Total J | $ 19,132.84 | |

TT 143 A

Give title of schedule and total each schedule.

It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|

## SCHEDULE K – Debts of Decedent

| | | | |
|---|---|---|---|
| 1. | James M. Attley d/b/a V. Adair Co. window screens | $ 29.85 | |
| 2. | Don J. Briggs, Inc. – merchandise sold delivered | 215.41 | |
| 3. | Buzin News Co. – advertising | 94.00 | |
| 4. | State of California Department of Employment | 99.18 | |
| 5. | Drs. Conti and Steinberg – professional services | 25.00 | |
| 6. | C & J Howard, Inc. c/b/a Landon Pool Service | 37.00 | |
| 7. | Consolidated Edison, electric service | 29.89 | |
| 8. | Dr. Hyman Engelberg, for professional services | 478.00 | |
| 9. | Agnes M. Flanagan – hair styling | 840.00 | |
| 10. | Francis-Orr Stationery Co. | 5.55 | |
| 11. | General Telephone, telephone bill | 274.61 | |
| 12. | Robert K. Goka d/b/a Frank's Nurseries – trees etc. | 59.64 | |
| 13. | Dr. Ralph R. Greenson, for professional services | 1,400.00 | |
| 14. | Austin A. Innes – carpentry | 45.17 | |
| 15. | Arthur P. Jacobs – reimbursement of expenses | 797.85 | |
| 16. | Norman Jefferies | 180.00 | |
| 17. | 444 Management Co. for amounts due with respect to decedent's N.Y. apartment | 2,290.00 | |
| 18. | Magnetic Springs Water Co. – spring water | 3.60 | |
| 19. | Malone Studios Service, Inc. – cleaning of clothes | 111.50 | |
| 20. | New York Telephone Co. | 40.36 | |
| 21. | Jack M. Ostrow, accountant's fees | 2,500.00 | |
| 22. | The Pacific Telephone & Telegraph Co. telephone services | 14.66 | |
| 23. | Jose Paraeo – tile work | 66.00 | |
| 24. | Raese Period Furniture – gates, 7 hinges | 313.92 | |
| 25. | Rand-Fields, Inc. – airline tickets | 205.59 | |
| 26. | Santa Monica Dairy Co. – dairy products | 6.06 | |
| 27. | Saks Fifth Avenue – clothes etc. | 388.32 | |
| 28. | Allan Snyder, professional photographer | 1,800.00 | |
| 29. | A. Ray Tolman, for work done at decedent's California residence | 150.00 | |
| 30. | Sam S. Tateishi – gardening services | 40.00 | |
| 31. | H.B. Thompson d/b/a Thompson Electric Co. labor and material | 111.45 | |
| 32. | Vincente Pharmacy – drugs | 58.57 | |
| 33. | Weissberger & Frosch, legal and accounting services | 15,000.00 | |
| 34. | Gang,Tyre,Rudin & Brown – legal services | 10,000.00 | |
| 35. | Affiliated Telephone Answering Service Inc. | 19.10 | |
| 36. | Elizabeth Arden | 93.55 | |
| 37. | Mura Bright – goods, merchandise and services rendered | 1,050.67 | |

(Cont.)

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| | DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|---|
| 38. | Con Edison - gas and electricity | $ 6.05 | |
| 39. | California Franchise Tax - 1962 income tax | 2,614.24 | |
| 40. | California Department of Employment repayment of refund made to estate in error | 36.00 | |
| 41. | District Director of Internal Revenue Social Security Tax, third quarter | 102.98 | |
| 42. | Guido De Angelis, Inc. - goods sold | 948.87 | |
| 43. | Joseph P. DiMaggio - personal loan | 5,000.00 | |
| 44. | Felsen Associates, Inc. | 90.50 | |
| 45. | Cristede Bros. - grocery bill | 12.91 | |
| 46. | Globe Photos, Inc. - hotographic services | 5,000.00 | |
| 47. | Edward P. Halavaty | 17.28 | |
| 48. | B.J. Denihan - for cleaning services | 1,241.60 | |
| 49. | Internal Revenue Service, decedent's 1962 Federal Income tax | 21,724.72 | |
| 50. | Paul J. Juley d/b/a Peter A. Juley & Son | 262.65 | |
| 51. | M. Buzin & Sons | 150.00 | |
| 52. | Eunice Murray, services in remodeling and decorating decedent's house in Calif. | 1,000.00 | |
| 53. | MCA Artists, Ltd., asserted claim against the decedent | 80,168.42 (112,728.61) | |
| 54. | New York State Unemployment Insurance | 105.61 | |
| 55. | New York State Department of Labor Division of Employment | 203.66 | |
| 56. | New York State Unemployment Insurance Fund Third quarter taxes | 1.85 | |
| 57. | Harold Ostley - Tax Collector - items of personal property held by storage company | 8.02 | |
| 58. | Pinkerton's National Detective Agency | 578.25 | |
| 59. | Pinto Winokur & Pagano, Certified Public Accountants - professional services rendered | 2,000.00 | |
| 60. | Heda Rosten | 882.01 | |
| 61. | Ralph Roberts | 470.00 | |
| 62. | Bill A. Pearson | 1,000.00 | |
| 63. | Paula Strasberg - services rendered and expenses in connection therewith | 22,269.37 (32,269.37) | |
| 64. | Hattie Stephenson - work, labor and services | 140.00 | |
| 65. | Twentieth Century-Fox, asserted claim against the decedent - claim contested | — 0 — (500,000.00) | |
| 66. | United Air Lines, Inc. for travelling | 411.18 | |
| 67. | United California Bank | 100.00 | |
| 68. | District Director Internal Revenue Assessment against decedent's Federal Income taxes for the year 1958 | 22,665.49 | 84,092.78 |
| 69. | Assessments for the year 1959, 1960 and 1961 payable to the District Director Internal Revenue | 30,000.00 (Federal / See Adjustments) | 10,599.04 / 2225.20 / 3085.39 / 74,000.00 / Total 174,002.41 |
| 70. | Additional income tax assessments for the years, 1958, 1959, 1960 and 1961 payable to New York State Income Tax Bureau - estimated | 10,000.00 | |
| | | $830,646.35 | $359,423.58 |

323

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE L<br>Mortgages and Liens, and Net Losses During Administration<br>NONE | | |
| SCHEDULE M<br>Matiral Deduction for Transfers to Surviving Spouse<br>NONE | | |
| SCHEDULE N<br>Charitable, Public, and Similar Gifts and Bequests<br>NONE | | |
| SCHEDULE O<br>Beneficiaries | | |
| 1. Bernice Miracle - 330 So.West 27th St. Gainesville, Florida - decedent's sister- Legacy of | $ 10,000.00 | 5000 Exempt. |
| 2. May Reis - 299 West 12th St., New York City Specific legacy of plus $40,000.00 or 25% of the residuary estate whichever shall be the lesser amount. | 10,000.00 | |
| 3. Norman and Hedda Rosten - 84 Remsen St., Brooklyn, New York - Legacy of | 5,000.00 | |
| 4. Lee Strasberg, 135 Central Park West, New York City, N.Y. Legacy of personal effects, clothing plus the balance of the residuary estate. | | |
| 5. Gladys Baker - decedent's mother c/o Inez C.Melson, 9110 Sunset Blvd., Los Angeles 69, Calif. Inez C.Melson was, by order of the Superior Court of the State of California for the County of Los Angeles dated December 22, 1959, appointed conservator of the person of the said Gladys Eley a/k/a Gladys Baker. Beneficiary for life - life income of $5,000.00 per annum. | Mother 5000 | Exempt. |
| 6. Mrs. Michael Chekhow - 3374 Rowena, Los Angeles, Calif.- beneficiary for life - life income of $2500.00 per annum. | | |
| 7. DR. Marianne Kris, 135 Central Park West, New York City. Remainderman of Trust plus 25% of the residuary estate. | | |

324

# CONFIRMATORY ASSIGNMENT

**The Anna Freud Centre**, having an address at 12 Maresfield Gardens, Hampstead, London NW3 5SU, United Kingdom ("Assignor"), makes this Confirmatory Assignment to **RALS-MM LLC f/k/a Marilyn Monroe, LLC**, a Delaware limited liability company having an address ~~at 12 Maresfield Gardens, Hampstead, London NW3 5SU, United Kingdom~~ c/o The Lee Strasberg Theatre & Film Institute – New York, 115 East 15th Street, New York, NY 10003, USA ("Assignee"), as follows:

**WHEREAS**, pursuant to the Decree on a Voluntary Final Account and Related Matters issued by the Surrogate's Court in and for the County of New York, and entered on June 19, 2001 (the "Decree"), all assets then comprising the residue of the estate of Marilyn Monroe, Deceased, were transferred to the Assignee;

WHEREAS, Assignor wishes to confirm that any and all property or interests in property to which it may have been entitled from the Estate of Marilyn Monroe, Deceased, was transferred to the Assignee effective as of the date on which Assignee was formed, July 5, 2001;

**WHEREAS**, further pursuant to the Decree, Anna Strasberg, as Administrator C.T.A. of the Estate of Marilyn Monroe, Deceased, transferred a 25% member interest in the Assignee to the Assignor by executing that certain Assignment of Member's Interest on July 5, 2001 (the "Member Interest");

**NOW, THEREFORE**, without in any way affecting the validity or enforceability of the Assignor's Member Interest, Assignor hereby assigns, transfers, and conveys to Assignee all right, title and interest in and to any property or interests in property of any kind and of any situs to which Assignor was entitled from the Estate of Marilyn Monroe, Deceased, together with the goodwill of any business symbolized by such property, the same to be held and enjoyed by the Assignee for its own use and enjoyment, and for the use and enjoyment of its successors, assigns or other legal representatives, as fully and entirely as the same would have been held and enjoyed by the Assignor if this assignment had not been made; with the right to sue for, and collect the same for its own use and on behalf of its own successors, assigns, or other legal representatives. This assignment is effective as of July 5, 2001, and transfers any above-referenced property, interest or right then owned by Assignor. For the avoidance of doubt, this Confirmatory Assignment does not affect the validity or enforceability of the Assignor's Member Interest, which is retained by the Assignor in full.

**The Anna Freud Centre**

By: Rosalind Bidmead [signature]

WITNESSED BY:

CARLY BASHFORD [signature] Date: 25/07/13

ANDREW KAPONT [signature] Date: 25/07/13

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., Plaintiff, v. CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, Defendants. | CASE NO. CV 05-2200 MMM (MCx) JUDGMENT |
| AND CONSOLIDATED ACTIONS | |

The Milton H. Greene Archives, Inc. ("Greene") filed this action against CMG Worldwide Inc., Marilyn Monroe LLC ("MMLLC"), and Anna Strasberg on March 25, 2005. On May 3, 2005, the court consolidated the case with two other actions filed in this district – *Shirley De Dienes et al. v. CMG Worldwide, Inc. et al.* (CV 05-2516)[1] and *Tom Kelley Studio, Inc. v. CMG*

[1]The *De Dienes* action was dismissed without prejudice on February 2, 2006, pursuant to the parties' stipulation.

*Worldwide, Inc. et al.* (CV 05-2568).[2] On December 14, 2005, the court consolidated two additional actions with the pending case – *CMG Worldwide, Inc., et al. v. Tom Kelley Studios* (CV 05-5973) and *CMG Worldwide, Inc., et al. v. The Milton H. Green Archives, Inc.* (CV 05-7627).[3] These actions were originally filed by CMG Worldwide, Inc. and Marilyn Monroe, LLC (the "CMG Parties" or "plaintiffs") in the United States District Court for the Southern District of Indiana, and were transferred to this district pursuant to 28 U.S.C. § 1404(a) on August 9, 2005.[4]

The parties have filed a series of motions and stipulations for dismissal, by which the court has entered judgment on or dismissed all of the claims in the action. Accordingly,

IT IS ORDERED AND ADJUDGED

1. As to plaintiffs' complaint against Kelley:

   a. To the extent it seeks a declaration regarding MMLLC's trademark rights, Count I is dismissed without prejudice pursuant to the parties' April 15, 2008 stipulation;

   b. To the extent it seeks a declaration regarding MMLLC's exclusive rights to the name, image, persona, and likeness of Marilyn Monroe, Count I is dismissed with prejudice;[5]

   c. Count II for violation of the right of publicity is dismissed with prejudice;[6]

   d. Count III for violations of the Lanham Act is dismissed with prejudice pursuant to the parties' April 15, 2008 stipulation;

---

[2]Tom Kelley Studio, Inc. sued the same defendants as did The Milton H. Greene Archive, Inc. – CMG Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.

[3]Anna Strasberg was not a party to the Indiana actions.

[4]On February 6, 2006, the court issued a scheduling order, which denominated the CMG Parties plaintiffs and the MHG Parties defendants for purposes of the consolidated actions. The court based this order on the fact that the CMG Parties' Indiana action was the first filed action.

[5]This aspect of Count I was among the claims on which the court granted summary judgment in favor of Kelley and Greene in its July 31, 2008 amended order granting defendants' motion for reconsideration.

[6]See July 31, 2008 Amended Order Granting Defendants' Motion for Reconsideration.

e.      Count IV for unfair competition is dismissed with prejudice pursuant to the parties' April 15, 2008 stipulation;

f.      Count V for trade libel/disparagement is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

g.      Count VI for conversion is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

h.      Count VII for violations of the Indiana Crime Victims Act is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

i.      Count VII for interference with business advantage and prospective business advantage is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

j.      Count IX for interference with contract is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

k.      To the extent that it alleges that plaintiffs own copyrights in one or more photographs of Marilyn Monroe taken by Tom Kelley, Sr., and that one or more photographs taken by Tom Kelley, Sr. are in the public domain, Count X is dismissed with prejudice pursuant to the parties' April 15, 2008 stipulation;

l.      In all other respects, Count X is dismissed without prejudice pursuant to the parties' April 15, 2008 stipulation; and

m.      Count XI for violation of the Copyright Act is dismissed without prejudice pursuant to the parties' December 6, 2006 stipulation.

2.      As to plaintiffs' complaint against Greene:

a.      To the extent it seeks a declaration regarding MMLLC's trademark rights, Count I is dismissed without prejudice pursuant to the parties' April 15, 2008 stipulation;

b.      To the extent it seeks a declaration regarding MMLLC's exclusive rights to the name, image, persona, and likeness of Marilyn Monroe, Count I is dismissed with

prejudice;[7]

c. Count II for violation of the right of publicity is dismissed with prejudice;[8]

d. To the extent that it alleges that plaintiffs own copyrights in one or more photographs of Marilyn Monroe taken by Milton H. Greene, and that one or more photographs taken by Milton H. Greene are in the public domain, Count III is dismissed with prejudice pursuant to the parties' April 15, 2008 stipulation;

e. In all other respects, Count III is dismissed without prejudice pursuant to the parties' April 15, 2008 stipulation; and

f. Count IV for violation of the Copyright Act is dismissed without prejudice pursuant to the parties' December 6, 2006 stipulation;

g. Count V for conversion is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

h. Count VI for violations of the Indiana Crime Victims Act is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

i. Count VII for defamation is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

j. Count VIII for interference with contract is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation; and

k. Count IX for interference with business advantage and prospective business advantage is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation.

3. As to Kelley's complaint against plaintiffs:

a. As to Count I, the court finds and declares that the CHG Parties own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness

---

[7]This aspect of Count I was among the claims on which the court granted summary judgment in favor of Kelley and Greene in its July 31, 2008 amended order granting defendants' motion for reconsideration.

[8]See July 31, 2008 Amended Order Granting Defendants' Motion for Reconsideration.

of Marilyn Monroe;[9]

      b.    Count II for false designation of origin and false advertising under the Lanham Act is dismissed with prejudice;[10]

      c.    Count III for common law unfair competition is dismissed with prejudice;[11]

      d.    Count IV for unfair competition in violation of California Business & Professions Code § 17200 is dismissed with prejudice;[12]

      e.    Count V for false advertising in violation of California Business & Professions Code § 17500 is dismissed with prejudice;[13]

      f.    Count VI for tortious interference with actual and prospective business relations is dismissed with prejudice;[14] and

      g.    Count VII for constructive trust is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation.

4.    As to Greene's complaint against plaintiffs:

      a.    As to Count I, the court finds and declares that the CMG Parties own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of Marilyn Monroe;[15]

      b.    Count II for copyright infringement is dismissed with prejudice pursuant to the parties' April 15, 2008 stipulation;

      c.    Count III for fraud is dismissed with prejudice pursuant to the parties' March

---

[9]See July 31, 2008 Amended Order Granting Defendants' Motion for Reconsideration.

[10]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[11]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[12]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[13]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[14]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[15]See July 31, 2008 Amended Order Granting Defendants' Motion for Reconsideration.

17, 2008 stipulation;

d. Count IV for conversion is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

e. Count V for constructive trust is dismissed with prejudice pursuant to the parties' March 17, 2008 stipulation;

f. Count VI for common law unfair competition is dismissed with prejudice;[16]

g. Count VII for unfair competition in violation of California Business & Professions Code § 17200 is dismissed with prejudice;[17]

e. Count VIII for false advertising in violation of California Business & Professions Code § 17500 is dismissed with prejudice;[18] and

f. Count IX for tortious interference with actual and prospective business relations is dismissed with prejudice;[19]

5. As all claims have been resolved, that the action be, and it hereby is, dismissed; and

6. That the parties shall bear their own attorney's fees and costs with respect to claims dismissed pursuant to the parties' March 17, 2008 and April 15, 2008 stipulations.

DATED: July 31, 2008

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

[16]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[17]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[18]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.

[19]See March 17, 2008 Order Granting Plaintiffs' Motion for Partial Summary Judgment.