**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.V.E.L.A., INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE ESTATE OF MARILYN<br>MONROE LLC; and DOES 1<br>THROUGH 10,<br><br>Defendants | **REPLY TO V. INTERNATIONAL FINE**<br>**ARTS PUBLISHING, INC.'S**<br>**STATEMENT OF MATERIAL**<br>**UNDISPUTED FOR PURPOSES OF THIS**<br>**MOTION FACTS PURSUANT TO LOCAL**<br>**RULE 56.1**<br><br>Case No.:  12 Civ. 4828 (KPF)(JCF)<br>ECF Case |
| THE ESTATE OF MARILYN<br>MONROE LLC,<br><br><br>Defendant/Counter-Plaintiff,<br><br><br>-against-<br><br>A.V.E.L.A., INC., LEO VALENCIA, IPL,<br>INC., X ONE X MOVIE ARCHIVES INC.,<br>and V. INTERNATIONAL FINE ARTS<br>PUBLISHING, INC.,<br><br>Counter-Defendants | |
| V. INTERNATIONAL FINE ARTS<br>PUBLISHING, INC.<br><br>Counter-Defendant/Counter-Plaintiff<br><br>-against-<br><br>THE ESTATE OF MARILYN MONROE,<br>LLC, | |

Defendant/Counter-Plaintiff

And

AUTHENTIC BRANDS GROUP, LLC, and
JAMES SALTER

Third Party Defendants

X ONE X MOVIE ARCHIVE, INC.

Third Party Plaintiff/Counter-
Defendant/Counter-Plaintiff

-against-

THE ESTATE OF MARILYN MONROE,
LLC,

Counter-Defendant

and

AUTHENTIC BRANDS GROUP, LLC,
JAMES SALTER, and LEONARD GREEN &
PARTNERS, L.P.

Third Party Defendants

Pursuant to Local Rule 56.1, the Estate of Marilyn Monroe LLC (the "Estate"), Authentic Brands Group LLC ("ABG"), and James Salter ("Mr. Salter") (the Estate, ABG, and Mr. Salter, collectively, the "Estate") hereby submit their responses to V. International Fine Arts Publishing, Inc.'s ("VIFA") Statement of Material Undisputed Facts Pursuant to Local Rule 56.1. The paragraphs below are numbered to correspond to the numbered paragraphs in VIFA's Rule 56.1 Statement. The Estate's responses are based on information known to the Estate at this time. The responses also are based on the Estate's understanding of the statement.

| UNDISPUTED FOR PURPOSES OF THIS MOTION FACTS | EVIDENCE |
|---|---|
| **THE PARTIES** | |
| 1. AVELA is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 85902. | Dkt. 1 at ¶ 1. |
| **The Estate's Response:** Undisputed to the extent AVELA is incorporated under the laws of the State of Nevada; however, this statement is made without waiver of the Estate's alter ego claims against AVELA. | |
| 2. X One X is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 1135 Terminal Way, #209, Reno, Nevada 85902. | Dkt. 284 at Page 20, ¶ 1. |
| **The Estate's Response:** Undisputed to the extent X One X is incorporated under the laws of the State of Nevada; | |

however, this statement is made without waiver of the Estate's alter ego claims against X One X.

| | |
|---|---|
| 3.  V International is a corporation duly organized and existing under the laws of the State of California with its principal place of business at 2647 Gateway Road, #105-550, Carlsbad, California 92009. | Exhibit A, Declaration of Liza Acuna at ¶ 2. |

**The Estate's Response:**

Undisputed to the extent V. International is incorporated under the laws of the State of California; however, this statement is made without waiver of the Estate's alter ego claims against V. International.

| | |
|---|---|
| 4.  Liza Acuna is the President of V International. | Exhibit A, Declaration of Liza Acuna at ¶ 1. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 5.  Leo Valencia is an individual residing in San Diego, California. | Dkt. 284 at Page 2, ¶ 2. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 6.  Mr. Valencia is the Owner of AVELA and X One X. | Dkt. 284 at Page 6, ¶ 23. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 7.  EMMLLC is a Delaware limited liability company with its principal place of business at 100 West 33rd | Dkt. 133 at ¶ 1. |

| | |
|---|---|
| Street, Suite 1007, New York, New York 10001. | |

**The Estate's Response:**

Undisputed for purposes of this motion.

| **MONROE-RELATED BACKGROUND 1926-2010** | |
|---|---|
| 8.  Marilyn Monroe was a famous American actress, singer, and model. | Goodheart Decl. ¶ 18, Exhibit D. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 9.  Marilyn Monroe died on August 5, 1962. | Goodheart Decl. ¶ 4, Exhibit B at 1. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 10. Marilyn Monroe did not apply for or receive any registered trademarks during her lifetime. | Goodheart Decl. ¶ 51, Exhibit D, Page 23 EMMLLC's Responses to X One X's First Set of Requests for Admission at No. 30, Exhibit N, Woodhouse Depo. at 32:19-22 |

**The Estate's Response:**

Disputed to the extent that the evidence cited does support this statement—Exhibit D does not contain EMMLLC's Responses to X One X's First Set of Requests for Admission , and Exhibit E, which does contain these responses, does not contain a page 23—however, the statement is uncontroverted for purposes of this motion.

| | |
|---|---|
| 11. Monroe's will bequeathed her personal effects and small sums of money to various friends and family members. | Goodheart Decl. ¶ 2, Exhibit B, Marilyn Monroe's Last Will and Testament at 5-7. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 12. Monroe's will does not explicitly refer to any intellectual property rights. | Goodheart Decl. ¶ 3, Exhibit B, Marilyn Monroe's Last Will and Testament at 5-7. |

**The Estate's Response:**

Undisputed to the extent the will does not specifically contain the phrase "intellectual property rights," but disputed to the extent that this fact leads to the conclusion that Ms. Monroe did not pass down intellectual property rights (this Court has held that trademark rights not explicitly identified in a will, will pass as personal property through the residuary clause to the residuary beneficiary. *See Steinbeck v. McIntosh & Otis, Inc.*, No. 04 CV 5497 (GBD), 2009 WL 928189, at *5 n. 7 (S.D.N.Y. Mar. 31, 2009), aff'd sub nom. 400 F. App'x 572 (2d Cir. 2010)).

| | |
|---|---|
| 13. Monroe's will left a trust to be paid out to her mother and a Mrs. Michael Chekhov with any remaining income to be paid to Dr. Marianne Kris for the furtherance of Dr. Kris' psychiatric institutions. | Goodheart Decl. ¶ 2, Exhibit B at 5-6. |

**The Estate's Response:**

Disputed to the extent this presents an incomplete statement of Monroe's will; Exhibit C speaks for itself.

6

| | |
|---|---|
| 14. Monroe left the "rest, residue and remainder" of her estate as follows: (a) the lesser of $40,000 or 25% of the total remainder of her estate to a May Reis; (b) 25% of the balance of her estate to her psychiatrist, Dr. Marianne Kris, to be used for the furtherance of Dr. Kris' psychiatric institutions; and (c) the remaining balance to Lee Strasberg, her acting coach. | Goodheart Decl. ¶ 2, Exhibit B at 6-7. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 15. When Monroe's estate was appraised in 1964, the executor of Monroe's estate did not list any intellectual property rights as assets of her estate. | Goodheart Decl. ¶ 5-6, Exhibit B at 6-7. |

**The Estate's Response:**

Disputed. While the document speaks for itself, the appraisal is an incomplete statement of Marilyn Monroe's last will and testament.

| | |
|---|---|
| 16. Neither Dr. Kris nor Lee Strasberg registered any trademarks related to Monroe from 1962 to 1983. | Goodheart Decl. ¶¶ 8, 52, Exhibit N, Woodhouse Depo. at 32:19-33:2. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| 17. No individual or entity registered any trademarks in Monroe's name or stylized signature from 1926 to 1982. | Goodheart Decl. ¶¶ 8, 52, Exhibit N, Woodhouse Depo. at 32:19-33:2 |
|---|---|

**The Estate's Response:**

Undisputed for purposes of this motion.

| 18. Neither Dr. Kris nor Lee Strasberg ever sold any Monroe-related products from 1962 to 1983. | Goodheart Decl. ¶¶ 10, 52, 53, Exhibit N, Woodhouse Depo at 92:1-24; Exhibit O, Jones Depo. at 126:24-127:5 |
|---|---|

**The Estate's Response:**

Disputed. The testimony VIFA cites does not support this conclusory statement. Mr. Woodhouse was asked if he was aware of Lee Strasberg or Marianne Kris using Marilyn Monroe's image on t-shirts, to which he replied that he did not know. Likewise, Ms. Jones was questioned about Lee Strasberg's commercial use of Marilyn Monroe; in response she indicated only that she did not know.

| 19. No beneficiaries of Monroe's will made trademark use of Monroe's image, persona, likeness, or name from 1962-1983. | Goodheart Decl. ¶¶ 10, 52, 53 Exhibit N, Woodhouse Depo at 92:1-24; Exhibit O, Jones Depo. at 126:24-127:5 |
|---|---|

**The Estate's Response:**

Disputed. *See* Response to ¶18.

| 20. No individual or entity had any intention of making trademark use of Monroe's image, persona, likeness, | Goodheart Decl. ¶ 11 |
|---|---|

8

| | |
|---|---|
| or name from 1962-1983. | |

**The Estate's Response:**

Disputed. *See* Response to ¶18.

| | |
|---|---|
| 21. Neither Dr. Kris nor Lee Strasberg policed any purported rights in Monroe from 1962 to 1983. | Goodheart Decl. ¶¶ 9, 52, Exhibit N, Woodhouse Depo. at 33:3-10 |

**The Estate's Response:**

Disputed. The testimony VIFA cites does not support this conclusory statement. Mr. Woodhouse was asked if he knew whether or not Lee Strasberg ever sent cease and desist letters relating to Marilyn Monroe. His response indicating his lack of knowledge on this subject does not prove that Dr. Kris and Lee Strasberg did not police Marilyn Monroe's rights.

| | |
|---|---|
| 22. No individual or entity policed any purported rights in Monroe's image, persona, likeness, or name from 1962 to 1983. | Goodheart Decl. ¶¶ 9, 52, Exhibit N, Woodhouse Depo. at 33:3-10 |

**The Estate's Response:**

Disputed. *See* response to ¶21.

| | |
|---|---|
| 23. EMMLLC has brought no evidence documenting Monroe's use of her image or name on merchandise during her lifetime. | Goodheart Decl. ¶ 12 |

**The Estate's Response:**

Disputed. *See* Supp. Clarke Decl. at ¶3 for evidence of use of Monroe's use of her image and name on merchandise during her lifetime.

| | |
|---|---|
| 24. EMMLLC has brought no evidence documenting | Goodheart Decl. ¶¶ 13, 50, |

| | |
|---|---|
| Monroe's enforcement of uses of her image, persona, likeness, or name during her lifetime. | Exhibit E at Page 54, EMMLLC's Responses to AVELA's First Set of Requests for Production No. 46. |

**The Estate's Response:**

Disputed that this statement is material and relevant, and to the extent that VIFA, XOX, and AVELA have failed to demonstrate that there were unauthorized uses of Monroe's image, persona, likeness, or name during her lifetime.

| | |
|---|---|
| 25. Monroe has no financial or ownership interest in EMMLLC's goods and/or services. | Goodheart Decl. ¶¶ 8, 12, 53; Exhibit O, Jones Depo 128:17-129:10 |

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

| | |
|---|---|
| 26. EMMLLC has not presented any evidence concerning Monroe's intent as to trademark rights. | Goodheart Decl. ¶ 46 |

**The Estate's Response:**

Disputed that this statement is material and relevant, and to the extent that Monroe commercialized her name and persona during her lifetime. *See* Supp. Clarke Decl. at ¶3.

| | |
|---|---|
| 27. Lee Strasberg died in 1982. | Goodheart Decl. ¶ 4, Exhibit B at 2. |

**The Estate's Response:**

Undisputed for purposes of this motion.

| 28. Lee Strasberg's will did not explicitly mention any Monroe-related intellectual property rights. | Goodheart Decl. ¶ 7, Exhibit B at 9-20. |
|---|---|

**The Estate's Response:**

Undisputed to the extent the will does not specifically contain the phrase "intellectual property rights," but disputed to the extent that this fact leads to the conclusion that Ms. Monroe did not pass down intellectual property rights (this Court has held that trademark rights not explicitly identified in a will, will pass as personal property through the residuary clause to the residuary beneficiary. *See Steinbeck v. McIntosh & Otis, Inc.*, No. 04 CV 5497 (GBD), 2009 WL 928189, at *5 n. 7 (S.D.N.Y. Mar. 31, 2009), aff'd sub nom. 400 F. App'x 572 (2d Cir. 2010)).

| 29. EMMLLC has not brought any evidence that Dr. Marianne Kris explicitly passed down any Monroe-related intellectual property rights to anyone. | Goodheart Decl. ¶ 14 |
|---|---|

**The Estate's Response:**

Disputed; *see* Dkt. 340 at¶¶ 27-31. [what evidence is this?]

| 30. The Anna Freud Center inherited Dr. Kris' interest in Monroe's residuary estate upon her death. | Goodheart Decl. ¶ 15, Exhibit B at 23 |
|---|---|

**The Estate's Response:**

Undisputed for purposes of this motion.

| 31. In 2001, Monroe's estate closed. | Goodheart Decl. ¶ 15, Exhibit B at 23 |
|---|---|

**The Estate's Response:**

Undisputed for purposes of this motion.

| 32. The Central District of California issued a declaration | Goodheart Decl. ¶ 16, Exhibit B, |
|---|---|

| | |
|---|---|
| that Marilyn Monroe, LLC (EMMLLC's predecessor) did *not* own any rights of "association, sponsorship, and/or endorsement, in and to the name and likeness of Marilyn Monroe." | Pages 35-40 |

**The Estate's Response:**

Disputed to the extent this statement mischaracterizes the Court's declaration. *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, was a case involving Marilyn Monroe's right of publicity, which is distinct from Marilyn Monroe's trademark rights. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 0502200 MMMMCX, 2008 WL 655604, at *1 (C.D. Cal. Jan. 7, 2008), *on reconsideration*, 568 F. Supp. 2d 1152 (C.D. Cal. 2008), *aff'd sub nom. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012).

| | |
|---|---|
| 33. Countless third parties used Monroe's image, persona, likeness, or name in commerce from the 1950s to 1982. | Goodheart Decl. ¶ 17, Exhibit C |

**The Estate's Response:**

Disputed. The web page print-outs in Exhibit C do not establish third party use of Marilyn Monroe's persona, likeness or name in commerce from the 1950s to 1982. Furthermore, the purported evidence presented in Exhibit C is inadmissible in violation of Local Rule 56.1(d). *See* Supplemental Declaration of Gina L. Durham in Support of The Estate of Marilyn Monroe LLC, Authentic Brands Group, LLC , and James Salter's Response in Opposition To X One X Movie Archives, Inc., A.V.E.L.A., Inc., Leo Valencia, and V. International Fine Arts Publishing, Inc.'s Motions for Summary Judgment ("Supp. Durham Decl.") at ¶2, Ex. A, ("XOX Exhibit D/VIFA Exhibit C Objections") for a full discussion of the evidentiary objections the materials in this to

| | |
|---|---|
| Exhibit C. | |
| 34. Countless third parties have used Monroe's image, persona, likeness, or name in commerce from the 1982 to the present. | Goodheart Decl. ¶ 18, Exhibit D |
| Disputed. The magazine excerpts and web page print-outs in Exhibit D do not establish third party use of Marilyn Monroe's persona, likeness or name in commerce from 1982 to present. Furthermore, the purported evidence presented in Exhibit E is inadmissible in violation of Local Rule 56.1(d). *See* Supp. Durham Decl. at ¶3, Ex. B ("XOX Exhibit E/VIFA Exhibit D Objections"), for a full discussion of the evidentiary objections to the materials in this Exhibit D. | |
| 35. Various photographers and/or entities own copyrights in images of Monroe. | Goodheart Decl. ¶¶ 19, 51, Exhibit E at 17; EMMLLC's Responses to X One X's First Set of Requests for Admission at No. 11 |
| **The Estate's Response:** Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion. | |
| 36. Photographers and various entities sell and license their images of Monroe. | Goodheart Decl. ¶ 20, Exhibit F |
| **The Estate's Response:** Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion. | |
| 37. Monroe appeared on many magazine covers during | Goodheart Decl. ¶ 21, Exhibit F |

| | |
|---|---|
| her lifetime. | at 1-3 |

**The Estate's Response:**

Undisputed for purposes of this motion.

| | |
|---|---|
| 38. Publications have licensed their images of Monroe. | Goodheart Decl. ¶ 22, Exhibit D |

**The Estate's Response:**

Disputed to the extent Exhibit D does not support this statement. *See* Supp. Durham Decl., XOX

Exhibit E/VIFA Exhibit D Objections, for a full discussion of the evidentiary objections to the

materials in this Exhibit D.

| | |
|---|---|
| 39. Other entities own and/or have owned trademark and copyright rights in Monroe's films and characters. | Goodheart Decl. ¶ 23, Exhibit G |

**The Estate's Response:**

Disputed that this statement is material and relevant and disputed to the extent that Exhibit G

does not support this statement. *See also* Dkt. 215 at 16-18. *See* Supp. Durham Decl. at ¶¶4-28.

| | |
|---|---|
| 40. Other entities and individuals own or have owned registered trademarks related to Marilyn Monroe. | Goodheart Decl. ¶ 24, Exhibit G |

**The Estate's Response:**

Disputed. *See* Supp. Durham Decl. ¶¶5-28.

| | |
|---|---|
| 41. EMMLLC has not turned over any cease and desist letters sent between 1926 and 2011. | Goodheart Decl. ¶ 25 |

**The Estate's Response:**

Disputed that this statement is material and relevant.

| | |
|---|---|
| 42. EMMLLC's predecessors purportedly first used | Goodheart Decl. ¶ 26, Exhibit H |

| | |
|---|---|
| indicia of Monroe in commerce in 1983. | at 10. |

**The Estate's Response:**

Disputed to the extent EMMLLC's predecessors include Marilyn Monroe herself and Monroe commercialized her image during her lifetime. *See* Supp. Clarke Decl. at ¶3 for evidence of use of Monroe's use of her image and name on merchandise during her lifetime.

| | |
|---|---|
| 43. EMMLLC has not submitted any evidence of any Monroe-related advertising expenditures from 1962-2010. | Goodheart Decl. ¶¶ 27, 52, Exhibit N, Woodhouse Depo 121:12-20. |

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

| | |
|---|---|
| 44. EMMLLC has not submitted any evidence regarding sales numbers in connection with Monroe from 1962-2011. | Goodheart Decl. ¶ 28 |

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

| | |
|---|---|
| **MOVANT'S BUSINESS** | |
| 45. AVELA's products with Monroe artwork have been in the marketplace since 1985. | Goodheart Decl. ¶¶ 29, 30, Exhibit K |

**The Estate's Response:**

Disputed. AVELA has not provided any documentary evidence of its distribution of Monroe

artwork in the marketplace since 1985. Furthermore, the oldest document in Exhibit K is a product approval form dated 5/17/2005 for t-shirts purportedly manufactured by Dragonfly Clothing bearing  an image of Marilyn Monroe and the mark THE ASPHALT JUNGLE; moreover, the product approval form does not confirm that the t-shirt was ever manufactured or sold in the United States.  .

| | |
|---|---|
| 46. V International operates as a licensing agent for AVELA and other entities in exchange for a commission. | Exhibit A, Acuna Decl. at ¶ 3 |

**The Estate's Response:**

Disputed. VIFA has failed to produce evidence of business relationships with other entities (beyond its relationship with AVELA).

| | |
|---|---|
| 47. V International facilitates the licensing of artwork between its clients, including AVELA, and various manufacturers, distributors, and retailers. | Exhibit A, Acuna Decl. at ¶ 4 |

**The Estate's Response:**

Disputed to the extent that VIFA engages in all facets of the licensing and product approval process, and does not merely facilitate the licensing of artwork.  *See* Dkt. 340 Estate's Statement of Facts ¶¶ 156-158, 165-167.

| | |
|---|---|
| 48. V International has been a licensing agent for AVELA's Monroe artwork since 2002. | Exhibit A, Acuna Decl. at ¶ 9 |

**The Estate's Response:**

Undisputed for purposes of this motion as to the date of the commencement of VIFA and AVELA's licensing relationship; however, VIFA and AVELA have failed to produce documents

| evidencing licensing of AVELA's Monroe artwork at that time. | |
|---|---|
| 49. V International does not own any artwork. | Exhibit A, Acuna Decl. at ¶ 5 |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 50. V International does not license, manufacture, sell, or advertise any products. | Exhibit A, Acuna Decl. at ¶ 6 |
| **The Estate's Response:** | |
| Disputed. *See* response to ¶47. | |
| 51. V International does not manufacture, distribute, sell, or advertise any products featuring Monroe's name or image. | Exhibit A, Acuna Decl. at ¶ 7 |
| **The Estate's Response:** | |
| Disputed to the extent VIFA approves of and profits from the manufacture, distribution, sale and advertisement of products featuring Monroe's name and image. *See* response to ¶47. | |
| 52. V International has never owned or licensed any artwork featuring Monroe's name or image. | Exhibit A, Acuna Decl. at ¶ 8 |
| **The Estate's Response:** | |
| Disputed. *See* response to ¶47. | |
| 53. AVELA does not use the name "Marilyn Monroe" on its products. | Exhibit A, Acuna Decl. at ¶ 10; Goodheart Decl. ¶ 30, Exhibit J |
| **The Estate's Response:** | |
| Disputed. Exhibit J is not an exhaustive compilation of AVELA-licensed Marilyn Monroe artwork and therefore does not provide uncontroverted proof of this statement. | |

| 54. AVELA does not use Monroe's stylized signature on its products. | Exhibit A, Acuna Decl. at ¶ 11; Goodheart Decl. ¶ 30, Exhibit J |
|---|---|

**The Estate's Response:**

Disputed. AVELA has approved its licensees' products that have used Monroe's stylized signature. *See* Dkt. 340 Estate's Statement of Facts ¶214 ; Dkt. 338-14, Ex. N, Kimberly Mileski Depo. at 59:5-11, 154:23 to 155:22.

| 55. AVELA's images transform old photographs of Monroe through extensive graphic design and restoration processes to create completely new artwork. | Exhibit A, Acuna Decl. at ¶ 13 |
|---|---|

**The Estate's Response:**

Disputed to the extent that the characterizations of A.V.E.L.A..'s activities as transformative and its works as "completely new artwork" call for a legal conclusion.

| 56. AVELA's artwork uses novel elements and contemporary designs to modernize old Hollywood memorabilia and appeal to a new generation of consumers. | Exhibit A, Acuna Decl. at ¶ 14 |
|---|---|

**The Estate's Response:**

Disputed; *see* Dkt. 340 ¶¶ 115, 200.

| 57. AVELA occasionally includes the word "MARILYN" on its artwork. | Goodheart Decl. ¶ 30, Exhibit J |
|---|---|

**The Estate's Response:**

Disputed as to the characterization of "occasional" use. *See* e.g. Dkt. No. 338-37.

| 58. AVELA has never licensed artwork for use in connection with any wine or alcoholic liquor. | Exhibit A, Acuna Decl. at ¶ 12. |
|---|---|

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

| 59. AVELA uses Monroe's image in artwork on products. | Goodheart Decl. ¶ 30, Exhibit J |
|---|---|

**The Estate's Response:**

Undisputed that AVELA uses Monroe's image on products.

| 60. AVELA and X One X own copyrights in its artwork that is developed using formerly public domain images of Monroe. | Goodheart Decl. ¶¶ 48, 51, Exhibit L; Exhibit F Page 23, EMMLLC's Responses to X One X's First Requests for Admission at No. 28. |
|---|---|

**The Estate's Response:**

Disputed that this statement is material and relevant. As copyrights and trademarks are separate and distinct property rights, a plaintiff's copyrights have no bearing on a trademark infringement claim. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ("In sum, … the phrase "origin of goods" in the Lanham Act …refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods…To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id*. at 37.

| 61. AVELA identifies its own brand, Radio Days, on its | Goodheart Decl. ¶¶ 30, 49, |
|---|---|

19

| | |
|---|---|
| products. | Exhibit J; Exhibit M. |

**The Estate's Response:**

Disputed. AVELA does not consistently sell products with hang tags or product packaging displaying its trademark "RADIO DAYS." *See* Dkt. 359, Decl. of Sandon Berg at ¶21.

| | |
|---|---|
| 62. AVELA does not have a license agreement with EMMLLC to sell its products bearing artwork with Monroe's image. | Goodheart Decl. ¶ 32 |

**The Estate's Response:**

Undisputed for purposes of this motion.

**EMMLLC'S ACTIVITIES**

| | |
|---|---|
| 63. In December 2010, Authentic Brands Group, LLC ("ABG") purchased registered trademarks in Monroe's name and stylized signature from an entity called Marilyn Monroe LLC. | Goodheart Decl. ¶¶ 33, 54, Exhibit H at 1-7; Exhibit N, Exhibit P, Clarke Depo at 151:10-152:11. |

**The Estate's Response:**

Disputed to the extent that this provides an incomplete statement of the assets acquired and to the extent that it was MM-ABG, LLC not Authentic Brands Group, LLC that acquired the rights to the registered trademarks then-owned by Marilyn Monroe LLC.

| | |
|---|---|
| 64. ABG formed a subsidiary and named it "The Estate of Marilyn Monroe, LLC." | Goodheart Decl. ¶¶ 32, 52, Exhibit H at 8-9; Exhibit N, Woodhouse Depo. at 11:7-12 |

**The Estate's Response:**

Disputed to the extent that it was MM-ABG, LLC not Authentic Brands Group, LLC that formed The Estate of Marilyn Monroe, LLC.

| | |
|---|---|
| 65. EMMLLC has refused to turn over a copy of the acquisition document from its purchase of assets from the entity Marilyn Monroe, LLC. | Goodheart Decl. ¶ 33 |

**The Estate's Response:**

Disputed. The Estate has produced the December 30, 2010 Asset Purchase Agreement between MM-ABG, LLC and Marilyn Monroe, LLC, and made the document available to AVELA for viewing on multiple occasions, starting in 2014 and most recently at the deposition of Nick Woodhouse on August 22, 2017 during which Mr. Harley's co-counsel used the agreement and questioned the witness about it.. *See* Supp. Durham Decl. at ¶29, Ex. BB ("Nick Woodhouse Depo.") at 47:20-23.

| | |
|---|---|
| 66. On July 25, 2013, a representative of the Anna Freud Center signed a document purporting to retroactively assign the Anna Freud Center's 25% share of Monroe's residuary estate to the entity "RALS-MM LLC f/k/a Marilyn Monroe, LLC" effective as of June 19, 2001. | Goodheart Decl. ¶ 34, Exhibit B at 34. |

**The Estate's Response:**

Disputed. The document at page 34 of Exhibit B is a confirmatory assignment; it does not retroactively assign any rights but merely confirms the assignment already made. "Assignor wishes to confirm that any and all property or interests in property to which it may have been entitled from the Estate of Marilyn Monroe, Deceased, was transferred to the Assignee effective

| | |
|---|---|
| as of the date on which Assignee was formed, July 5, 2001." | |
| 67. EMMLLC sent cease and desist letters from 2011 to the present. | Goodheart Decl. ¶ 35 |

Undisputed for purposes of this motion.

| | |
|---|---|
| 68. EMMLLC has not presented any consumer studies linking its purported marks to a source. | Goodheart Decl. ¶ 36 |

**The Estate's Response:**

Disputed to the extent the term "marks" is undefined and ambiguous. Furthermore, the Estate has conducted consumer studies linking Marilyn Monroe's persona to a source, *see* Dkt. 338-15, Ex. O ("Poret Report"), and the 2nd Circuit recognizes that celebrity persona is a trademark-like right. *Bondar v. LASplash Cosmetics*, No. 12 CIV. 1417 SAS, 2012 WL 6150859, at *5 (S.D.N.Y. Dec. 11, 2012) "Courts in this Circuit have recognized that celebrities have a trademark-like interest in their name, likeness, and persona that may be vindicated through a false endorsement claim under the Lanham Act."

| | |
|---|---|
| 69. EMMLLC has not turned over any discovery evidencing media coverage of EMMLLC, EMMLLC's predecessor, or its "Marilyn Monroe" products prior to 2011. | Goodheart Decl. ¶ 37 |

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

| | |
|---|---|
| 70. The Ninth Circuit, Central District of California, and this Court previously ruled that Monroe's right of publicity did not survive her because Monroe died domiciled in the State of New York, which does not recognize postmortem rights of publicity. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 1000 (9th Cir. 2012); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152 (C. D. Cal. 2008) and *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 486 F. Supp. 2d 309 (S.D.N.Y. 2008). | Goodheart Decl. ¶ 38 |

**The Estate's Response:**

Disputed that this statement is material and relevant and to the extent this statement implies that the Estate does maintain Marilyn Monroe's publicity rights in any state. As right of publicity laws vary across states, the Estate holds a right of publicity with respect to Marilyn Monroe in states that do not consider an individual's domicile at death, including Washington and Indiana. *See* Supp. Durham Decl. at ¶30, Ex. CC, The Estate of Marilyn Monroe LLC's Responses to Counter-Defendant X One X Movie Archive, Inc.'s First Set of Requests for Admission No. 9.

| | |
|---|---|
| 71. EMMLLC states on its website www.marilynmonroe.com that "RIGHTS OF THE PUBLICITY AND PERSONA RIGHTS ARE USED WITH THE PERMISSION OF THE ESTATE OF MARILYN MONROE, LLC." | Goodheart Decl. ¶ 39, Exhibit I at 1. |

| | |
|---|---|
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 72. EMMLLC states on its products and advertising that "RIGHTS OF THE PUBLICITY AND PERSONA RIGHTS ARE USED WITH THE PERMISSION OF THE ESTATE OF MARILYN MONROE, LLC." | Goodheart Decl. ¶ 39, Exhibit I at 2-6. |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 73. EMMLLC does not own any registered trademark in AVELA's artwork. | Goodheart Decl. ¶ 40 |
| **The Estate's Response:** | |
| Disputed to the extent that AVELA has used EMMLC's registered MARILYN MONROE trademarks and registered Marilyn signature in its artwork. | |
| 74. EMMLLC is not Marilyn Monroe. | Goodheart Decl. ¶ 41, Exhibit E at 4, EMMLLC's Responses to V International's First Set of Requests for Admission at No. 6 |
| **The Estate's Response:** | |
| Disputed to the extent this statement improperly implies that the Estate is not the successor in interest to the rights of the woman Marilyn Monroe. | |
| 75. EMMLLC is not Marilyn Monroe's family. | Goodheart Decl. ¶ 41, Exhibit E at 4, EMMLLC's Responses to V International's First Set of |

| | Requests for Admission at No. 7 |
|---|---|
| **The Estate's Response:**<br><br>Undisputed for purposes of this motion. | |
| 76. EMMLLC is not Marilyn Monroe's beneficiary. | Goodheart Decl. ¶ 5, Exhibit B at 33. |
| **The Estate's Response:**<br><br>Disputed. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31. | |
| 77. EMMLLC is not Marilyn Monroe's actual estate. | Goodheart Decl. ¶¶¶ 5, 15, 54, Exhibit B at 22; Exhibit P, Clarke Depo at 153:12-154:10 |
| **The Estate's Response:**<br><br>Disputed to the extent the phrase "actual estate" is ambiguous. *See also* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31. | |
| 78. EMMLLC is not composed of or owned by Marilyn Monroe's family. | Goodheart Decl. ¶ 53, Exhibit O, Jones Depo. 128:17-129:10 |
| **The Estate's Response:**<br><br>Undisputed for purposes of this motion. | |
| 79. EMMLLC is not composed of or owned by Marilyn Monroe's heir. | Goodheart Decl. ¶ 53, Exhibit O, Jones Depo. 128:17-129:10 |
| Undisputed for purposes of this motion. | |
| 80. EMMLLC is not composed of or owned by Marilyn Monroe's actual estate. | Goodheart Decl. ¶ 53, Exhibit O, Jones Depo. 128:17-129:10 |

**The Estate's Response:**

Disputed. This statement misrepresents Ms. Jones's testimony. Ms. Jones states that there is no one at the Estate who is a blood relative of Marilyn Monroe. It is not necessary that such a relative be attached to the Estate for the Estate to own Marilyn Monroe's actual estate. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31.

| | |
|---|---|
| 81. Marilyn Monroe did not assign any intellectual property rights to EMMLLC. | Goodheart Decl. ¶ 42 |

**The Estate's Response:**

Disputed. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31.

| | |
|---|---|
| 82. Monroe did not authorize EMMLLC to license her intellectual property rights. | Goodheart Decl. ¶ 43 |

**The Estate's Response:**

Disputed. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31.

| | |
|---|---|
| 83. Monroe did not authorize EMMLLC to police her intellectual property rights. | Goodheart Decl. ¶ 44 |

**The Estate's Response:**

Disputed. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31.

| | |
|---|---|
| 84. No beneficiaries mentioned in Marilyn Monroe's will authorized EMMLLC to police Monroe's intellectual property rights. | Goodheart Decl. ¶ 3, 5, Exhibit B at 5-7. 33. |

**The Estate's Response:**

Disputed. *See* Dkt. 340 Estate's Statement of Facts ¶¶ 27-31.

| | |
|---|---|
| 85. EMMLLC claims it received rights in Monroe from the residuary clause in her will. | Goodheart Decl. ¶ 41, Exhibit E at 2-3, EMMLLC's Responses to V International's First Set of Requests for Admission at No.1 |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 86. EMMLLC owns trademark registrations in the word mark "MARILYN MONROE." | Goodheart Decl. ¶ 26, Exhibit H at 15-16. |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 87. EMMLLC owns trademark registrations in Monroe's stylized signature. | Goodheart Decl. ¶ 26, Exhibit H at 13-14. |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 88. EMMLLC owns trademark registrations in the word mark "MARILYN" for two classes of goods: US Class 47 (wines) and US Class 49 (Distilled alcoholic liquors). | Goodheart Decl. ¶ 26, Exhibit H at 11-12. |
| **The Estate's Response:** | |
| Undisputed for purposes of this motion. | |
| 89. EMMLLC seeks to control any use of Monroe's image in commerce. | Goodheart Decl. ¶ 52, Exhibit N, Woodhouse Depo. at 37:11-19; |

| | 40:14-25; 41:16-42:2; 118:25-119:24 |
|---|---|

**The Estate's Response:**

Disputed. This statement misrepresents Mr. Woodhouse's testimony, which represents that the Estate has the "right to oversee all uses of the Marilyn Monroe name, image and likeness in any *commercial manner*." Dkt. 371-20, Woodhouse Depo. at 7:18-19 (emphasis added). The enforcement of the Estate's Marilyn Monroe related intellectual property rights against unauthorized *commercial* use of Marilyn Monroe's name, image, and persona, is distinct from controlling all use of her image in commerce—the former includes only uses that attempt to profit from Monroe's image.

| 90. EMMLLC has not presented any evidence it acquired secondary meaning by identifying any particular image of Monroe with EMMLLC. | Goodheart Decl. ¶ 47 |
|---|---|

**The Estate's Response:**

Disputed that this statement is material and relevant, but uncontroverted for purposes of this motion.

## THE ESTATE'S ADDITIONAL MATERIAL FACTS

| ADDITIONAL FACTS | EVIDENCE |
|---|---|
| 91. Norma Jean Mortenson, nee Dougherty, created the Marilyn Monroe persona and adopted it as her glitzy, glamorous brand for the duration of her | Supp. Clarke Decl. at ¶ 2. |

| | |
|---|---|
| career. | |
| 92. During her lifetime, Marilyn Monroe Marilyn Monroe was famously a celebrity endorser for Tru-Glo cosmetics, Lustre-Crème shampoo, Lux soap, Rayve shampoo, Hiltone hair color, and many others. | Supp. Clarke Decl. at ¶ 3. |
| 93. Forbes Magazine has listed Marilyn Monroe as one of the top earning deceased celebrities year after year. | Supp. Clarke Decl. at ¶ 4. |
| 94. To the knowledge of the Estate, Marilyn Monroe did not appear in any of the films "It's a Wonderful Life," "Gone With the Wind," "Wizard of Oz," "Breakfast at Tiffany's," "Hard Days Night//Yellow Submarine," "Blue Hawaii//Viva Las Vegas," "Casa Blanca," and "My Fair Lady." | Supp. Clarke Decl. at ¶ 5. |
| 95. Twentieth Century Fox Film Corporation dba 20th Century Fox, does not use the MARILYN MONROE mark alone or prominently on products not authorized by the Estate. | Supp. Clarke Decl. at ¶6. |
| 96. When the Estate discovered at one point that 20th Century Fox had licensed or attempted to license products bearing the Marilyn Monroe name and image without the permission of the Estate, the | Supp. Clarke Decl. at ¶7. |

| | |
|---|---|
| Estate sent Fox a cease and desist letter on October 28, 2016. | |
| 97. Legends Licensing, LLC d/b/a/ Licensing Group, LLC was formed in 2008 to represent several photographers, including Milton Greene and Tom Kelley. The corporation was dissolved shortly thereafter. Subsequently, the Estate entered into and still maintains an exclusive licensing arrangement with Joshua Greene in his capacity as representative for the Milton H. Greene Archives, Inc. as well as an exclusive licensing agreement with Shaw Family Archives, Ltd. for certain well-known Marilyn Monroe photographs. The Estate knows of no unauthorized use of Mr. Greene's photographs on merchandise. | Supp. Clarke Decl. at ¶8. |
| 98. On February 28, 2018, the Estate sent a cease and desist letter to Avec Vous LLC dba Norma Jean Pilates. The matter was resolved through a settlement agreement and Avec Vous agreed to cease use of images of Marilyn Monroe. | Supp. Clarke Decl. at ¶9. |
| 99. In instances where third parties have attempted to register trademarks which incorporate the Marilyn Monroe name, variations thereof, or other indicia | *See* Exhibit G to the Goodheart Declaration (Dkt. 368-7); Exhibit G to the Harley Declaration (Dkt. |

| | |
|---|---|
| of her persona, those applications and/or registrations have been challenged either by the United States Patent & Trademark Office ("USPTO") or by the Estate or its predecessors.  As such, applications and/or registrations which incorporate the Marilyn Monroe, variations thereof, or other indicia of her persona filed by an entity other than the Estate are regularly canceled or lapsed. | 371-7); *see also* Supp. Durham Decl. at ¶¶5-7, 9, 11-28. |
| 100.    The Estate and its predecessors have meticulously maintained its trademark registrations for the Marilyn Monroe name, variations thereof, or other indicia of her persona by filing regular affidavits of use with accompanying specimens of products with the USPTO. | Supp. Durham Decl. at ¶¶31-50. |
| 101.    The Estate and its predecessors and have regularly enforced its rights against unauthorized uses of the Marilyn Monroe's name and image. | Supp. Durham Decl. at ¶54. |
| 102.    Leo Valencia has testified that he understands that an "estate" can only include blood relatives of the decedent. | Supp. Durham Decl. at ¶52, Ex. YY at 75:18 to 76:6. |
| 103.    AVELA, XOX, Leo Valencia, nor VIFA have produced royalty reports from its purported | Supp. Durham Decl. at ¶53 |

| licensee, Dragonfly Clothing. | |
|---|---|

Dated: July 13, 2018

/s/ *Gina L. Durham*
Gina L. Durham (*pro hac vice)*
DLA PIPER LLP (US)
P.O. Box 64807
Chicago, Illinois 60664-0807
Telephone: (415) 368-4000
Facsimile: (415) 659-7333
gina.durham@dlapiper.com

Tamar Duvdevani
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
tamar.duvdevani@dlapiper.com

*Attorneys for The Estate of Marilyn Monroe,*
*LLC, Authentic Brands Group, LLC and James*
*Salter*